UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **NICOLE DICKENS, HALEH ALLAHVERDI, HALEY BURGESS, JILLIAN BLENIS, and LILI MITCHELL,** individually and on behalf of themselves and all others similarly situated, | **CASE NO. 1:22-cv-04286-JMF** |
| Plaintiffs, | **MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT AGREEMENT** |
| v. | |
| **THINX, INC.,** | |
| Defendant. | |

## TABLE OF CONTENTS

I. INTRODUCTION ...................................................................................................... 1

II. SUMMARY OF THE ACTION ................................................................................. 2

    A. Summary of the Allegations .............................................................................. 2

    B. Relevant Background ......................................................................................... 4

        1. The Three Class Actions .............................................................................. 4

        2. The Parties' Mediation and Settlement Efforts ........................................... 7

III. THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL ......................... 8

    A. Material Terms of the Settlement ...................................................................... 8

        1. The Settlement Fund .................................................................................... 9

        2. The Settlement Class ................................................................................... 9

        3. Class Benefits ............................................................................................. 10

        4. Class Notice ................................................................................................ 11

        5. Claims Process ........................................................................................... 12

        6. Attorneys' Fees and Costs and Service Awards ........................................ 12

    B. Legal Standards for Preliminary Approval of a Proposed Settlement .............. 13

    C. The Settlement Satisfies the Rule 23(e) Factors ............................................... 16

        1. Plaintiffs and Proposed Class Counsel Have Adequately Represented the Class ..... 16

        2. The Proposed Settlement Was Negotiated at Arm's Length ...................... 17

        3. The Proposed Settlement Is Adequate in Light of the Costs, Risks, and Delay of Trial and Appeal ............................................................................ 18

        4. The Proposed Method for Distributing Relief is Effective ....................... 19

        5. Attorneys' Fees and Expenses ................................................................... 20

        6. Class Members Are Treated Equitably ...................................................... 21

    D. The Settlement Also Meets the Remaining *Grinnell* Factors ........................... 22

1. The Complexity, Expense, and Likely Duration of the Litigation........................... 22

2. The Reaction of the Class to Settlement ................................................................ 22

3. The Stage of the Proceedings.................................................................................. 22

4. The Risks of Maintaining the Class Action Through Trial..................................... 23

5. The Ability of Defendant to Withstand a Greater Judgment .................................. 23

6. The Reasonableness of the Settlement in Light of the Best Possible Recovery and
the Attendant Risks of Litigation............................................................................ 24

IV. THE PROPOSED FORM AND METHOD OF PROVIDING NOTICE TO THE CLASS ARE
APPROPRIATE....................................................................................................................... 25

V. CERTIFICATION OF THE CLASS IS APPROPRIATE.......................................................... 27

A. The Rule 23(a) Requirements are Satisfied....................................................................... 27

1. The Settlement Class is so numerous that joinder is impracticable ........................ 29

2. There are questions of law and fact common to the Settlement Class..................... 29

3. Plaintiffs' claims are typical of the claims of the Settlement Class........................ 30

4. Plaintiffs will fairly and adequately represent the Settlement Class....................... 31

B. The Requirements of Rule 23(b)(3) are Satisfied .............................................................. 32

1. Common questions predominate.............................................................................. 32

2. Class treatment of Plaintiffs' claims is superior ..................................................... 33

C. The Class is Ascertainable ................................................................................................. 34

VI. PROPOSED SCHEDULE OF SETTLEMENT EVENTS......................................................... 35

VII. CONCLUSION ......................................................................................................................... 35

TABLE OF AUTHORITIES

CASES

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997); *Weinberger v. Kendrich*, 698 F.2d 61 (2d Cir. 1982) ................................................................................................................ 28, 32

*Amgen, Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455 (2013) .............................................. 33

*Aponte v. Comprehensive Health Mgmt., Inc.,* No. 10 Civ. 4825 (JLC), 2013 WL 1364147, at *2 (S.D.N.Y. Apr. 2, 2013) ................................................................................................................ 15

*Basic v. Levinson*, 485 U.S. 224 (1988) ............................................................................................ 33

Brecher v. Republic of Argentina, 806 F.3d 22 (2d Cir. 2015) ......................................................... 34

*Central States Southeast & Southwest Areas Health & Welfare Fund v. Merck-Medco Managed Care, LLC*, 504 F.3d 229 (2d Cir. 2007) .......................................................................................... 29

*Cleveland v. Whirlpool Corp.*, No. 20-CV-1906 (WMW/JFD), 2022 WL 2256353 (D. Minn. June 23, 2022) ........................................................................................................................................ 16

*Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473 (2d Cir. 1995) ........................................... 29

*D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001) ............................................................ 17, 23

*Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974) ....................................................... 2, 14, 18

Ellen Berman, et al. v. General Motors LLC, Case No. 2:18-cv-14371, ECF No. 161 (S.D. Fla. Nov. 18, 2019) ............................................................................................................................... 16

*Fogarazzo v. Lehman Bros. Inc.,* No. 03 Civ. 5194, 2011 WL 671745 (S.D.N.Y. Feb. 23, 2011) .. 21

*Goldemberg v. Johnson & Johnson Consumer Companies, Inc.,* 317 F.R.D. 374 (S.D.N.Y. 2016) 28

*Gordon v. Vanda Pharms. Inc.*, No. 19 CV 1108 (FB)(LB), 2022 WL 4296092 (E.D.N.Y. Sept. 15, 2022) .............................................................................................................................................. 22

*Guevoura Fund Ltd. v. Sillerman*, 2019 WL 6889901 (S.D.N.Y. Dec. 18, 2019) .................... 17, 21

*Hamm v. Sharp Electronics Corp.*, No. 5:19-cv-00488, ECF No. 62 (M.D. Fla. Jan. 7, 2021) ....... 16

*Hart v. BHH, LLC*, 334 F.R.D. 74 (S.D.N.Y. 2020) ......................................................................... 13

*Hart v. BHH, LLC*, No. 15CV4804, 2020 WL 5645984 (S.D.N.Y. Sept. 22, 2020) ........................ 22

*Hawaii Structural Ironworkers Pension Trust Fund v. AMC Entertainment Holdings, Inc., et al.*, No. 1:18-cv-00299-AJN, slip op. (S.D.N.Y. Feb. 14, 2022) ......................................................... 20

*In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987) ................................................................................................................... 24

*In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171 (S.D.N.Y. 2014).................... 15, 23

*In re BHP Billiton Ltd. Sec. Litig.*, No. 1:16-cv-01445- NRB, slip op. (S.D.N.Y. Apr. 10, 2019) .. 20

*In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285 (2d Cir. 1992) ...................................... 31

*In re Dynex Capital, Inc. Sec. Litig.*, No. 05 Civ. 1897 (HB), 2011 WL 781215 (S.D.N.Y. Mar. 7, 2011) ................................................................................................................................. 32

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010) .......... 17

*In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151 (S.D.N.Y. 2011) .............................. 21

*In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436 (S.D.N.Y. 2004) .......................... 23, 24

*In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686 (S.D.N.Y. 2019) ............................. 14, 17, 18

*In re Indep. Energy Holdings PLC Sec. Litig.*, 2003 WL 22244676 (S.D.N.Y. Sept. 29, 2003) ..... 24

*In re Initial Pub. Offering Sec. Litig.,* 243 F.R.D. 79 (S.D.N.Y. 2007), adhered to on reconsideration, No. 01 CIV. 3020 (SAS), 2007 WL 844710 (S.D.N.Y. Mar. 20, 2007)............ 30

*In re Kind LLC "Healthy & All Natural" Litig.*, 337 F.R.D. 581 (S.D.N.Y. 2021) .......................... 29

*In re Literary Works in Elec. Databases Copyright Litig.*, 654 F.3d 242 (2d Cir. 2011)................ 15

*In re Marsh & McLennan Companies, Inc. Sec. Litig.*, No. 04 CIV. 8144 (CM), 2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009)......................................................................................... 30, 31

*In re Merrill Lynch & Co. Research Reports Sec. Litig.*, 246 F.R.D. 156 (S.D.N.Y. 2007) ......... 25

*In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, 2007 WL 313474 (S.D.N.Y. Feb. 1, 2007) ................................................................................................................................. 25

*In re Nasdaq Market-Makers Antitrust Litig.*, 176 F.R.D. 99 (S.D.N.Y. 1997)................................ 13

*In re Oxford Health Plans, Inc.*, 191 F.R.D. 369 (S.D.N.Y. 2000) ............................................ 30, 31

*In re Patriot Nat'l, Inc. Sec. Litig.*, 828 F. App'x 760 (2d Cir. 2020)............................................... 25

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11 (E.D.N.Y. 2019) ................................................................................................... 13, 14, 15, 19

*In re Petrobras Securities*, 862 F.3d 250 (2d Cir. 2017) .................................................................. 34

*In re Polaroid ERISA Litig.*, 240 F.R.D. 65 (S.D.N.Y. 2006) .......................................................... 32

*In re Prudential Sec. Inc. Ltd. Partnerships Litig.*, 163 F.R.D. 200 (S.D.N.Y. 1995)................ 28

*In re Scotts EZ Seed Litig.*, 304 F.R.D. 397 (S.D.N.Y. 2015) .......................................................... 29

*In re Sinus Buster Prod. Consumer Litig.*, No. 12-CV-2429 (ADS)(AKT, 2014 WL 5819921 (E.D.N.Y. Nov. 10, 2014) .................................................................................................................. 22

*In re Take Two Interactive Sec. Litig.*, No. 06 CIV. 1131 (RJS), 2010 WL 11613684 (S.D.N.Y. June 29, 2010) ................................................................................................................................ 26

*In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570 (S.D.N.Y. 2008) ............................................ 16, 34

