# EXHIBIT 1

**SETTLEMENT AGREEMENT AND RELEASE**

This Settlement Agreement and Release ("Settlement" or "Agreement") is made and entered into by and between plaintiffs Haleh Allahverdi, Jillian Blenis, Haley Burgess, Nicole Dickens, and Lili Mitchell (collectively, "Plaintiffs" or "Class Representatives"), individually and as representatives of the Settlement Class as defined below, and Thinx Inc.  Plaintiffs and Thinx collectively are referred to herein as the "Parties," or, respectively, as a "Party."

**DEFINITIONS**

As used herein, the following terms have the meanings set forth below:

A.    "Action" means the litigation entitled *Nicole Dickens, et al. v. Thinx Inc.*, Case No. 1:22-cv-04286-JMF, filed in the United States District Court for the Southern District of New York (the "Court").

B.    "Attorneys' Fee and Expense Payment" means the amount of attorneys' fees and reimbursement of costs and expenses awarded to Class Counsel by the Court from the Cash Minimum Fund.

C.    "Cash Minimum Amount" means the amount of four million dollars ($4,000,000.00) to be deposited by Thinx in the Cash Minimum Fund.

D.    "Cash Minimum Fund" means the non-reversionary cash fund described in Section 3.2 of this Agreement to be distributed in accordance with the terms of this Agreement.

E.    "Claim Form(s)" means the form(s) for Settlement Class Members to make a claim, substantially in the form of Exhibits A and B.

F.    "Class Counsel" means Erin Ruben, Hunter Bryson, Harper Segui, and Rachel Soffin of the law firm of Milberg Coleman Bryson Phillips Grossman PLLC.

G.    "Notice" means the method of communication of this Settlement to the Settlement Class, as contemplated in Section 7 of this Agreement, and approved by the Court.  The Notice shall be substantially in the forms attached as Exhibits C ("Email Notice"), D ("Postcard Notice"), and E ("Detailed Notice").

H.    "Notice Plan" means the plan for disseminating notice of the Settlement to the Settlement Class, described in Section 7.3 of this Agreement.

I.    "Notice Date" means the first date on which notice is emailed or mailed to the Settlement Class, provided, however, that any re-emailing or re-mailing of such notice (including mailing the Postcard Notice to members of the Settlement Class for whom the Email Notice is returned as undeliverable) shall not affect or extend the Notice Date.  The Notice Date shall be 45 days after the Court issues the Preliminary Approval Order.

J.    "Preliminary Approval Order" means the Court's order preliminarily approving the Settlement, Notice, and Notice Plan, substantially in the form of Exhibit F.

K.    "Released Parties" means Thinx, its past or present parent, sister and subsidiary corporations, affiliated entities, predecessors, successors, assigns, and any of their present and former directors, officers, employees, shareholders, investors, agents, partners, licensors, privies, representatives, attorneys, accountants, and all persons acting by, through, under, or in concert with them.

L.   "Releasing Parties" means Plaintiffs and all Settlement Class Members, including any and all of their respective heirs, executors, administrators, representatives, agents, partners, successors, or assigns.

M.   "Replenishment Amount" means the amount of up to one million dollars ($1,000,000.00) in addition to the Cash Minimum Amount to be paid by Thinx to cover additional valid claims by Settlement Class Members.  The Replenishment Amount shall in no event be paid by Thinx unless required for payment of actual valid claims that would otherwise result in exceeding the amount of the Cash Minimum Fund.

N.   "Settlement Administrator" means an independent settlement administrator to be agreed upon by the Parties and approved by the Court.

O.   "Settlement Class" means all natural persons who purchased, not for resale, Thinx Period Underwear in the United States from November 12, 2016, to the date of entry of the Preliminary Approval Order.  Excluded from the Settlement Class are (i) Thinx; (ii) its parents, subsidiaries, affiliates, officers, directors, investors, and employees; (iii) any entity in which Thinx has a controlling interest; and (iv) any judge presiding over this Action, their staff, and the members of the judge's immediate family.  Thinx stipulates to this Settlement Class for settlement purposes only.

P.   "Settlement Class Members" means all members of the Settlement Class other than those persons who validly request exclusion from the Settlement Class as set forth in Section 6 this Agreement.

Q.   "Settlement Website" means a publicly-accessible website created and maintained by the Settlement Administrator for the purpose of providing the Settlement Class with notice of and information about the Settlement as well as providing Claim Forms for the Settlement Class to view and submit.

R.   "Thinx's Counsel" means the law firm of Morrison & Foerster LLP.

S.   "Thinx Period Underwear" means any of the following Thinx period underwear styles sold between November 12, 2016 and the date of entry of the Preliminary Approval Order:

- Cotton Brief
- Cotton Bikini
- Cotton Thong
- Sport
- Hiphugger
- Hi-Waist
- Boyshort
- French Cut
- Cheeky
- Thong

T.   "Valid Claimant" means any Settlement Class Member who submitted a complete, accurate, valid, and timely Claim Form.