*In re Time Warner, Inc. Sec. & ERISA Litig.*, 2006 WL 903236 (S.D.N.Y. Apr. 6, 2006) .............. 24

*In re Van Der Moolen Holding N.V. Sec. Litig.*, No. 03 Civ. 8284, slip. op. at 2 (S.D.N.Y. Dec. 7, 2006) .............................................................................................................................................. 21

*In re Vitamin C Antitrust Litig.*, 2012 WL 5289514 (E.D.N.Y. Oct. 23, 2012) ............................... 24

*In re Vivendi Universal,* S.A., 242 F.R.D. 76 (S.D.N.Y. 2007) ....................................................... 30

*Kurtz v. Kimberly-Clark Corp.*, 321 F.R.D. 482 (E.D.N.Y. 2017) ................................................... 28

*Landmen Partners, Inc. v. Blackstone Group L.P.*, 2013 WL 11330936 (S.D.N.Y. Feb. 18, 2013) 21

*Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358 (S.D.N.Y. 2002) ......................................... 21

*Mayhew v. KAS Direct, LLC*, No. 16 CV 6981 (VB), 2018 WL 3122059 (S.D.N.Y. June 26, 2018) ...................................................................................................................................................... 22

*Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072 (2d Cir. 1995) .................................... 26

*Micholle v. Ophthotech Corp.*, No. 17 cv 1758 (VSB), 2022 WL 1158684 (S.D.N.Y. Mar. 14, 2022) ............................................................................................................................................. 21

*Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306 (1950) ................................................ 26

*Newman v. Stein*, 464 F.2d 689 (2d Cir. 1972) ............................................................................... 24

*Robidoux v. Celani*, 987 F.2d 931 (2d Cir. 1993) ...................................................................... 29, 31

*Sarah Hill et al v. Canidae Corporation*, 5:20-cv-01374-JGB-SP, ECF No. 79 (C.D. Cal. Sept. 29, 2021) .............................................................................................................................................. 16

*Shaw et al v. Costco Wholesale Corporation et al*, 2:20-cv-01620-RAJ, ECF No. 64 (W.D. Wash. Oct. 4, 2021) ................................................................................................................................. 16

*Strougo v. Bassini*, 258 F. Supp. 2d 254 (S.D.N.Y. 2003) ............................................................. 19

*Teachers' Ret. Sys. of Louisiana v. ACLN Ltd.*, No. 01 Civ. 11814 (LAP), 2004 WL 2997957 (S.D.N.Y. Dec. 27, 2004) .............................................................................................. 30

*Vaccaro v. New Source Energy Partners L.P.*, No. 15 CV 8954 (KMW), 2017 WL 6398636
    (S.D.N.Y. Dec. 14, 2017) ............................................................................................ 25

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011) .................................................... 29

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96 (2d Cir. 2005) ...................................... 14, 15

RULES

Fed. R. Civ. P. 23 ....................................................................... 14, 15, 17, 18, 20, 28, 29, 31, 32, 33

Plaintiffs Nicole Dickens, Haleh Allahverdi, Haley Burgess, Jillian Blenis, and Lili Mitchell ("Plaintiffs" or "Class Representatives"), on behalf of themselves and all other members of the proposed Settlement Class, respectfully submit this memorandum in support of their unopposed motion for preliminary approval of the proposed Settlement.

## I.    INTRODUCTION

This case involves Defendant Thinx Inc.'s ("Defendant" or "Thinx") sale of its proprietary line of menstrual underwear ("Thinx Period Underwear")[1], which is marketed and sold to women as a safe and sustainable way to manage menstruation. The case arises out of Plaintiffs' allegations that Thinx Period Underwear contains harmful per-and polyfluoroalkyl substances ("PFAS").

Plaintiffs, individually and on behalf of all others similarly situated, and Defendant have entered into a Settlement Agreement and Release[2] to resolve Plaintiffs' claims on a classwide basis that provides for the establishment of a common fund of up to Five Million Dollars ($5,000,000) ("Settlement Amount"), comprising a $4,000,000 Cash Minimum Amount and $1,000,000 Replenishment Amount. The final Settlement is the result of: (i) significant pre-suit investigation of Plaintiffs' claims, including extensive chemical analysis of the products at issue, legal research, consultation with experts, and consumer interviews; (ii) the filing of three class actions which were ultimately consolidated in this Court; (iii) hard-fought litigation of nearly two years, including successfully opposing Defendant's motion to dismiss through substantial briefing in the first-filed Central District of California action; (iv) written discovery; (v) the exchange of relevant information

---

[1] This action concerns the following styles of Thinx Period Underwear:  Cotton Brief, Cotton Bikini, Cotton Thong, Sport, Hiphugger, Hi-Waist, Boyshort, French Cut, Cheeky, and Thong.

[2] The Settlement Agreement and its exhibits are attached as Exhibit 1.  Capitalized terms not defined in this brief shall have the same definitions and meanings ascribed to them in the Settlement Agreement.

pursuant to Fed. R. Evid. 408; (vi) a full-day mediation with a certified mediator; and (vii) lengthy settlement negotiations that spanned nearly one year. The Settlement is an outstanding result for Settlement Class Members, particularly given the costs and risks of further litigation, and represents a substantial, immediate recovery.

The Settlement satisfies Rule 23(e)(1) for the issuance of Notice, including each of the Rule 23(e)(2) factors and the Second Circuit factors set forth in *Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974). Accordingly, Plaintiffs respectfully request that the Court grant preliminary approval of the Settlement so that Notice may be provided to the Settlement Class. Plaintiffs request that this Court enter the agreed-upon form of Order Preliminarily Approving Settlement and Providing for Notice, submitted as Exhibit F to the Settlement Agreement, which will:

1. Preliminarily approve the Settlement;

2. Preliminarily certify the Settlement Class;

3. Appoint proposed Class Counsel as Class Counsel and Plaintiffs as Class Representatives;

4. Approve the form and content of the Notices and Claim Forms attached as Exhibits A-E to the Settlement Agreement;

5. Find that the proposed procedures for dissemination of the Notices and Claim Forms constitute the best notice practicable under the circumstances, and comply with due process and Fed. Rule Civ. P. 23;

6. Set a date and time for the Final Approval Hearing, at which the Court will consider final approval of the Settlement, Class Certification, and Class Counsel's application for attorneys' fees and expenses and Class Representatives' application for service awards.

## II.    SUMMARY OF THE ACTION

### A.    Summary of the Allegations

Thinx designs, manufactures, markets, advertises, distributes, and sells Thinx Period Underwear, an absorbent underwear which is used in place of traditional feminine hygiene products to collect and/or absorb menstrual fluid. (Consolidated Amended Complaint ("CAC"), ECF No. 16,

at ¶¶ 1-2.) Thinx Period Underwear is a washable, reusable alternative to traditional single-use feminine hygiene products like tampons. (*Id* at ¶ 3.) Consumers are willing to pay a premium for Thinx Period Underwear compared to cheaper disposable alternatives based on the belief that Thinx Period Underwear provides an easier, safer, and more sustainable way to manage menstruation. (*Id*.)

Plaintiffs allege that Thinx's marketing, including its packaging and labeling, has uniformly represented Thinx Period Underwear as safe, sustainable, free from harmful chemicals and nanoparticles, and—with regard to certain styles—organic. (*Id*. at ¶¶ 31-33.) Each of the Plaintiffs were exposed to these representations regarding Thinx Period Underwear. (*Id*. at ¶¶ 107, 120, 121, 130, 135, 151.)

Plaintiffs purchased Thinx Period Underwear because they were seeking a safe, reusable, and sustainable form of menstrual protection. (*Id*. at ¶¶ 108, 129, 136, 150, 161.) Plaintiffs purchased Thinx Period Underwear in reliance on Thinx's specific representations, including that Thinx Period Underwear did not contain "harmful chemicals," was organic, and did not contain heavy metals or nanoparticles. (*Id*. at ¶ 161.) These representations were material to Plaintiffs when purchasing Thinx Period Underwear. (*Id*.)

Plaintiffs sought independent third-party testing to determine whether Thinx Period Underwear contained any harmful chemicals. (*Id*. at ¶ 35.) Plaintiffs' testing revealed the presence of short chain PFAS. (*Id*. at ¶ 37.)  PFAS are a category of man-made chemicals that can be used to enhance the performance of textiles and apparel, including by making them waterproof and/or stain resistant. (*Id*. at ¶¶ 39-40.) Plaintiffs allege, however, that PFAS present a danger to both humans and the environment due to their persistent, bioaccumulative nature, and have been associated with a variety of negative health effects in humans, and are therefore "harmful chemicals." (*Id*. at ¶¶ 44-48.) During the class period, Thinx also sold several styles of Thinx Period Underwear which were

advertised as "organic." (*Id.* at ¶ 69.)  Plaintiffs allege that the presence of PFAS in Thinx Period Underwear contradicts these organic representations. (*Id.* at ¶ 79.)

In addition to PFAS, Thinx Period Underwear also contains Agion, an antimicrobial treatment made from silver and copper nanoparticles which is designed to reduce odor in clothing. (*Id.* at ¶ 56.) Plaintiffs allege the use of Agion directly contradicted Thinx's representations that Thinx Period Underwear is free from non-migratory nanoparticles and harmful chemicals. (*Id.* at ¶ 68.)