## RECITALS

This Agreement is made for the following purposes and with reference to the following facts:

WHEREAS, on May 25, 2022, plaintiff Nicole Dickens filed this lawsuit against Thinx in the U.S. District Court for the Southern District of New York, individually and on behalf of a proposed nationwide class and Florida subclass, alleging state law consumer protection, warranty, and common law claims arising out of the purchase of Thinx Period Underwear. Plaintiff Dickens, together with Plaintiffs Haleh Allahverdi, Jillian Blenis, Haley Burgess, and Lili Mitchell, filed a Consolidated Class Action Complaint on August 8, 2022, on behalf of proposed nationwide and California, Florida, and Massachusetts subclasses alleging state law consumer protection, warranty, and other statutory and common law claims arising out of the purchase of Thinx Period Underwear;

WHEREAS, Plaintiffs Allahverdi and Burgess had previously filed, on November 12, 2020, a substantially similar case in the United States District Court for the Central District of California on behalf of a putative nationwide class and California subclass of purchasers of Thinx Period Underwear (*Allahverdi, et al. v. Thinx, Inc.*, 2:20-cv-10341-SSS-JPR (C.D. Cal.)), and voluntarily dismissed that case on August 8, 2022, in order to consolidate all claims in this Action;

WHEREAS, Plaintiffs Blenis and Mitchell had previously filed, on June 18, 2021, a substantially similar case in the United States District Court for the District of Massachusetts on behalf of a putative class of Massachusetts purchasers of Thinx Period Underwear (*Blenis, et al. v. Thinx, Inc.*, 1:21-cv-11019-IT (D. Mass.)), and voluntarily dismissed that case on June 27, 2022, in order to consolidate all claims in this Action;

WHEREAS, the Parties in *Allahverdi* and *Blenis* conducted a full-day mediation before the Hon. Jay Gandhi (Ret.) of JAMS on December 8, 2021, and although they were unable to reach a settlement at the mediation, they continued settlement negotiations for more than six months thereafter, including with Plaintiff Dickens, which culminated in an agreement in principle to resolve all claims of the proposed nationwide Settlement Class in this Action in the State of New York, where Thinx is headquartered, subject to Court approval;

WHEREAS, Class Representatives and Class Counsel believe that the claims asserted in the Action have merit and have examined and considered the benefits to be obtained under this Settlement, the risks associated with the continued prosecution of this complex and time-consuming litigation, and the likelihood of ultimate success on the merits, and have concluded that the Settlement is fair, adequate, reasonable, and in the best interests of the Settlement Class;

WHEREAS, Thinx denies all of the allegations made in the Action and denies that it did anything unlawful or improper, and its agreement to this Settlement is not an admission of guilt or wrongdoing of any kind;

WHEREAS, the Parties have each looked at the uncertainties of trial and the benefits to be obtained under the Settlement, and have considered the costs, risks, and delays associated with the continuation of this Action and the likely appeals of any rulings in favor of either Plaintiffs or Thinx; and

WHEREAS, the Parties desire to settle the Action in its entirety as to Plaintiffs, the Settlement Class Members, and Thinx with respect to all claims arising out of the facts underlying the Action, and intend this Agreement to bind Plaintiffs (both as the Class Representatives and individually), Thinx, and Settlement Class Members;

NOW THEREFORE, in light of the foregoing, for good and valuable consideration, the Parties, and each of them, hereby warrant, represent, acknowledge, covenant, and agree, subject to approval by the Court, as follows:

**1.    SETTLEMENT CLASS**

1.1    **Certification of the Settlement Class.**  For purposes of settlement and the proceedings contemplated by this Agreement only, the Parties stipulate and agree that a Settlement Class shall be provisionally certified pursuant to Federal Rule of Civil Procedure 23 as defined in Section 1.3, that Plaintiffs Haleh Allahverdi, Jillian Blenis, Haley Burgess, Nicole Dickens, and Lili Mitchell shall be the Class Representatives and shall represent the Settlement Class for settlement purposes, and that Erin Ruben, Hunter Bryson, Harper Segui, and Rachel Soffin of the law firm of Milberg Coleman Bryson Phillips Grossman shall be appointed as Class Counsel for the Settlement Class.

1.2    **Decertification of the Settlement Class if Settlement Not Approved.**  Thinx does not consent to certification of the Settlement Class for any purpose other than to effectuate the Settlement.  If the Court does not enter an order granting final approval of the Settlement, or if for any other reason the Effective Date does not occur, any certification of any Settlement Class will be vacated and the Parties will be returned to their positions with respect to the Action as if the Agreement had not been entered into.  Specifically: (a) any Court orders preliminarily or finally approving the certification of any class contemplated by this Agreement shall be null, void, and vacated, and shall not be used or cited thereafter by any person or entity; and (b) the fact of the settlement reflected in this Agreement, that Thinx did not oppose the certification of a Settlement Class under this Agreement, or that the Court preliminarily or finally approved the certification of a Settlement Class, shall not be used or cited thereafter by any person in any manner whatsoever, including without limitation any contested proceeding relating to the certification of any class.  In the event the terms and conditions of this Agreement are substantially modified by the Court, Thinx reserves the right to declare this Agreement null and void, in its sole discretion, within fourteen (14) days after such modification.  Notwithstanding, in the event the Settlement is not approved, the parties will meet and confer in good faith, to the extent possible, to address the Court's concerns.

1.3    **Definition of Settlement Class.** The "Settlement Class" shall be defined as follows:

All natural persons who purchased, not for resale, the following Thinx Period Underwear in the United States from November 12, 2016, to the date of entry of the Preliminary Approval Order:  Cotton Brief, Cotton Bikini, Cotton Thong, Sport, Hiphugger, Hi-Waist, Boyshort, French Cut, Cheeky, and Thong. Excluded from the Settlement Class are (i) Thinx; (ii) its parents, subsidiaries, affiliates, officers, directors, investors, and employees; (iii) any entity in which Thinx has a controlling interest; and (iv) any judge presiding over this Action, their staff, and the members of the judge's immediate family.