After Plaintiffs initiated this action, Thinx revised its website and removed many of the representations regarding the presence of chemicals in Thinx Period Underwear. *See* Exhibit 2, Joint Declaration of Class Counsel ("Joint Decl.") at ¶ 14. Thinx also discontinued production of its "organic" line of Thinx Period Underwear. *Id.*

### B.    Relevant Background

#### 1.    The Three Class Actions

On November 12, 2020, Destini Kanan[3] filed a class action lawsuit in the Central District of California alleging that Thinx misrepresents the true nature of Thinx Period Underwear by representing that it is, among other things, free from harmful chemicals and organic. (*Allahverdi, et al. v. Thinx, Inc.*, 2:20-cv-10341-SSS-JPR (C.D. Cal.) (the "California Action") (ECF No. 1)). Prior to filing this action, proposed Class Counsel spent many hours investigating the claims against Thinx. Proposed Class Counsel conducted extensive research into the design and manufacturing of Thinx Period Underwear, including analysis of Thinx's patent applications and investigation of its suppliers and manufacturers. Joint Decl. at ¶ 3. Given the novelty of consumer class action claims related to the presence of PFAS In consumer goods, proposed Class Counsel also engaged in extensive research on the applicable science related to PFAS, including its function in consumer goods like Thinx Period

---

[3] On September 23, 2021, Plaintiffs filed a Second Amended Complaint, removing Destini Kanan as a Plaintiff and replacing her with Haleh Allahverdi. (California Action, ECF No. 60).

Underwear. *Id*. In order to determine the precise nature of the PFAS present in Thinx Period Underwear, proposed Class Counsel also engaged two certified laboratories to conduct analytical testing that was consistent with acceptable methods for detecting PFAS in textiles. *Id*. at ¶¶ 2, 5. Proposed Class Counsel also consulted with an expert in the field of chemistry, who spent significant time investigating Thinx Period Underwear and the presence of PFAS. *Id*. at ¶ 5. Further, proposed Class Counsel analyzed nearly seven years of Thinx's representations regarding Thinx Period Underwear, including its website content, social media posts, print advertising, blog posts, articles, and other marketing materials dating back to the company's inception. *Id*. at ¶ 3.

Proposed Class Counsel's investigation was essential in identifying potential concerns resulting from the presence of PFAS in Thinx Period Underwear, analyzing the nature of Thinx's conduct, and evaluating potential claims and remedies. *Id*. at ¶ 13. Prior to filing the California Action, proposed Class Counsel spent a significant amount of time analyzing testing reports and working with an expert to develop a broad understanding of the methodologies used to detect PFAS in textiles like Thinx Period Underwear. *Id*. at ¶ 5. Proposed Class Counsel also expended significant resources researching and developing the legal claims at issue. *Id*. at ¶ 4.

The complaint in the California Action was amended on March 16, 2021 to add Haley Burgess as a plaintiff. (California Action, ECF No. 29.) On April 15, 2021, Thinx filed a motion to dismiss Plaintiffs' First Amended Complaint. (California Action, ECF No. 38.) On June 23, 2021, the court granted the motion in part, but allowed Plaintiffs Kanan and Burgess to proceed with their claims for breach of express warranty; unjust enrichment (in the alternative); and violations of California Consumers Legal Remedies Act ("CLRA") (Cal. Civ. § 1750 et seq.), Unfair Competition Law ("UCL") (Cal. Bus. & Prof. Code § 17200 et seq.), and False Advertising Law ("FAL")(Cal. Bus. & Prof. Code § 17500 et seq.). (California Action, ECF No. 46.)

After the court's ruling on the motion to dismiss, the parties continued litigating the California Action. Joint Decl. at ¶ 12. Plaintiffs consulted with numerous experts to aid in the evaluation and development of Plaintiffs' claims, including experts in the fields of biochemistry, reproductive and environmental toxicology, pharmacology, sustainability and chemical management, and textile manufacturing. *Id.* at ¶ 13. The parties also worked to negotiate a scheduling order pursuant to Rule 26(f) along with a Stipulated Protective Order. (California Action, ECF Nos. 51, 61.) The parties began exchanging written discovery requests in September 2021 and served responses and objections to these requests. Joint Decl. at ¶ 12. At that time, Thinx noticed depositions for Plaintiffs Destini Kanan and Haley Burgess. In turn, Plaintiffs served a notice for a Fed. R. Civ. P. 30(b)(6) deposition of Thinx. *Id.*

On June 18, 2021, just before the court in the Central District of California ruled on Defendant's motion to dismiss in the California Action, Plaintiffs Jillian Blenis and Lili Mitchell filed similar claims in the District of Massachusetts. (*Blenis, et al. v. Thinx, Inc.*, 1:21-cv-11019-IT (D. Mass.) (the "Massachusetts Action") (ECF No. 1).) Plaintiffs Blenis and Mitchell's claims were: breach of express warranty; unjust enrichment (in the alternative); negligent failure to warn; and negligent design. (Massachusetts Action, ECF No. 1.) These claims were alleged on behalf of a class of Massachusetts consumers. (*Id.*) On August 31, 2021, Plaintiffs filed an amended complaint to add claims for violation of Massachusetts Gen. Law c. 93A and breach of implied warranties. (Massachusetts Action, ECF No. 15.) On September 30, 2021, Defendant filed a Motion to Dismiss or Stay the action. (Massachusetts Action, ECF No. 19.) The parties fully briefed the motion, which was pending hearing prior to Plaintiffs' voluntary dismissal of the action. (Massachusetts Action, ECF Nos. 26, 31.)

On September 23, 2021, Plaintiffs in the California Action filed a Second Amended Complaint removing Destini Kanan as a Plaintiff and replacing her with Haleh Allahverdi. (California Action, ECF No. 60.)

On May 25, 2022, Plaintiff Nicole Dickens filed this lawsuit (the "New York Action"), alleging similar statutory consumer protection and common law claims arising out of Thinx's marketing and sale of Thinx Period Underwear. (ECF. No. 1.)

The California and Massachusetts Plaintiffs voluntarily dismissed their respective cases in order to consolidate their claims in with the New York Action. (California Action, ECF No. 71; Massachusetts Action, ECF No. 39.)  The operative consolidated class action complaint was filed on August 8, 2022 in anticipation of settlement, consolidating Ms. Dickens' claims with those of the California and Massachusetts Plaintiffs. (ECF. No. 16.)

### 2.    The Parties' Mediation and Settlement Efforts

In or around October 2021, while discovery was ongoing, the parties began discussing settlement in earnest. Joint Decl. at ¶ 15. The parties agreed to engage in a formal mediation with the Hon. Jay Gandhi (Ret.) of JAMS ADR. *Id*. at ¶ 16. In preparation for mediation, the parties exchanged discovery pursuant to Fed. R. Evid. 408, which allowed them to fully evaluate a potential settlement. *Id*. at ¶ 17. Additionally, the parties drafted confidential mediation briefs which were submitted to Judge Gandhi to aid in settlement discussions. *Id*.

As a result of extensive expert investigation, as well as independent investigation of proposed Class Counsel regarding the representations at issue, Plaintiffs and proposed Class Counsel entered these settlement negotiations with substantial information about the nature and extent of the challenged practices, as well as the merits of the legal claims and factual allegations. *Id*. at ¶ 19. Plaintiffs and proposed Class Counsel also had the ability to review key documents and information in this matter. *Id*. Review of this information positioned proposed Class Counsel to evaluate with

confidence the strengths and weaknesses of Plaintiffs' claims and prospects for success at class certification, summary judgment, and trial. *Id.*

On December 8, 2021, the parties participated in a full-day mediation with Judge Gandhi but were unable to reach a settlement at that time. *Id.* at ¶ 18. However, the parties continued to engage in settlement discussions, which included producing additional discovery relevant to settlement. *Id.* at ¶ 20. These discussions continued over a period of many months, and included numerous phone calls, video conferences, and written exchanges in an attempt to reach a resolution. *Id.* at ¶ 21.

The parties continued to engage in negotiations after the filing of the *Dickens* action before finally reaching a settlement in principle in June 2022, including with respect to the monetary benefit for Settlement Class Members. *Id.* at ¶ 22. Over the subsequent months, the parties have continued to finalize the details of the Settlement Agreement, including the terms of injunctive relief, the release, claims administrator, notice plan, and schedule. *Id.* at ¶ 23. During this process, the parties had regular Zoom conferences and continued to exchange redlines and drafts of documents. *Id.* Accordingly, the terms of the Settlement Agreement were negotiated at arm's length.

## III.    THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL

### A.    Material Terms of the Settlement

The Settlement Agreement provides for a common fund of up to Five Million Dollars ($5,000,000) ("Settlement Amount"), comprising a $4,000,000 Cash Minimum Amount and $1,000,000 Replenishment Amount. The Class Benefit provides two monetary options for Settlement Class Members. In addition to the monetary value of the proposed Settlement, Thinx will take measures to help ensure that PFAS are not intentionally added to Thinx Period Underwear at any stage of production, and has taken additional steps to help ensure supplier compliance. Thinx has also removed various marketing statements from its website relating to Agion.

### 1. The Settlement Fund

Defendant will establish a Cash Minimum Fund, subject to replenishment by the Replenishment Amount, providing for payment of valid claims by Settlement Class Members, Notice and administration costs, and attorneys' fees, costs, and service awards approved by the Court as follows:

   a. A non-reversionary cash fund in the amount of $4,000,000 providing for payment of valid claims by Settlement Class Members, Notice and administration costs, and attorneys' fees, costs, and service awards approved by the Court ("Cash Minimum Fund"). Thinx shall pay into the Cash Minimum Fund a portion of the Cash Minimum Amount sufficient to cover the estimated costs of Notice and settlement administration, as provided by the Settlement Administrator, within 21 days after Preliminary Approval.

   b. Replenishment fund in the amount of up to $1,000,000 in addition to the Cash Minimum Fund amount ("Maximum Cap") to cover additional valid claims by Settlement Class Members. Thinx shall in no event be required to pay any amounts above the Cash Minimum Fund amount other than for such actual valid claims.

   c. If total valid claims, Notice and administration costs, and attorneys' fees, costs, and service awards approved by the Court are less than the amount of the Cash Minimum Fund, the amount remaining shall be paid to a *cy pres* charity to be agreed upon by the parties and approved by the Court.

   d. If, after payment of Notice and administration costs and any attorneys' fees, costs, and service awards approved by the Court, payment of total valid claims would exceed the Maximum Cap, the payments to Settlement Class Members shall be prorated.