**2.    CONFIDENTIALITY**

2.1    The Parties, Class Counsel, and Thinx's Counsel agree that until publication of this Agreement by submission to the Court, the terms of this Agreement and all associated documents and communications, including the negotiations leading to the execution of the Agreement and all submissions and arguments related to the mediation, shall not be disclosed by the Parties, Class Counsel, and Thinx's Counsel other than as necessary to finalize the Settlement and Notice Plan. Upon publication of the Agreement by submission to the Court, the nondisclosure obligations set forth here will no longer apply to the as-filed Agreement or the terms thereof, but such obligations will continue to apply to all other materials and information covered by

this Section, including but not limited to any negotiations leading to the execution of the Agreement.

2.2    Either party may respond in neutral terms to inquiries from the press to communicate that the Action has been resolved between the Parties.  Any response shall not contain inflammatory language about the Parties or their perceived conduct in the Action, and shall be limited to accurately describing the terms of the Settlement as reflected in the Agreement.

## 3.    SETTLEMENT RELIEF

3.1    **Class Benefit.**  Each Settlement Class Member who timely submits a valid Claim Form shall have the option to receive either cash reimbursement for past purchases of Thinx Period Underwear (up to three (3) pairs total), or a voucher for future purchases of Eligible Voucher Products as defined below ("Class Benefit"), on the following terms:

   3.1.1    **Cash Reimbursement.**  The amount of cash reimbursement for past purchases of Thinx Period Underwear will be contingent upon whether the Claimant provides a valid proof of purchase.  Claimants will not, however, be required to provide proof of purchase for purchases of Thinx Period Underwear reflected in Thinx's records.

      3.1.1.1    Cash reimbursement with proof of purchase:  Each Valid Claimant will receive a $7.00 refund for Thinx Period Underwear that are reflected in Thinx's records, or for which they submit a valid proof of purchase together with the Claim Form.  The maximum cash reimbursement available will be $21.00.

      3.1.1.2    Cash reimbursement without proof of purchase:  Each Valid Claimant will receive a $3.50 cash refund for Thinx Period Underwear that are not reflected in Thinx's records without proof of purchase but must provide details regarding the style(s) purchased and the approximate date, and location of their purchases, and attest to the purchases under penalty of perjury.  The maximum cash reimbursement available will be $10.50.

   3.1.2    **Voucher.**  Valid Claimants may choose to receive a single-use voucher for a discount of 35% off total purchases of Eligible Voucher Products (as defined below) in a single purchase transaction of up to $150 on the Thinx website (thinx.com). The maximum discount available shall be up to $52.50.  Vouchers are non-transferable, subject to standard terms and conditions, and shall be valid for six months from the date of issuance.  Vouchers may be used on full-price Eligible Voucher Products only, and may not be combined with any other offers, discounts, or promotions. Claimants whose purchases of Thinx Period Underwear are not reflected in Thinx's records must provide either valid proof of purchase or, if they do not have proof of purchase, details regarding the style(s) purchased, the approximate date, and location of purchase, and an attestation under penalty of perjury as to their purchases.  The Thinx products available for voucher use (subject to availability on thinx.com) ("Eligible Voucher Products") include the products below:

   - Super Hiphugger
   - Heavy Hiphugger
   - Hiphugger
   - Sport
   - Heavy Boyshort
   - Boyshort

- Super Hi-Waist
- Heavy Hi-Waist
- French Cut
- Cheeky
- Thong
- Modal Super Cotton Brief
- Modal Heavy Cotton Brief
- Modal Cotton Brief
- Modal Cotton Boyshort
- Modal Cotton Bikini
- Modal Cotton Thong
- Air Hiphugger
- Air Bikini

3.1.3   **Proof of Purchase.**  Proof of purchase, as applicable, shall be provided and uploaded on the Settlement Website at the time the Claim Form is submitted or included with a physical Claim Form that can be mailed.

3.1.4   **Under Penalty of Perjury Attestation.**   The Claim Form will only be deemed valid subject to a completed penalty of perjury attestation regarding the accuracy of the information provided in the Claim Form.

3.1.5   **Election of Class Benefit.**  At the time Settlement Class Members submit a Claim Form, they must elect to receive either the cash reimbursement or voucher.  Any Settlement Class Member who submits an otherwise valid Claim Form, but (1) requests both cash reimbursement and the voucher, (2) fails to choose either cash reimbursement or a voucher, or (3) submits two or more Claim Forms that do not make the same choice shall receive cash reimbursement on the terms set forth above.

3.1.6   **Dissemination of Class Benefit.**  The Settlement Administrator will provide Valid Claimants with their elected choice of class benefit within twenty-one (21) days after the Effective Date.

3.2   **Cash Minimum Fund.**

3.2.1   The Settlement Administrator shall establish and maintain the Cash Minimum Fund. The Cash Minimum Fund shall be a nonreversionary common fund, no part of which shall revert to Thinx.  The Settlement Administrator will hold the Cash Minimum Fund in escrow until such time as the Settlement Administrator is authorized to disseminate the funds pursuant to this Agreement, the Final Approval Order, or other order of the Court.

3.2.2   Within twenty-one (21) days after Preliminary Approval, Thinx shall pay into the Cash Minimum Fund a portion of the Cash Minimum Amount sufficient to cover the costs of Notice and settlement administration associated with Notice and claims processing, as estimated by the Settlement Administrator.  Within fourteen (14) days after the Effective Date, Thinx shall deposit the balance of the Cash Minimum Amount into the Cash Minimum Fund.