### 2. The Settlement Class

Plaintiffs seek preliminary approval of the Settlement on behalf of the following Settlement Class:

   All natural persons who purchased, not for resale, the following Thinx Period Underwear in the United States from November 12, 2016, to the date of entry of the Preliminary Approval Order: Cotton Brief, Cotton Bikini, Cotton Thong, Sport, Hiphugger, Hi-Waist, Boyshort, French Cut, Cheeky, and Thong.

Excluded from this Settlement Class are:

Thinx, as well as its parents, subsidiaries, affiliates, officers, directors, investors, and employees; any entity in which Thinx has a controlling interest; any judge presiding over this Action, their staff, and the members of the judge's immediate family, all persons who request exclusion from (opt-out of) the Settlement.

There is no dispute that the Settlement Class includes tens of thousands of members.

Personal injury claims are not being released as part of the Settlement.

### 3.    Class Benefits

Each Settlement Class Member who timely submits a valid Claim Form shall have the option to receive either cash reimbursement for past purchases of Thinx Period Underwear (up to three pairs total), or a voucher for future purchases of Eligible Voucher Products as defined below ("Class Benefit"), on the following terms:

- Cash Reimbursement. The amount of cash reimbursement for past purchases of Thinx Period Underwear will be contingent upon whether the Settlement Class Member provides a valid proof of purchase. Settlement Class Members will not, however, be required to provide proof of purchase for purchases of Thinx Period Underwear reflected in Thinx's records.

  o   Cash reimbursement with proof of purchase:  Each Settlement Class Member will receive a $7.00 refund for Thinx Period Underwear that are reflected in Thinx's records, or for which they submit a valid proof of purchase together with the Claim Form. The maximum cash reimbursement available for purchases reflected in Thinx's records or with proof of purchase will be $21.00.

  o   Cash reimbursement without proof of purchase:  Each Settlement Class Member will receive a $3.50 cash refund for Thinx Period Underwear that are not reflected in Thinx's records without proof of purchase but must provide details regarding the style(s) purchased and the approximate date, and location, of their purchases, and attest to the purchases under penalty of perjury. The maximum cash reimbursement available without proof of purchase will be $10.50.

- Voucher.  Settlement Class Members may choose to receive a single-use voucher for a discount of 35% off total purchases of Eligible Voucher Products (as defined below) in a single purchase transaction of up to $150 on the Thinx website (thinx.com). The maximum discount available shall be up to $52.50. Vouchers will not be transferable, subject to standard terms and conditions, and will be valid for six months from the date of issuance. Vouchers may be used on full-price Eligible Voucher Products only, and may not be combined with any other offers, discounts, or promotions.

- o "Eligible Voucher Products" are the products below:
  - Super Hiphugger
  - Heavy Hiphugger
  - Hiphugger
  - Sport
  - Heavy Boyshort
  - Boyshort
  - Super Hi-Waist
  - Heavy Hi-Waist
  - French Cut
  - Cheeky
  - Thong
  - Modal Super Cotton Brief
  - Modal Heavy Cotton Brief
  - Modal Cotton Brief
  - Modal Cotton Boyshort
  - Modal Cotton Bikini
  - Modal Cotton Thong
  - Air Hiphugger
  - Air Bikini

Thinx also affirms that it will continue to take the measures it implemented following the institution of the California and Massachusetts Actions to help ensure that PFAS are not intentionally added to Thinx Period Underwear at any stage of production, including maintaining production controls and material reviews. Thinx will continue to have suppliers of raw materials for Thinx Period Underwear review and sign a Supplier Code of Conduct and Chemical Supplier Agreement, which require suppliers to attest that PFAS are not intentionally added to Thinx Period Underwear. Thinx will disclose the use of anti-microbial treatments and the purpose for which they are used and will no longer refer to the antimicrobial components of Agion as "non-migratory."

### 4.    Class Notice

Defendant will pay all costs related to the Notice Plan from the Cash Minimum Fund. The Notice Plan will include direct email notice to purchasers, in addition to postcard notice (as needed), a settlement website, and publication notice in the form of an online banner advertisement campaign on certain websites to be determined by the parties with input from the Settlement Administrator.

The Notices, in forms substantially similar to the ones attached to the Settlement Agreement (Ex. 1) as Exhibits C-E, will inform the Settlement Class of the general terms of the Settlement, including a description of the case, information regarding the identity of the Settlement Class, and what claims will be released. Additionally, exclusion from the Settlement and opt-out procedures will be explained as well as how Settlement Class Members may exercise their right to object to the proposed Settlement at the Final Approval Hearing. Lastly, the Notice will include information on how to access Claim Forms, in forms substantially similar to the ones attached to the Settlement Agreement (Exhibit 1) as Exhibits A and B, which will be how Settlement Class Members can submit a claim for the Class Benefit.

### 5.    Claims Process

To be entitled to receive the Class Benefit, Settlement Class Members must accurately and timely submit the Claim Form and any required documentation within sixty (60) days following the Notice Date. The Settlement Administrator will review all Claim Forms and proofs of purchase to determine their validity, eligibility, and the type and amount of Class Benefit to which the Settlement Class Member is entitled. The Settlement Administrator will provide Valid Claimants with their elected choice of Class Benefit within twenty-one (21) days after the Effective Date.

### 6.    Attorneys' Fees and Costs and Service Awards

The amount of any Attorneys' Fee and Expense Payment shall be determined by the Court. After the Court preliminarily approves the Settlement, proposed Class Counsel may submit a fee application to the Court. As discussed below, proposed Class Counsel intends to apply for an award of attorneys' fees, inclusive of costs and expenses, not to exceed $1,500,000 in the aggregate.  In addition, proposed Class Counsel intends to move for service awards of $2,500 for each of the named Plaintiffs (for a total of $12,500).

The enforceability of the Agreement is not contingent on the amount of attorneys' fees or costs or service awards to Plaintiffs that may be approved by the Court.

### B.  Legal Standards for Preliminary Approval of a Proposed Settlement

Pursuant to Federal Rule of Civil Procedure 23(e), approval of a class action settlement generally occurs in two stages: (1) the preliminary approval stage, where the Court makes an initial evaluation of the settlement's fairness before notifying the class and (2) the final approval stage when class members and the parties are given an opportunity to be heard before the Court approves the settlement. *See In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 27 (E.D.N.Y. 2019) (citations omitted). At the preliminary approval stage, the Court must consider whether the proposed settlement is "likely" able to be approved under Rule 23(e)(2). *Hart v. BHH, LLC*, 334 F.R.D. 74, 76 (S.D.N.Y. 2020). A court should preliminarily approve a proposed settlement which "appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval." *Id*. (quoting *In re Nasdaq Market-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997)).

The Second Circuit's settlement approval analysis generally relies on two overlapping multi-factor tests. Federal Rule of Civil Procedure 23(e)(2) supplies the first test, which requires the Court, in evaluating the fairness, reasonableness, and adequacy of a settlement, to consider whether:

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
>> (i) the costs, risks, and delay of trial and appeal;
>>
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

> (iii) the terms of any proposed award of attorney's fees, including timing of
>
> payment; and
>
> (iv) any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). *See In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 692 (S.D.N.Y.

2019).

Courts supplement the 23(e)(2) analysis with the *Grinnell* factors, which include:

> (1) the complexity, expense and likely duration of the litigation;
>
> (2) the reaction of the class to the settlement;
>
> (3) the stage of the proceedings and the amount of discovery completed;
>
> (4) the risks of establishing liability;
>
> (5) the risks of establishing damages;
>
> (6) the risks of maintaining the class action through the trial;
>
> (7) the ability of the defendants to withstand a greater judgment;
>
> (8) the range of reasonableness of the settlement fund in light of the best possible
>
> recovery; and
>
> (9) the range of reasonableness of the settlement fund to a possible recovery in light of all
>
> the attendant risks of litigation.

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 117 (2d Cir. 2005) (citing *Grinnell*, 495 F.2d

at 463); *see also In Re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. at

29. Thus, the Court considers both the requirements of Rule 23(e)(2) and the *Grinnell* factors when

evaluating whether to grant preliminary approval. *See In re GSE Bonds* at 692.

When determining whether to certify a class for purposes of settlement, the Court must also

determine at the preliminary approval stage whether it will "likely be able to ... certify the class for

purposes of judgment on the proposal." See Fed R. Civ. P. 23(e)(1)(b). This requires an evaluation of whether the proposed class meets the requirements of Rule 23(a) and (b). Rule 23(a)'s requirements are "(1) numerosity ('the class is so numerous that joinder of all members is impracticable'), (2) commonality ('there are questions of law or fact common to the class'), (3) typicality ('the claims or defenses of the representative parties are typical of the claims or defenses of the class'), and (4) adequacy of representation ('the representative parties will fairly and adequately protect the interests of the class')." *In re Literary Works in Elec. Databases Copyright Litig.*, 654 F.3d 242, 249 (2d Cir. 2011) (quoting Fed. R. Civ. P. 23(a)). In addition, the class must meet the implied requirement of "ascertainability." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.* 330 F.R.D. *at* 50. Where, as here, certification is sought pursuant to Rule 23(b)(3), the Court must make the preliminary determination "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

"The law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost, and rigor of prolonged litigation." *In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 174 (S.D.N.Y. 2014); *see also Wal-Mart Stores, Inc.*, 396 F.3d *at* 116-17 ("We are mindful of the strong judicial policy in favor of settlements, particularly in the class action context. The compromise of complex litigation is encouraged by the courts and favored by public policy.") (internal quotation marks and citation omitted). Thus, the procedural and substantive fairness of a settlement should be examined "in light of the strong judicial policy in favor of settlement of class action suits." *Aponte v. Comprehensive Health Mgmt., Inc.*, No. 10 Civ. 4825 (JLC), 2013 WL 1364147, at \*2 (S.D.N.Y. Apr. 2, 2013) (quotation omitted).