3.2.3   The Cash Minimum Fund shall be applied as follows, in accordance with the terms and conditions set forth elsewhere in this Agreement:

3.2.3.1   To pay the costs of notice and settlement administration;

3.2.3.2    To pay any Attorneys' Fee and Expense Payment to Class Counsel, and any service awards to the Class Representatives, that may be approved by the Court; and

3.2.3.3    To distribute the net amount of the Cash Minimum Fund to Settlement Class Members in accordance with Section 3.1.6.

3.2.3.4    If total valid claims, notice and administration costs, Attorneys' Fee and Expense Payment, and service awards are less than the amount of the Cash Minimum Fund, the amount remaining shall be paid to a *cy pres* charity to be agreed upon by the parties and approved by the Court.

3.3    **Replenishment Amount and Maximum Cap.**

3.3.1    **Replenishment Amount.**  If the cost of total valid claims, notice and administration costs, Attorneys' Fee and Expense Payment, and service awards exceeds the amount of the Cash Minimum Fund, Thinx shall pay a Replenishment Amount not to exceed $1,000,000 to cover the cost of valid claims that would not otherwise be paid.  Thinx shall not be required to pay any amount above the Cash Minimum Fund other than for valid claims.  Thinx shall provide any applicable Replenishment Amount to the Settlement Administrator within fourteen (14) days after the Effective Date, and the Settlement Administrator shall hold such Replenishment Amount in escrow until authorized to disseminate the funds pursuant to this Agreement, the Final Approval Order, or other order of the Court.

3.3.2    **Maximum Cap.**  In no event shall Thinx be required to pay any amount in excess of $5,000,000 (the "Maximum Cap").  Thinx's total financial commitment under this Agreement shall be comprised of the Cash Minimum Amount and any applicable Replenishment Amount up to the Maximum Cap, and Thinx shall not be required to pay any additional amount in connection with the Agreement, the Settlement, the Action or the claims released in Section 10 of this Agreement.

3.3.2.1    Vouchers issued pursuant to Section 3.1.2 of this Agreement shall not be included in determining the Cash Minimum Amount, Replenishment Amount, or Maximum Cap.

3.3.2.2    If total valid claims, notice and administration costs, Attorneys' Fee and Expense Payment, and service awards would exceed the Maximum Cap, the payments to Settlement Class Members shall be reduced on a pro rata basis.

3.4    **Non-Monetary Relief.**  In addition to the Class Benefit provided for in Section 3.1, Thinx agrees to the following non-monetary relief within the United States:

3.4.1    **Manufacturing.**  Thinx will take measures to help ensure that per- and polyfluoroalkyl substances ("PFAS") are not intentionally added to Thinx period underwear at any stage of production, including maintaining production controls and material reviews.

3.4.2    **Chemical Supplier Agreement.**  Thinx will continue to have suppliers of raw materials for Thinx period underwear review and sign a Supplier Code of Conduct and Chemical Supplier Agreement, which require suppliers to attest that PFAS are not intentionally added to Thinx period underwear.

3.4.3    **Marketing.**  Thinx will disclose the use of anti-microbial treatments, including Agion, and the purpose for which anti-microbial treatments are used, including, if applicable,

as odor control treatments, on its website.  In addition, Thinx will agree not to refer to the anti-microbial components of Agion as "non-migratory."

3.5     **Claim Form.**  To be entitled to receive the Class Benefit, Settlement Class Members must accurately and timely submit the Claim Form and any required documentation within 60 days following the Notice Date.

3.6     **Determination and Processing of Claims.** The Settlement Administrator will review all Claim Forms and proofs of purchase to determine their validity, eligibility, and the type and amount of Class Benefit to which the Claimant is entitled.  The Settlement Administrator will reject any claim that does not materially comply with the instructions on the Claim Form, is not submitted by a Settlement Class Member, or is duplicative or fraudulent.

Within 15 days of receiving an insufficient Claim Form, the Settlement Administrator will send the Settlement Class Member an email, if available, or first-class United States mail if email is not available, a written notice of deficiency identifying the reason(s) that the claim was deemed insufficient, including steps the Settlement Class Member can take to cure the deficiency, if possible. The Settlement Class Member receiving such notice will be allowed fifteen (15) days from the date of emailing or mailing to cure the deficiency, if possible. If the Settlement Class Member does not or cannot cure the deficiency, the Settlement Administrator will, after consultation with Class Counsel and Thinx's Counsel, deny the claim.

4.     **OBTAINING COURT APPROVAL OF THE AGREEMENT**

4.1     **Preliminary Approval.** Class Counsel will draft the motion for preliminary approval and will provide that draft to Thinx's Counsel at least ten (10) days prior to the deadline to file the motion, unless otherwise agreed to by the Parties.  The motion shall be written in a neutral manner that plainly states Plaintiffs' allegations and claims while making clear that Thinx denies every allegation of wrongdoing and admits no liability. The motion will request that the Court certify the Settlement Class. Thinx will not oppose the motion. Thinx may, however, provide feedback concerning the motion, and Class Counsel will meet and confer with Thinx's Counsel in good faith regarding Thinx's feedback.

4.2     **CAFA Notice.**  Once Plaintiffs file the motion for preliminary approval, the Settlement Administrator will provide timely notice of the motion as required by the Class Action Fairness Act, 28 U.S.C. § 1711 *et seq.*

4.3     **Final Approval and Judgment.** In accordance with the schedule set in the Preliminary Approval Order, Class Counsel will draft the motion for final approval of the settlement, and will provide that draft to Thinx's Counsel at least ten (10) days prior to the deadline to file the motion, unless otherwise agreed to by the Parties.  The motion shall be written in a neutral manner that plainly states Plaintiffs' allegations and claims while making clear that Thinx denies every allegation of wrongdoing and admits no liability.  Thinx may provide feedback concerning the motion, and Class Counsel will meet and confer with Thinx in good faith regarding Thinx's feedback.