### C.    The Settlement Satisfies the Rule 23(e) Factors

#### 1.    Plaintiffs and Proposed Class Counsel Have Adequately Represented the Class

Plaintiffs and proposed Class Counsel have adequately represented the Settlement Class as required by Rule 23(e)(2)(A) by diligently prosecuting this litigation on behalf of Plaintiffs and the Settlement Class, which included significant investigation; the filing of three class actions which were consolidated in this Court; hard-fought litigation of nearly two years; a full-day mediation with a certified mediator; and lengthy settlement negotiations that spanned nearly one year. Moreover, proposed Class Counsel has achieved a significant $5,000,000 settlement which will provide immediate relief to the class.

Plaintiffs also respectfully submit that they have retained counsel who are qualified, experienced and fully capable of prosecuting this litigation on behalf of the Class. Milberg has a proven track record in the prosecution of complex class actions nationwide. *See* Firm Resume, attached to Joint Declaration of Class Counsel (Ex. 2) as Exhibit A. The involvement of "experienced, capable counsel" gives the resulting agreement a "presumption of correctness." *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 575 (S.D.N.Y. 2008) (internal quotation marks omitted). Milberg has extensive experience and success in litigating product liability class actions has been recognized by numerous courts. *See Cleveland v. Whirlpool Corp.*, No. 20-CV-1906 (WMW/JFD), 2022 WL 2256353 (D. Minn. June 23, 2022); *Hamm v. Sharp Electronics Corp.*, No. 5:19-cv-00488, ECF No. 62 (M.D. Fla. Jan. 7, 2021); *Sarah Hill et al v. Canidae Corporation*, 5:20-cv-01374-JGB-SP, ECF No. 79 (C.D. Cal. Sept. 29, 2021); *Shaw et al v. Costco Wholesale Corporation et al*, 2:20-cv-01620-RAJ, ECF No. 64 (W.D. Wash. Oct. 4, 2021); *Ellen Berman, et al. v. General Motors LLC*, Case No. 2:18-cv-14371, ECF No. 161 (S.D. Fla. Nov. 18, 2019).

Bringing this experience and knowledge to bear, proposed Class Counsel believes that the Settlement is in the best interests of the Settlement Class. Courts recognize that counsel's judgment

is entitled to significant weight. *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 2010 WL 4537550, at *13 (S.D.N.Y. Nov. 8, 2010) ("Moreover, great weight is accorded to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation."); *see also Guevoura Fund Ltd. v. Sillerman*, 2019 WL 6889901, at *6 (S.D.N.Y. Dec. 18, 2019) (recognizing "great weight is accorded to counsel's recommendation" if the proposed settlement is reached by experienced counsel after arm's-length negotiations).

Further, the class representatives assert the same general injury as the rest of the class—economic loss caused by Defendant's alleged misrepresentations. Plaintiffs therefore have an "interest in vigorously pursuing the claims of the class." *In re GSE Bonds Antitrust Litig.*, 414 F.Supp. 3d at 692.

### 2.    The Proposed Settlement Was Negotiated at Arm's Length

Next, the Court considers whether the proposed settlement is the product of an arm's length negotiation. Fed. R. Civ. P. 23(e)(2)(B). The Settlement results from extensive, arm's length negotiations conducted by experienced counsel for all parties with the assistance of Judge Gandhi of JAMS ADR, an independent mediator. The use of a mediator in settlement negotiations further supports the presumption of fairness and the conclusion that the Settlement achieved was free of collusion. *See D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (a "mediator's involvement in . . . settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure"). The parties each submitted written statements to Judge Gandhi, briefing him on relevant facts and legal issues, and a full-day remote mediation session took place on December 8, 2021. During the mediation, the parties discussed their respective views regarding the merits of the action, including Defendant's defenses, and issues relating to materiality and damages. Although the parties were unable to reach an agreement in the initial mediation session, after six months of further negotiations following this mediation, they agreed in principle to settle this action as to all claims for

17

the Settlement Amount. Thereafter, the parties spent an additional five months negotiating the finer details of the settlement agreement. At no point did Defendant concede that a single aspect of Plaintiffs' claims was meritorious.

### 3. The Proposed Settlement Is Adequate in Light of the Costs, Risks, and Delay of Trial and Appeal

In assessing the Settlement, the Court should balance the benefits afforded to Settlement Class Members, including the immediacy and certainty of a recovery, against the significant costs, risks, and delay of proceeding with this litigation. *See* Fed. R. Civ. P. 23(e)(2)(C)(i). This factor overlaps with the first (the complexity, expense, and likely duration of the litigation) and fourth (the risks of establishing liability and damages) *Grinnell* factors. Settlement is favored when the alternative— litigating the case—will be long, complex, and expensive. *See In re GSE Bonds Antitrust Litig.*, 414 F.Supp. 3d at 693-94.

While Plaintiffs believe their claims would be borne out by the evidence presented at trial, they recognize that there are significant hurdles to proving liability or even proceeding to trial. Joint Decl. at ¶ 25. Among other things, Defendant denies all allegations of liability and has strenuously contended that Plaintiffs would be unable to prove that Defendant made any false or misleading material statements. In addition, in the California Action, Thinx challenged Plaintiffs' claims on several grounds, including with respect to the type, level, and amount of PFAS allegedly found through Plaintiffs' testing and whether they pose any risk of harm. (California Action, ECF No. 38.) These issues, which go to the merits of the case, would be central to Thinx's defense, and pose hurdles for Plaintiffs to succeed.

Without the Settlement, the parties faced the certainty that litigating this action through the completion of fact discovery, class certification, expert discovery, summary judgment, trial, and appeals, which would be complex, time-consuming, and expensive. Joint Decl. at ¶ 27. Here, the Settlement provides a substantial monetary benefit to Settlement Class Members without the risk and

delays of continued litigation. *See Strougo v. Bassini*, 258 F. Supp. 2d 254, 261 (S.D.N.Y. 2003) ("…if a shareholder or class member was willing to assume all the risks of [Litigation]…the passage of time would introduce yet more risks…and would, in light of the time value of money, make future recoveries less valuable than this current recovery.").

Plaintiffs also faced risks in establishing loss causation and damages. Plaintiffs would have been forced to undertake a fact-intensive economic inquiry to show the damages claimed would compensate consumers for the value they would have received absent the misrepresentations. Defendant would have likely opposed the validity of Plaintiffs' damage model and its ability to be calculated with proof common to the class. As with contested liability issues, issues relating to loss causation and damages would have likely come down to an unpredictable and hotly disputed "battle of the experts." Further, Plaintiffs' case was particularly susceptible to a danger inherent in reliance on expert witness testimony, namely that Thinx would almost certainly challenge Plaintiffs' experts under *Daubert*. If, for some reason, the Court determined that even one of Plaintiffs' experts should be excluded from testifying at trial, Plaintiffs' case would become much more difficult to prove. If any of these arguments prevailed at class certification, summary judgment, or trial, Settlement Class Members could have recovered significantly less or, indeed, nothing.

### 4. The Proposed Method for Distributing Relief is Effective

As demonstrated below, the method and effectiveness of the proposed notice and claims administration process are effective pursuant to Fed. R. Civ. P. 23(e)(2)(C)(ii). The plan has the "reasonable, rational basis" required for approval. *In Re Payment Card*, 330 F.R.D. at 40 (internal quotation marks omitted). The Settlement, like most class action settlements, will be effectuated with the assistance of Epiq, an experienced claims administrator. The Claims Administrator will employ a well-tested protocol for the processing of claims. Namely, Settlement Class Members will submit, either by mail or online using the Settlement Website, the Court-approved Claim Form. Based on the

information provided by claimants, the Settlement Administrator will determine each claimant's eligibility to receive either a $7 refund for each purchase of Thinx Period Underwear with proof of purchase up to $21, $3.50 refund for each purchase of Thinx Underwear without proof of purchase up to $10.50, or a single use voucher of up to $52.50. Ex. 1 at 5-6. Settlement Class Members will be notified of any defects or conditions of ineligibility and be given the chance to contest the rejection of their claims. *Id.* at 8.

After the Settlement reaches its effective date and the claims process is completed, Plaintiffs will seek Court approval to distribute the Settlement Amount. If approval is granted, Valid Claimants will be issued payments as described in the Settlement Agreement. If there are unclaimed funds, the parties will request Court approval of a *cy pres* beneficiary. The Settlement also provides for non-monetary relief which Thinx has already implemented, including increased production controls and material reviews, enforcement of a Supplier Code of Conduct and Chemical Supplier Agreement, and changes to marketing practices related to anti-microbial treatments (including Agion). *Id.* at 7-8.