5.     **OBJECTIONS**

5.1     Settlement Class Members who do not submit timely and valid requests for exclusion may file objections to the Settlement, Class Counsel's request for attorneys' fees and expenses, and/or the requested service awards for the Class Representatives.

5.2    Any Settlement Class Member who intends to object to the Settlement must file with the Court a written statement that includes: a caption or title that identifies it as "Objection to Class Settlement in *Dickens et al. v. Thinx Inc.*, Case No. 1:22-cv-4286-JMF;" the Settlement Class Member's name, address, and telephone number; all grounds for the objection, with any factual and legal support for each stated ground; the identity of any witnesses the Settlement Class Member may call to testify; copies of any exhibits that the Settlement Class Member intends to introduce into evidence at the Final Approval Hearing; a statement identifying their counsel if they are represented by counsel; and a statement of whether the Settlement Class Member intends to appear at the Final Approval Hearing with or without counsel.  To be timely, the objection must (a) be submitted to the Court either by filing it in person at any location of the United States District Court for the Southern District of New York or by mailing it to the Clerk of the Court for filing, and (b) be filed or postmarked by the Objection and Exclusion deadline, which shall be no less than sixty (60) days after the Notice Date.

5.3    Any Settlement Class Member who fails to timely file with the Court a written objection in accordance with the terms of Section 5.2 of this Agreement and as detailed in the Notice shall waive and forfeit any and all rights the Settlement Class Member may have to object, appear, present witness testimony, and/or submit evidence; shall be barred from appearing, speaking, or introducing any testimony or evidence at the Final Approval Hearing; shall be precluded from seeking review of this Agreement by appeal or other means; and shall be bound by all the terms of this Agreement and by all proceedings, orders, and judgments in the Action.

5.4    Class Counsel shall file their application for attorneys' fees, costs, and service awards for Plaintiffs forty-five (45) days after the Notice Date.  Once it is filed, Class Counsel's application for attorneys' fees, costs, and service awards shall be posted on the Settlement Website.

5.5    Plaintiffs and Thinx shall have the right, but not the obligation, to respond to any objection no later than twenty (20) days prior to the Final Approval Hearing. The party responding shall file a copy of the response with the Court, and shall serve a copy on the objector (or counsel for the objector).

## 6.   EXCLUSIONS

6.1    **Requests for exclusion.** The Notice will advise all members of the Settlement Class of their right to exclude themselves from the Settlement. The Settlement will not bind any individuals who timely exclude themselves from the Settlement.

6.2    **Requesting process.** To request to be excluded from the Settlement, members of the Settlement Class must timely submit a written request for exclusion either via the Settlement Website or by U.S. mail to the Settlement Administrator, which will be responsible for receiving and processing requests for exclusion.

6.3    **Deadline.** To be excluded from the Settlement, the request for exclusion must be submitted via the Settlement Website or postmarked by the Objection and Exclusion Deadline established in the Preliminary Approval Order, which shall not be less than sixty (60) days after the Notice Date.

6.4    **Effect of exclusion.** Any person who is a member of the Settlement Class and who validly and timely requests exclusion from the Settlement shall not be a Settlement Class Member; shall not be bound by the Settlement; shall not be eligible to apply for or receive any benefit under the terms of the Settlement; and shall not be entitled to submit an Objection to the Settlement.

6.5    **Exclusion list.** No later than fifteen (15) days after the Objection and Exclusion Deadline, the Settlement Administrator will provide Class Counsel and Thinx's Counsel with the list of persons who have timely and validly excluded themselves from the Settlement.

6.6    **Effect of exclusions.** If 5% or more of the members of the Settlement Class validly and timely exclude themselves from the Settlement, then Thinx shall have the option to rescind this Agreement, in which case all of Thinx's obligations under this Agreement shall cease to be of any force and effect, and this Agreement shall be rescinded, cancelled, and annulled. If Thinx exercises this option, it shall provide Plaintiffs with written notice of its election within fifteen (15) days of receiving the exclusion list from the Settlement Administrator, at which point the Parties shall return to their respective positions that existed prior to the execution of this Agreement. No term of this Agreement or any draft thereof, or the negotiation, documentation, or other part of aspect of the Parties' settlement discussions, or any filings or orders respecting the Settlement or any aspect of the Settlement, shall have any effect or be admissible as evidence for any purpose in the Action, or in any other proceeding.

## 7.   NOTICE AND SETTLEMENT ADMINISTRATION

7.1    Thinx will provide to the Settlement Administrator (but not to Class Counsel) the names, addresses, and email addresses for all members of the Settlement Class for whom it has records within 30 days of the date of entry of the Preliminary Approval Order.

7.2    The Settlement Administrator will administer the Notice in accordance with the Preliminary Approval Order. The Settlement Administrator will keep identities and contact information of members of the Settlement Class confidential, using them only for purposes of administrating this Settlement.