## 5.  Attorneys' Fees and Expenses

The terms of any proposed award of attorneys' fees under the proposed Settlement, including timing of payment, are sufficiently reasonable to warrant preliminary approval. Fed. R. Civ. P. 23(e)(2)(C)(iii). Proposed Class Counsel will request compensation from the Cash Minimum Fund under the common fund doctrine. Proposed Class Counsel intends to apply for an award of attorneys' fees, inclusive of costs and expenses, not to exceed $1,500,000 in the aggregate. This fee represents approximately 30% of the $5,000,000 Settlement Amount. This fee request is in line with other settlements recently approved in this district. *See, e.g.*, *Hawaii Structural Ironworkers Pension Trust Fund v. AMC Entertainment Holdings, Inc., et al.*, No. 1:18-cv-00299-AJN, slip op. (S.D.N.Y. Feb. 14, 2022) (awarding one-third of $18 million recovery, plus expenses); *In re BHP Billiton Ltd. Sec. Litig.*, No. 1:16-cv-01445- NRB, slip op. (S.D.N.Y. Apr. 10, 2019) (awarding 30% of $50 million

recovery, plus expenses); *Landmen Partners, Inc. v. Blackstone Group L.P.*, 2013 WL 11330936, at

*3 (S.D.N.Y. Feb. 18, 2013) (awarding one-third of $85 million recovery, plus expenses).

Furthermore, courts in the Second Circuit frequently approve fees that are 33.33% of the settlement

amount. *See, e.g., Guevoura*, No. 1:15-CV- 07192-CM, 2019 WL 6889901, at *15 (granting fee of

33.33% of $7.5 million settlement); *Fogarazzo v. Lehman Bros. Inc.,* No. 03 Civ. 5194, 2011 WL

671745, *4 (S.D.N.Y. Feb. 23, 2011) (awarding 33.3% of $6.75 million settlement); *In re Giant

Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 165 (S.D.N.Y. 2011) (awarding 33% of $13 million

settlement); *In re Van Der Moolen Holding N.V. Sec. Litig.*, No. 03 Civ. 8284, slip. op. at 2 (S.D.N.Y.

Dec. 7, 2006) (awarding 33 1/3% of $8 million settlement) (ECF No. 45); *Maley v. Del Glob. Techs.

Corp.*, 186 F. Supp. 2d 358, 368 (S.D.N.Y. 2002) (awarding fee of 33.33% of the settlement).

Approval of the attorneys' fees sought is not a condition of the Settlement.

### 6.    Class Members Are Treated Equitably

The final factor, Rule 23(e)(2)(D), looks at whether class members are treated equitably. The

Settlement does not improperly grant preferential treatment to either Plaintiffs or any portion of the

Settlement Class. Rather, all Settlement Class Members, including Plaintiffs, will receive a

distribution from the Settlement Amount depending on the Class Benefit they choose, and, if they

choose cash reimbursement, whether they have proof of purchase or do not have proof of purchase.

Thus, all Settlement Class Members "will be subject to the same formula for the distribution from

the fund." *See Micholle v. Ophthotech Corp.*, No. 17 cv 1758 (VSB), 2022 WL 1158684, at *2

(S.D.N.Y. Mar. 14, 2022) (granting preliminary approval and finding the requirements of Rule 23(e)

satisfied where settlement agreement used a formula to ensure settlement proceeds were distributed

equally among class members). Many courts within this District and the Second Circuit have

approved settlements that differentiate refund amounts for those who have proof of purchase from

those without proof of purchase. *See, e.g., Hart v. BHH, LLC*, No. 15CV4804, 2020 WL 5645984

(S.D.N.Y. Sept. 22, 2020); *Mayhew v. KAS Direct, LLC*, No. 16 CV 6981 (VB), 2018 WL 3122059 (S.D.N.Y. June 26, 2018); *In re Sinus Buster Prod. Consumer Litig.*, No. 12-CV-2429 (ADS)(AKT, 2014 WL 5819921 (E.D.N.Y. Nov. 10, 2014).

### D.    The Settlement Also Meets the Remaining *Grinnell* Factors

#### 1.    The Complexity, Expense, and Likely Duration of the Litigation

As there is considerable overlap between the Rule 23(e) factors and the *Grinnell* factors, the Court may limit its analysis to areas where the *Grinnell* factors provide additional guidance. *Gordon v. Vanda Pharms. Inc.*, No. 19 CV 1108 (FB)(LB), 2022 WL 4296092, at *5 (E.D.N.Y. Sept. 15, 2022). As discussed in more detail above, the immediacy and certainty of a recovery, when balanced against the significant costs, risks, and delay of proceeding with this litigation, weigh in favor of settlement. *See* Section III. C. 3., *supra*.

#### 2.    The Reaction of the Class to Settlement

With respect to the second *Grinnell* factor (the reaction of the Settlement Class), the Notice regarding the Settlement has not yet been distributed. In the event any objections are received after the Notice is disseminated, they will be addressed by Class Counsel in connection with Plaintiffs' final approval papers.

#### 3.    The Stage of the Proceedings

Plaintiffs and proposed Class Counsel's knowledge of the merits as well as the strengths and weaknesses of their claims is certainly adequate to support the Settlement. This knowledge is based, in part, on the extensive investigation undertaken by proposed Class Counsel in preparing the initial complaint in addition to subsequent complaints filed in other districts and numerous amended complaints. After the motion to dismiss was denied in the California Action, the parties engaged in written discovery. As a result of the extensive investigation and the discovery conducted on issues at the heart of the Complaint's allegations, Plaintiffs and proposed Class Counsel were in a position to

intelligently weigh the strengths and weaknesses of their case and to engage in effective settlement discussions with Defendant. *See In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 458 (S.D.N.Y. 2004) ("Formal discovery is not a prerequisite; the question is whether the parties had adequate information about their claims."); *In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. at 177 (finding that even where "no merits discovery occurred in this case to date," lead counsel was "knowledgeable with respect to possible outcomes and risks in this matter and, thus, able to recommend the Settlement").

Indeed, prior to mediation, the parties exchanged significant information, which allowed the parties to assess the strengths of their positions and attacked each other's potential weaknesses. During mediation, the parties thoroughly discussed and vetted the facts and law, as Judge Gandhi engaged in a critical analysis of the parties' arguments. The parties continued to engage in settlement discussion, including the exchange of additional discovery, in the months following mediation.

This factor strongly supports preliminary approval of the Settlement.

### 4.    The Risks of Maintaining the Class Action Through Trial

As discussed in more detail above, the risks of establishing liability and damages, in addition to the risks of maintaining a class action through trial, weigh in favor of preliminary approval. *See* Section III. C. 3., *supra*. Although Plaintiffs are confident in the merits of their claims, they also recognize that the Action presented many risks to achieving class certification and establishing both liability and damages.

### 5.    The Ability of Defendant to Withstand a Greater Judgment

A court may also consider a defendant's ability to withstand a judgment greater than that secured by settlement, although it is not generally one of the determining factors. *See D'Amato*, 236 F.3d at 86. While Defendant here is able to withstand a judgment in excess of the Settlement Amount, courts generally do not find this to be an impediment to settlement when the other factors favor the

settlement. *See In re Vitamin C Antitrust Litig.*, 2012 WL 5289514, at *6 (E.D.N.Y. Oct. 23, 2012) (acknowledging that "in any class action against a large corporation, the defendant entity is likely to be able to withstand a more substantial judgment, and . . . this fact alone does not undermine the reasonableness of the instant settlement").

> ### 6.    The Reasonableness of the Settlement in Light of the Best Possible Recovery and the Attendant Risks of Litigation

The adequacy of the amount offered in settlement must be judged "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987). The Court need only determine whether the Settlement falls within a "range of reasonableness"—a range which "recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972); *see also Global Crossing*, 225 F.R.D. at 461 (noting that "the certainty of [a] settlement amount has to be judged in [the] context of the legal and practical obstacles to obtaining a large recovery"); *In re Indep. Energy Holdings PLC Sec. Litig.*, 2003 WL 22244676, at *3-*4 (S.D.N.Y. Sept. 29, 2003) (noting few cases tried before a jury result in full amount of damages claimed).

In addition, in considering the reasonableness of the Settlement, the Court should consider that the Settlement provides for payment to Settlement Class Members now, rather than a speculative payment years down the road. *See In re Time Warner, Inc. Sec. & ERISA Litig.*, 2006 WL 903236, at *13 (S.D.N.Y. Apr. 6, 2006) (where settlement fund is in escrow earning interest, "the benefit of the Settlement will . . . be realized far earlier than a hypothetical post-trial recovery"). Given that the average price of the products included in the Settlement retails for $28, that Settlement Class Members may receive 25% of their damages with proof of purchase or approximately 12% of their damages without proof of purchase for up to 3 pair is a very favorable recovery under any

circumstances. (Joint Decl. at ¶ 2, fn. 2.; Ex. 1 at 5.) This percentage of recovery is well above the recovery range of settlements that have received approval within this District. *See, e.g., In re Patriot Nat'l, Inc. Sec. Litig.*, 828 F. App'x 760, 762 (2d Cir. 2020) (affirming district court's approval of settlement representing 6.1% of the class's maximum potentially recoverable damages); *Vaccaro v. New Source Energy Partners L.P.*, No. 15 CV 8954 (KMW), 2017 WL 6398636, at *6 (S.D.N.Y. Dec. 14, 2017) (approving settlement representing 6.5% of the maximum recoverable damages); *In re Merrill Lynch & Co. Research Reports Sec. Litig.*, 246 F.R.D. 156, 167 (S.D.N.Y. 2007) (approving settlement that was "between approximately 3% and 7% of estimated damages").

Although Plaintiffs and Defendant disagree about the amount of maximum recoverable damages, the common fund of up to Five Million Dollars ($5,000,000), comprising a $4,000,000 Cash Minimum Amount and $1,000,000 Replenishment Amount is a substantial recovery regardless of which party's damages metric is used. Here, Plaintiffs faced numerous legal, procedural, and practical hurdles, including issues related to materiality of the alleged non-conforming ingredients at issue, that, if not overcome, could preclude any recovery for Plaintiffs and the Settlement Class. Thus, the Settlement Amount is reasonable.