7.3    **Notice Plan.** The Parties agree upon and will seek Court approval of the following forms and methods of notice to the members of the Settlement Class:

     7.3.1    **Settlement Website.** The Settlement Administrator will establish and maintain a Settlement Website with a mutually acceptable domain name. The Settlement Website will be optimized for viewing on both mobile devices and personal computers. The Settlement Website will include, without limitation, the Detailed Notice, the Agreement, the operative Consolidated Class Action Complaint, the Preliminary Approval Motion and Order as entered, Plaintiffs' Motion for Attorneys' Fees and Expenses, Plaintiffs' Motion for Final Approval of Class Action Settlement, answers to a set of frequently asked questions, and information on how to object or request exclusion, as well as contact information for Class Counsel and the Settlement Administrator. The Settlement Website will include a readily accessible means for members of the Settlement Class to electronically submit a Claim Form or request for exclusion, as well as an address to which Claim Forms or requests for exclusion may be mailed. The Settlement Website will be live on the Notice Date.

     7.3.2    **Toll-Free Number.** The Settlement Administrator will establish a toll-free telephone number where members of the Settlement Class can request a copy of the Detailed Notice, the Claim Form, and other case documents.

     7.3.3    **Email Notice.** The Settlement Administrator will email to each member of the Settlement Class for whom Thinx has an email address a copy of the Email Notice. The email notice shall contain a link to the Settlement Website.

7.3.4 **Postcard Notice.** For members of the Settlement Class (a) who do not have valid email addresses in Thinx's records, or (b) for whom the Email Notice is returned as undeliverable, the Settlement Administrator will mail to each such member of the Settlement Class for whom a mailing address can be located a Postcard Notice. All postcard Notices returned by the U.S. Postal Service with a forwarding address will be re-mailed to that address.

7.3.5 **Publication Notice.** The Settlement Administrator shall implement a limited online banner advertisement campaign on certain websites, to be determined by the Parties with input from the Settlement Administrator, commencing on the Notice Date and continuing for 30 days thereafter. The ads will provide a link to the Settlement Website and contact information for the Settlement Administrator. The selection of websites and the content of the ads shall be subject to Thinx's approval.

7.4 The Settlement Administrator has agreed to perform all settlement notice and administration duties required by the Settlement. With approval from Class Counsel and Thinx's counsel, the Settlement Administrator will withdraw from the Cash Minimum Fund funds sufficient to cover all costs and expenses related to the settlement notice and administration functions to be performed by the Settlement Administrator, including the claims administration process.

## 8.   CLASS COUNSEL FEES AND EXPENSES, AND SERVICE AWARDS

8.1 Any award of Attorneys' Fees and Expenses shall be decided by the Court and payable from the Cash Minimum Fund.

8.2 The amount of attorneys' fees and expenses was negotiated at arm's length, and only after agreement was reached on all substantive terms of the settlement. Class Counsel agree not to petition the Court for more than $1,500,000 for attorneys' fees and expenses, which Thinx agrees not to oppose. In no event shall Thinx be liable for any attorneys' fees or expenses in excess of these amounts.

8.3 The Settlement Administrator will pay Class Counsel the Court-approved Attorneys' Fee and Expense Payment within twenty-one (21) days after the Effective Date.

8.4 The Court's award of any Attorneys' Fee and Expense Payment shall be separate from the determination of whether to approve the Settlement. In the event the Court approves the Settlement, but declines to award Class Counsel attorneys' fees or expenses in the amount requested by Class Counsel, the Settlement will nevertheless be binding on the Parties to the extent permissible under applicable law.

8.5 Class Counsel may apply for a service award of no more than $2,500 per named Plaintiff ($12,500 total), which Thinx agrees not to oppose. The service award is not a measure of damages, but instead solely an award for the Class Representatives' services, time, and effort on behalf of the Settlement Class Members. For tax purposes, the service award will be treated as 100% non-wage claim payment. Class Counsel will provide a Form W-9 for each Plaintiff receiving a service award, and the Settlement Administrator will issue an IRS Form Misc.– 1099 for the service award payments. The Settlement Administrator will pay Plaintiffs the Court-approved service awards within twenty-one (21) days after the Effective Date.

8.6 Any order or proceeding relating to the application for a service award, the pendency of the application, or any appeal from any such order, will not operate to terminate or cancel this Agreement. The Class Representatives' approval of this Settlement is not contingent on Class

Counsel making an application for a service award, or the Court approving any application for a service award.

**9.     DENIAL OF LIABILITY; PROHIBITION OF USE**

9.1     Thinx vigorously denies all of the material allegations in the Action. Thinx enters into this Agreement without in any way acknowledging any fault, liability, or wrongdoing of any kind. Thinx further denies the truth of any of the claims asserted in the Action, including any allegations that Plaintiffs or any member of the Settlement Class has been harmed by any conduct by Thinx, whether as alleged in the Action or otherwise.  Thinx nonetheless has concluded that it is in its best interests that the Action be settled on the terms and conditions set forth herein in light of the expense that would be necessary to defend this litigation and the benefits of disposing of protracted and complex litigation.

9.2     To the extent permitted by law, neither this Agreement, nor any of its terms or provisions, nor any of the negotiations or proceedings connected with it, shall be offered as evidence or received in evidence in any pending or future civil, criminal, or administrative action or proceeding to establish any liability or admission by Thinx, or to establish the truth of any of the claims or allegations alleged in the Action.

9.3     Neither the Agreement nor anything that the Parties said or did during the negotiation of the Agreement shall be construed or used in any manner as an admission of liability or evidence of any Party's fault, liability, or wrongdoing of any kind; nor as an admission of any lack of merit of the causes of action asserted in the Action.

9.4     To the extent permitted by law, the Agreement may be pleaded or invoked as a full and complete defense to, and may be used as the basis for an injunction against, any action, suit, or other proceeding which may be instituted, prosecuted, or attempted for the Released Claims.