## IV.    THE PROPOSED FORM AND METHOD OF PROVIDING NOTICE TO THE CLASS ARE APPROPRIATE

There are no "rigid rules" when measuring the adequacy of a settlement notice in a class action under either the Due Process Clause or the Federal Rules; rather, the court should look to its reasonableness. *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, 2007 WL 313474, at *8 (S.D.N.Y. Feb. 1, 2007). "Notice need not be perfect, but need be only the best notice practicable under the circumstances, and each and every class member need not receive actual notice, so long as class counsel acted reasonably in choosing the means likely to inform potential class members." *Id.*

The proposed Email Notice, Postcard Notice, and Detailed Notice, attached as Exhibits C-E to the Settlement Agreement (attached hereto as Ex. 1) as well as the plan for Publication Notice

respectively satisfy due process and the Federal Rules of Civil Procedure. "Due process requires that the notice to class members fairly apprise the ... members of the class of the terms of the proposed settlement and of the options that are open to them in connection with [the] proceedings." *Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1079 (2d Cir. 1995) (internal quotation marks and citations omitted). Rule 23(c)(2)(B) requires notice of the pendency of the class action to be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." It must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

Collectively, as required by Rule 23(c)(2)(B), the proposed forms of notice here "clearly and concisely state in plain, easily understood language," the: (1) nature of the action; (2) definition of the certified class; (3) the class claims, issues, or defenses; (4) that a class member may appear through counsel; (5) that a class member will be excluded at his request; (6) the time and manner for requesting exclusion; and (7) the binding effect of a class judgment under Rule 23(c)(3). *See In re Take Two Interactive Sec. Litig.*, No. 06 CIV. 1131 (RJS), 2010 WL 11613684, at *12–13 (S.D.N.Y. June 29, 2010).

Upon entry of the Preliminary Approval Order, the Settlement Administrator will engage in a few activities to disseminate notice to the Settlement Class. First, the Settlement Administrator will create a Settlement Website which will be optimized for viewing on both mobile devices and personal computers. Ex. 1 at 10. The Settlement Website will include, without limitation, the Detailed Notice, the Agreement, the operative Consolidated Class Action Complaint, the Preliminary Approval Motion and Order as entered, Plaintiffs' Motion for Attorneys' Fees and Expenses, Plaintiffs' Motion for Final Approval of Class Action Settlement, answers to a set of

frequently asked questions, and information on how to object or request exclusion, as well as contact information for proposed Class Counsel and the Settlement Administrator. *Id*. The Settlement Website will include a readily accessible means for members of the Settlement Class to electronically submit a Claim Form or request for exclusion, as well as an address to which Claim Forms or requests for exclusion may be mailed. *Id*. Second, the Settlement Administrator will also email each member of the Settlement Class whose email is known to the Defendant and the Email Notice that contains a link to the Settlement Website. *Id*. Third, the Settlement Administrator will mail to each member of the Settlement Class in which Defendant does not have a valid email address for or for whom the email notice was returned as undeliverable a postcard notice with the terms of the Settlement. *Id*. at 11. Lastly, the Settlement Administrator shall implement banner advertisements on certain websites which will continue for a period of 30 days to reach the portions of the Settlement Class for whom Defendant does not have contact information. *Id*.

Plaintiffs also request that the Court appoint Epiq as the Claims Administrator to provide all Court-approved notices to the Settlement Class, to process Claim Forms, and to administer the Settlement. Epiq is a nationally-recognized notice and claims administration firm that has successfully administered numerous product mislabeling class action settlements, and was selected by the parties through a competitive bidding process.

## V.    CERTIFICATION OF THE CLASS IS APPROPRIATE

### A.    The Rule 23(a) Requirements are Satisfied

The parties have agreed that the Court may certify the Settlement Class for the purposes of the Settlement and appoint Plaintiffs as the Class Representatives and Plaintiffs' Counsel as Class Counsel. *Id*. The Settlement Class is defined as "All natural persons who purchased, not for resale, the following Thinx Period Underwear in the United States from November 12, 2016, to the date of entry of the Preliminary Approval Order:  Cotton Brief, Cotton Bikini, Cotton Thong, Sport,

Hiphugger, Hi-Waist, Boyshort, French Cut, Cheeky, and Thong." *Id*. at 4. Excluded from the Settlement Class are (i) Thinx; (ii) its parents, subsidiaries, affiliates, officers, directors, investors, and employees; (iii) any entity in which Thinx has a controlling interest; and (iv) any judge presiding over this Action, their staff, and the members of the judge's immediate family." *Id.*

The Second Circuit has long acknowledged the propriety of certifying a class solely for purposes of a class action settlement. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997); *Weinberger v. Kendrich*, 698 F.2d 61, 73 (2d Cir. 1982). Indeed, certification of a settlement class "has been recognized throughout the country as the best, most practical way to effectuate settlements involving large numbers of claims by relatively small claimants." *In re Prudential Sec. Inc. Ltd. Partnerships Litig.*, 163 F.R.D. 200, 205 (S.D.N.Y. 1995). A party seeking class certification must first show that the class action satisfies the following four prerequisites set forth in Rule 23(a): (i) numerosity; (ii) commonality of questions of law or fact; (iii) typicality of the named plaintiff's claims and defenses; and (iv) the adequacy of the named plaintiff. *See* Fed. R. Civ. P. 23(a). Additionally, the party must show that the predominance and superiority requirements of Rule 23(b)(3) are met. However, the manageability concerns of Rule 23(b)(3) are not at issue for a settlement class. *See Amchem*, 521 U.S. at 620 ("a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial.").

Courts within this District and the Second Circuit have generally found mislabeling cases to be particularly well-suited for class action treatment because they allow for consumer fraud laws to be enforced in circumstances where there are numerous purchasers with small individual claims that otherwise would effectively be barred from litigation. This action is no exception. *See, e.g., Kurtz v. Kimberly-Clark Corp.*, 321 F.R.D. 482 (E.D.N.Y. 2017); *Goldemberg v. Johnson & Johnson Consumer Companies, Inc.,* 317 F.R.D. 374 (S.D.N.Y. 2016); *In re Kind LLC "Healthy & All*

*Natural" Litig.*, 337 F.R.D. 581 (S.D.N.Y. 2021); *In re Scotts EZ Seed Litig.*, 304 F.R.D. 397 (S.D.N.Y. 2015).

### 1.  The Settlement Class is so numerous that joinder is impracticable

Rule 23(a)(1) requires that the class be so numerous that joinder of all members is impracticable. For purposes of Rule 23(a)(1), however, "[i]mpracticable does not mean impossible," *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993), but "only that the difficulty or inconvenience of joining all members of the class make the use of the class action appropriate." *Central States Southeast & Southwest Areas Health & Welfare Fund v. Merck-Medco Managed Care, LLC*, 504 F.3d 229, 244-245 (2d Cir. 2007). Numerosity is presumed when a class consists of forty members or more. *See Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995).

Here, purchasers of Thinx Period Underwear during the relevant time period are indisputably in the tens of thousands and are geographically located throughout the United States, thus making joinder impracticable. Joint Decl. at ¶ 17. Thus, the numerosity requirement is easily met.

### 2.  There are questions of law and fact common to the Settlement Class

The commonality requirement is satisfied where, as here, there are "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). To establish commonality, class members must have "suffered the same injury," and "[t]heir claims must depend upon a common contention." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2545, 2551 (2011). Class members' "common contention . . . must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each of the claims in one stroke." *Id.* at 2551.

Mislabeling cases like this one easily meet the commonality requirement, which is satisfied where "putative class members have been injured by similar material misrepresentations and

omissions." *In re Initial Pub. Offering Sec. Litig.,* 243 F.R.D. 79, 85 (S.D.N.Y. 2007), adhered to on reconsideration, No. 01 CIV. 3020 (SAS), 2007 WL 844710 (S.D.N.Y. Mar. 20, 2007); see *In re Oxford Health Plans, Inc.*, 191 F.R.D. 369, 374 (S.D.N.Y. 2000) ("Where the facts as alleged show that Defendants' course of conduct concealed material information from an entire putative class, the commonality requirement is met.").

Here, the Consolidated Complaint alleges the Defendant sold Thinx Period Underwear with harmful and non-conforming ingredients during the Class Period, with numerous questions of law and fact common to the Settlement Class. Common questions include: (a) whether Defendant omitted material facts and/or failed to warn reasonable consumers regarding the known risks of using Thinx Period Underwear; (b) whether the representations made by Defendant were material to a reasonable consumer; (c) whether the Defendant breached warranties by selling Thinx Period Underwear with harmful and non-conforming ingredients; and (e) whether the Settlement Class has sustained damages and, if so, what is the appropriate measure of damages.

### 3.   Plaintiffs' claims are typical of the claims of the Settlement Class

Rule 23(a)(3), the typicality requirement, is satisfied when a plaintiff shows that "the claims of the named plaintiffs arise from same practice or course of conduct that gives rise to the claims of the proposed class members." *In re Vivendi Universal, S.A*., 242 F.R.D. 76, 85 (S.D.N.Y. 2007), (citation omitted); *see Oxford Health Plans*, 191 F.R.D. at 375. "Typical" does not mean "identical." *See In re Marsh & McLennan Companies, Inc. Sec. Litig.*, No. 04 CIV. 8144 (CM), 2009 WL 5178546 at *10 (S.D.N.Y. Dec. 23, 2009). The focus of the typicality inquiry is not the plaintiff's behavior, but rather the defendants' actions. *See Teachers' Ret. Sys. of Louisiana v. ACLN   Ltd.,* No. 01 Civ. 11814 (LAP), 2004 WL 2997957, at *4 (S.D.N.Y. Dec. 27, 2004). The critical question is whether the proposed class representatives and the class can point to the same "common course of conduct" by defendants to support a claim for relief. Accordingly, "[f]actual

differences involving the date of acquisition, type of securities purchased and manner by which the investor acquired the securities will not destroy typicality if each class member was the victim of the same material misstatements and the same fraudulent course of conduct." *Marsh & McLennan*, 2009 WL 5178546, at *10; *see also Robidoux*, 987 F.2d at 936-37 ("When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met…")

Here, Plaintiffs' claims, legal theories, and evidence are identical to those of other members of the Settlement Class. Plaintiffs, like all members of the Settlement Class, purchased Thinx Underwear during the Class Period and suffered damages because of Defendant's alleged material misstatements and omissions. Accordingly, the Rule 23(a)(3) typicality requirement is satisfied.