**10.    RELEASES AND WARRANTIES**

10.1    As of the Effective Date, Releasing Parties hereby fully and irrevocably release and forever discharge Released Parties from any and all liabilities, claims, cross-claims, causes of action, rights, actions, suits, debts, liens, contracts, agreements, damages, costs, attorneys' fees, losses, expenses, obligations, or demands, of any kind whatsoever, whether state or federal, whether known or unknown, existing or potential, or suspected or unsuspected, whether raised by claim, counterclaim, setoff, or otherwise, including any known or unknown claims, which they have or may claim now or in the future to have, that have been or could have been asserted in the Action (the "Released Claims").  The Released Claims exclude claims for personal injury.

10.2    In consideration for this Agreement and the consideration set forth herein, Plaintiffs and the Settlement Class Members acknowledge that the release herein includes potential claims and costs that may not be known or suspected to exist, and that Plaintiffs and the Settlement Class Members hereby agree that all rights under California Civil Code § 1542, and any similar law of any state or territory of the United States, are expressly and affirmatively waived.  California Civil Code § 1542 states as follows:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

10.3    No person will have any claim of any kind against the Parties or their counsel or the Settlement Administrator with respect to the Settlement and the matters set forth herein, or based on

determinations or distributions made substantially in accordance with this Agreement, the Final Approval Order and Judgment, or other order(s) of the Court.

**11.   EFFECTIVE DATE OF THE AGREEMENT; TERMINATION**

11.1   The "Effective Date" of this Agreement shall be the first day after which all of the following events and conditions of this Agreement have been met or have occurred:

11.1.1   All of the Parties and their counsel have executed this Agreement;

11.1.2   The Court has entered the Final Approval Order finally approving the Settlement and has entered Judgment; and

11.1.3   The Judgment has become final in that the time for appeal of, or writ as to, the Judgment has expired or, if any such appeal and/or petition for review is taken and the Settlement is affirmed, the time period during which further petition for hearing, appeal, or writ of certiorari can be taken has expired.  If the Judgment is set aside, materially modified, or overturned by the trial court or on appeal, and is not fully reinstated on further appeal, the Judgment shall not become final as contemplated by this Section.

11.2   If the Judgment does not become final and/or this Agreement is terminated or fails to become effective for any reason, the Parties shall be restored to their respective positions in the Action as of the date of the signing of this Agreement.  In such event, any Final Approval Order and Judgment or other order entered by the Court in accordance with the terms of this Agreement shall be treated as vacated, nunc pro tunc, and the Parties shall be returned to the status quo ante with respect to the Action as if this Agreement had never been entered into.  In the event of a termination, the Settlement Administrator shall return any monies remaining in the settlement fund to Thinx within fourteen (14) days of receiving notice of the termination.

**12.   MISCELLANEOUS**

12.1   **Extensions of time.** All time periods and dates described in this Agreement are subject to the Court's approval. Unless otherwise ordered by the Court, the Parties through their counsel may jointly agree to reasonable extensions of time to carry out any of the provisions of this Agreement. The time periods and dates provided for herein or in the Preliminary Approval Order may be altered by the Court or through written consent of the Parties' counsel, without notice to the Class Members; provided, however, that any such changes in the schedule of Settlement proceedings will be posted on the Settlement Website.

12.2   **Integration.** This Agreement, including all exhibits, constitutes a single, integrated written contract expressing the entire agreement of the Parties relative to the subject matter hereof. No covenants, agreements, representations, or warranties of any kind whatsoever have been made by any Party hereto, except as provided for herein.

12.3   **Governing law.** This Agreement shall be construed in accordance with, and be governed by, the laws of the State of New York, without regard to the principles thereof regarding choice of law.

12.4   **Gender and plurals.** As used in this Agreement, the masculine, feminine, or neutral gender, and the singular or plural number, shall each be deemed to include the others whenever the context so indicates.

12.5    **Representative capacity.** Each person executing this Agreement in a representative capacity represents and warrants that they are empowered to do so.

12.6    **Headings and counterparts.** The headings or captions in this agreement will not be deemed to have any effect and are provided for convenience only. This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument, even though all Parties do not sign the same counterparts.

12.7    **Cooperation of Parties.** The Parties and their counsel agree to prepare and execute all documents, to seek Court approvals, to defend Court approvals, and to do all things reasonably necessary to complete the Settlement.

12.8    **Voluntary execution.** This Agreement is executed voluntarily by each of the Parties without any duress or undue influence on the part, or on behalf, of any of them. The Parties represent and warrant to each other that they have read and fully understand the provisions of this Agreement and have relied on the advice and representation of legal counsel of their own choosing. Each of the Parties has cooperated in the drafting and preparation of this Agreement and has been advised by counsel regarding the terms, effects, and consequences of this Agreement. Accordingly, in any construction or interpretation to be made of this Agreement, the Agreement shall not be construed as having been drafted solely by any one or more of the Parties or their counsel. The Agreement has been, and must be construed to have been, drafted by all Parties and their counsel, so that any rule that construes ambiguities against the drafter will have no force or effect.

12.9    **Notices.** Any notice provided in connection with the Agreement or other document to be given by any Party to any other Party shall be in writing and (i) delivered personally or by registered or certified mail, postage prepaid, to the appropriate address(es) set forth immediately below, or to other contact points as the Parties may identify by notice given in accordance with this Section; and also (ii) transmitted by email to the appropriate email address(es) set forth immediately below.

| Notice to Class Counsel: | Notice to Thinx: |
|---|---|
| Erin J. Ruben<br>MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN<br>900 W. Morgan Street<br>Raleigh, NC 27603<br>ERuben@milberg.com | Purvi G. Patel<br>MORRISON & FOERSTER, LLP<br>707 Wilshire Boulevard<br>Los Angeles, CA 90017-3543<br>PPatel@mofo.com |

The notice recipients and addresses designated above may be changed by written notice pursuant to this Section.