### 4. Plaintiffs will fairly and adequately represent the Settlement Class

Rule 23(a)(4) is satisfied if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The Court must measure the adequacy of representation by two standards: (1) whether the claims of the Plaintiffs conflict with those of the class; and (2) whether the Plaintiffs' counsel are qualified, experienced, and generally able to conduct the litigation. *See In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 291 (2d Cir. 1992); *Marsh & McLennan*, 2009 WL 5178546, at *10; *Oxford Health Plans,* 191 F.R.D. at 376.

Here, Plaintiffs' interests are coextensive with those of the Settlement Class. Like all members of the Settlement Class, Plaintiffs have claims against Defendant in connection with their purchase of Thinx Period Underwear during the Class Period. Plaintiffs, like all members of the Settlement Class, were also allegedly injured by Defendant's allegedly wrongful acts. Proof of Plaintiffs' claims would necessarily involve adjudicating the same issues of law and fact as the claims of the Settlement Class as a whole. Thus, Plaintiffs and the class they seek to represent have the same interests in recovering damages allegedly caused by Defendant's wrongful conduct. *See In re*

*Polaroid ERISA Litig.*, 240 F.R.D. 65, 77 (S.D.N.Y. 2006) ("Where plaintiffs and class members share the common goal of maximizing recovery, there is no conflict of interest between the class representatives and other class members").

Plaintiffs also respectfully submit that they have retained counsel who are qualified, experienced and fully capable of prosecuting this litigation on behalf of the Class. Milberg has a proven track record in the prosecution of complex class actions nationwide. *See* Firm Resume, attached to Joint Declaration of Class Counsel (Ex. 2) as Exhibit A. Through their efforts in this litigation, Milberg has obtained a settlement of up to $5,000,000 for the benefit of the Settlement Class, a very substantial percentage of the alleged damages Plaintiffs sought to prove. Plaintiffs, therefore, satisfy the Rule 23(a) adequacy requirements.

### B.    The Requirements of Rule 23(b)(3) are Satisfied

Next, at least one of the three conditions imposed by Rule 23(b) must be satisfied. Plaintiffs respectfully submit that Rule 23(b)(3) is satisfied here, because: (1) "the questions of law or fact common to class members predominate over any questions affecting only individual members"; and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

### 1.    Common questions predominate

The predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. "Common questions of law and fact predominate when issues subject to generalized proof and applicable to the class as a whole predominate over, and are more substantial than, issues that are subject to individualized proof." *In re Dynex Capital, Inc. Sec. Litig.*, No. 05 Civ. 1897 (HB), 2011 WL 781215, at *3 (S.D.N.Y. Mar. 7, 2011). In evaluating predominance, the Court's inquiry "must be rigorous and may entail some overlap with the merits of the [P]laintiffs' underlying claim," but the Court may not "engage in free-

ranging merits inquiries at the class certification stage." *Amgen, Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 465-66 (2013).

In this action, as is generally so in mislabeling class actions, each element of Plaintiffs' claim involves common questions of law and fact because the same set of operative facts applies to the Settlement Class. Specifically, common questions include whether Thinx omitted or failed to disclose material information to Plaintiffs and the Settlement Class regarding certain harmful ingredients and whether the Settlement Class was harmed when the allegedly misrepresented and omitted facts came to light. Accordingly, whether Thinx engaged in false or misleading advertising will entail common proof. Likewise, materiality "is an objective [question], involving the significance of an omitted or misrepresented fact to a reasonable investor," and thus "can be proved through evidence common to the class" and "is a common question for purposes of Rule 23(b)(3)." *Amgen*, 568 U.S. at 467. In *Basic v. Levinson*, 485 U.S. 224 (1988), the Supreme Court dispensed with the requirement that each settlement class member prove individual reliance on Defendant's alleged misstatements and/or omissions. Thus, the "predominance" requirement is satisfied.

## 2. Class treatment of Plaintiffs' claims is superior

Finally, Rule 23(b)(3) requires that a class action be superior to other available methods for the fair and efficient adjudication of the controversy. The rule lists several matters pertinent to this finding: (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action. Fed. R. Civ. P. 23(b)(3)(A)-(D). Each factor weighs in favor of finding superiority here.

As to the first two factors, proposed Class Counsel is unaware of any individual Settlement Class member interested in bringing their own action against Defendant for conduct that was alleged

in Plaintiffs' Consolidated Complaint. The absence of other matters confirms the limited interest individual Settlement Class Members have in prosecuting separate actions. Absent certification, the burden and expense of litigating would not be distributed among the Settlement Class, one of the advantages of the class action mechanism.

Further, certification of the Settlement Class for the purpose of effecting the Settlement is the superior method to facilitate the resolution of the Settlement Class's claims against Defendant. Without the settlement class device, Defendant could not obtain a class-wide release, and therefore would have had little, if any, incentive to enter into the Settlement. Moreover, certification of a class for settlement purposes will allow the Settlement to be administered in an organized and efficient manner. *See Telik*, 576 F. Supp. 2d at 584. Resolution of the Settlement Class's claims against Defendant through the Settlement is superior to any other available method of resolution.

For all of the foregoing reasons, the Settlement Class meets the class certification requirements of both 23(a) and 23(b).

### C.    The Class is Ascertainable

The Second Circuit stated in *Brecher v. Republic of Argentina,* 806 F.3d 22, 24 (2d Cir. 2015) that "the touchstone of ascertainability is whether the class is sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member." (citations and quotation marks omitted)*.* In *In re Petrobras Securities*, 862 F.3d 250, 269 (2d Cir. 2017), the Second Circuit clarified that the ascertainability element merely requires that a proposed class be definable "using objective criteria that establish a membership with definite boundaries." Here, ascertainability is met because the objective criteria for defining the class is consumers who purchased the Thinx Period Underwear, and determining who purchased the Thinx Period Underwear can be reliably and feasibly determined based upon Defendant's records and those of Defendant's small number of authorized retailers, as is being done with the Notice Plan.

## VI.    PROPOSED SCHEDULE OF SETTLEMENT EVENTS

Plaintiffs respectfully propose the following schedule for the Court's review and approval, which summarizes the deadlines in the Preliminary Approval Order. If the Court agrees with the proposed schedule, Plaintiffs request that the Court schedule the Final Approval Hearing for a date one hundred sixty five (165) calendar days after entry of the Preliminary Approval Order, or at the Court's earliest convenience thereafter.

| | |
|---|---|
| Deadline for mailing individual Notices and Claim Forms ("Notice Date") | *45 calendar days after entry of Preliminary Approval Order.* |
| Deadline for filing motions in support of Proposed Class Counsel's application for fees and expenses and class representative service awards | *45 days after Notice Date* |
| Deadline for submission of Claim Forms, requests for exclusion, or objections | *Received no later than 60days after Notice Date.* |
| Deadline to file motion for Final Approval and any responses to objections | *No later than 20 days before the Settlement Fairness Hearing* |
| Deadline for filing reply papers in support of the motions | *No later than 7 calendar days before the Settlement Fairness Hearing.* |
| Settlement Fairness Hearing | *At the Court's convenience, but no fewer than 165 calendar days after the entry of the Preliminary Approval Order.* |

## VII.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court:

1.      Preliminarily approve the Settlement Agreement;

2.      Certify the Rule 23(b)(3) Settlement Class (defined on page 12 above);

3.      Appoint Erin Ruben, Rachel Soffin, Harper Segui, and Hunter Bryson of Milberg Coleman Bryson Phillips Grossman, PLLC as Settlement Class Counsel;

4.      Appoint Epiq as the Claims Administrator; and

5.      Enter the proposed schedule as detailed in the Proposed Order attached as Exhibit F

to the Settlement Agreement (attached hereto as Exhibit 1), or another schedule, for

notice, opt-out deadlines, objections deadlines, and dates for final approval briefing

and hearing.

DATED:      November 22, 2022              Respectfully submitted,

*/s/ Erin J. Ruben*
Erin J. Ruben*
**MILBERG COLEMAN BRYSON PHILLIPS
GROSSMAN, LLP**
900 W. Morgan Street
Raleigh, NC 27603
P.O. Box 12638
Raleigh, NC 27605
eruben@milberg.com

Rachel Soffin**
**MILBERG COLEMAN BRYSON PHILLIPS
GROSSMAN, LLP**
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
rsoffin@milberg.com

Harper T. Segui**
**MILBERG COLEMAN BRYSON PHILLIPS
GROSSMAN, LLP**
825 Lowcountry Blvd., Suite 101
Mt. Pleasant, SC 29464
hsegui@milberg.com

J. Hunter Bryson**
**MILBERG COLEMAN BRYSON PHILLIPS
GROSSMAN, LLP**
405 E 50th Street
New York, NY 10022
Tel: (630) 796-0903
hbryson@milberg.com

***Attorneys for Plaintiffs and the Class***

*Admitted Pro Hac Vice*
*** Pro Hac Vice Forthcoming*

36