12.10    **Modification or amendment.** Except as otherwise provided herein, this Agreement may be amended or modified only by a written instrument signed by the Parties' counsel.

12.11    **Continuing jurisdiction.** Any and all disputes arising from or related to the Settlement or this Agreement must be brought by the Parties, Class Counsel, Thinx's Counsel and/or each member of the Settlement Class, exclusively in the Court. The Parties, Class Counsel, Thinx's Counsel, and each member of the Settlement Class hereby irrevocably submit to the exclusive and continuing jurisdiction of the Court for any suit, action, proceeding, or dispute arising out of or relating to the Settlement or this Agreement.

Date:  November __Nov 21, 2022          **HALEH ALLAHVERDI**

By: _Haleh Allahverdi (Nov 21, 2022 13:37 PST)_____
     Haleh Allahverdi


Date:  November __, 2022          **JILLIAN BLENIS**

By:_____
     Jillian Blenis


Date:  November __, 2022          **HALEY BURGESS**

By:_____
     Haley Burgess


Date:  November __, 2022          **NICOLE DICKENS**

By:_____
     Nicole Dickens


Date:  November __, 2022          **LILI MITCHELL**

By:_____
     Lili Mitchell


Date:  November __, 2022          **THINX INC.**

By:_____
     Nathan Fox
     Chief Financial Officer

Date:  November ___, 2022        **HALEH ALLAHVERDI**

By:_____
Haleh Allahverdi

Date:  November 21, 2022        **JILLIAN BLENIS**

*Jillian Blenis*
By:_____
Jillian Blenis (Nov 21, 2022 16:57 EST)
Jillian Blenis

Date:  November ___, 2022        **HALEY BURGESS**

By:_____
Haley Burgess

Date:  November ___, 2022        **NICOLE DICKENS**

By:_____
Nicole Dickens

Date:  November ___, 2022        **LILI MITCHELL**

By:_____
Lili Mitchell

Date:  November ___, 2022        **THINX INC.**

By:_____
Nathan Fox
Chief Financial Officer

Date:  November ___, 2022                **HALEH ALLAHVERDI**


By:_____
    Haleh Allahverdi


Date:  November ___, 2022                **JILLIAN BLENIS**


By:_____
    Jillian Blenis


Date:  November <u>HB</u>, 2022                **HALEY BURGESS**


By:_____
    Haley Burgess


Date:  November ___, 2022                **NICOLE DICKENS**


By:_____
    Nicole Dickens


Date:  November ___, 2022                **LILI MITCHELL**


By:_____
    Lili Mitchell


Date:  November ___, 2022                **THINX INC.**


By:_____
    Nathan Fox
    Chief Financial Officer

Date:  November __, 2022        **HALEH ALLAHVERDI**

By:_____
    Haleh Allahverdi

Date:  November __, 2022        **JILLIAN BLENIS**

By:_____
    Jillian Blenis

Date:  November __, 2022        **HALEY BURGESS**

By:_____
    Haley Burgess

Date:  November __, 2022        **NICOLE DICKENS**

By:_____
    Nicole Dickens

Date:  November __, 2022        **LILI MITCHELL**

By:_____
    Lili Mitchell

Date:  November __, 2022        **THINX INC.**

By:_____
    Nathan Fox
    Chief Financial Officer

Date:  November ___, 2022       **HALEH ALLAHVERDI**

By:_____
     Haleh Allahverdi


Date:  November ___, 2022       **JILLIAN BLENIS**

By:_____
     Jillian Blenis


Date:  November ___, 2022       **HALEY BURGESS**

By:_____
     Haley Burgess


Date:  November ___, 2022       **NICOLE DICKENS**

By:_____
     Nicole Dickens


Date:  November ___, 2022       **LILI MITCHELL**

By:_____
     Lili Mitchell


Date:  November ___, 2022       **THINX INC.**

By:_____
     Nathan Fox
     Chief Financial Officer

Date:  November __, 2022         **HALEH ALLAHVERDI**

By:_____
      Haleh Allahverdi

Date:  November __, 2022         **JILLIAN BLENIS**

By:_____
      Jillian Blenis

Date:  November __, 2022         **HALEY BURGESS**

By:_____
      Haley Burgess

Date:  November __, 2022         **NICOLE DICKENS**

By:_____
      Nicole Dickens

Date:  November __, 2022         **LILI MITCHELL**

By:_____
      Lili Mitchell

Date:  November 21, 2022         **THINX INC.**

By:_____
      Nathan Fox
      Chief Financial Officer

APPROVED AS TO FORM:

Date:  November 21, 2022     By:_____

                                      Erin J. Ruben
                                      Milberg Coleman Bryson Phillips Grossman
                                      ***Attorneys for Plaintiffs and the Settlement Class***


Date:  November __, 2022     By: _____

                                        Purvi G. Patel
                                      Morrison & Foerster LLP
                                      ***Attorneys for Thinx Inc.***

APPROVED AS TO FORM:

Date:  November __, 2022               By:_____
                                          Erin J. Ruben
                                          Milberg Coleman Bryson Phillips Grossman
                                          ***Attorneys for Plaintiffs and the Settlement Class***


Date:  November 22, 2022              By:_____
                                          Purvi G. Patel
                                          Morrison & Foerster LLP
                                          ***Attorneys for Thinx Inc.***