**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **NICOLE DICKENS, HALEH ALLAHVERDI, HALEY BURGESS, JILLIAN BLENIS, and LILI MITCHELL,** individually and on behalf of themselves and all others similarly situated,<br><br>       Plaintiffs,<br><br>v.<br><br>**THINX, INC**.,<br><br>       Defendant. | **CASE NO. 1:22-cv-04286-JMF** |

**MEMORANDUM OF LAW IN SUPPORT OF
<u>PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT</u>**

## TABLE OF CONTENTS

TABLE OF AUTHORTIES ................................................................................................... iv

INTRODUCTION ...............................................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND.......................................................2

    Class Counsel's Investigation ........................................................................................3

    Plaintiffs' Allegations.....................................................................................................4

    The California and Massachusetts Actions ....................................................................5

    This Case .........................................................................................................................7

    Mediation and Settlement Negotiations .........................................................................7

TERMS OF THE SETTLEMENT ....................................................................................8

    I.   Proposed Settlement and Its Value ......................................................................8

        A.   The Settlement Fund...................................................................................9

        B.   Monetary Relief.......................................................................................10

        C.   Non-Monetary Relief...............................................................................11

        D.   Release of Claims ....................................................................................12

    II.   Preliminary Approval..........................................................................................12

    III.  Costs, Fees, and Service Awards .......................................................................13

ARGUMENT ....................................................................................................................14

    I.   NOTICE TO THE CLASS SATISFIED THE REQUIREMENTS OF RULE 23 AND DUE PROCESS...................................................................................................14

    II.   THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE AND SHOULD BE APPROVED BY THE COURT ...............................................17

A.   The Proposed Settlement is Procedurally Fair .............................................................19

B.   The Proposed Settlement is Substantively Fair ..........................................................20

1.   Litigation Through Trial Would be Complex, Costly, and Long (*Grinnell* Factor 1)
     ....................................................................................................................................21

2.   The Reaction of the Class is Overwhelmingly Positive (*Grinnell* Factor 2)..............22

3.   Discovery Has Advanced Far Enough to Allow the Parties to Responsibly Resolve
     the Case (*Grinnell* Factor 3).......................................................................................24

4.   The Continued Litigation Risks Related to Establishing Liability, Damages, and
     Maintaining a Class Action Through Trial Support the Settlement (*Grinnell*
     Factors 4, 5, and 6) .....................................................................................................25

5.   The Ability of Defendant to Withstand a Greater Judgment (*Grinnell* Factor 7) ......28

6.   The Settlement Amount is Reasonable in Light of the Possible Recovery and the
     Attendant Risks of Litigation (*Grinnell* Factors 8 and 9) ..........................................29

CONCLUSION....................................................................................................................31

# TABLE OF AUTHORITIES

## **Cases**

*City of Providence v. Aeropostale, Inc.*, 2014 WL 1883494 (S.D.N.Y. May 9, 2014) ............... 22

*D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001) ............................................. 19

*deMunecas v. Bold Food, LLC*, No. 09 CIV. 00440 DAB, 2010 WL 3322580

   (S.D.N.Y. Aug. 23, 2010) ................................................................... 25, 27

*Denney v. Jenkens & Gilchrist*, 230 F.R.D. 317 (S.D.N.Y. 2005) ................................ 28

*Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974) ... 18, 20, 21, 22, 24, 25, 26, 27, 28, 29, 31

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974) .................................................... 14

*Frank v. Eastman Kodak Co.*, 228 F.R.D. 174 (W.D.N.Y. 2005) .................................. 18, 28, 29

*Hanlon v. Chrysler*, 150 F.3d 1011 (9th Cir. 1998) ..................................................... 23

*In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740 (E.D.N.Y. 1984), aff'd,

   818 F.2d 145 (2d Cir. 1987) ................................................................. 29

*In re Adelphia Commc'ns Corp. Sec. & Derivative Litigs.*, 271 F. App'x 41 (2d Cir. 2008) ...... 15

*In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171 (S.D.N.Y. 2014) ............... 16, 24

*In re Am. Bank Note Holographics, Inc. Sec. Litig.*, 127 F. Supp. 2d 418 (S.D.N.Y. 2001)........ 27

*In re Am. Int'l Grp., Inc. Sec. Litig.*, 293 F.R.D. 459 (S.D.N.Y. 2013) ................................. 17, 19

*In re AOL Time Warner, Inc.*, 2006 WL 903236 (S.D.N.Y. Apr. 6, 2006) ................................. 26

*In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164 (S.D.N.Y. 2000).. 21, 24, 26

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*, 2007 WL 2230177

   (S.D.N.Y. July 27, 2007) ................................................................... 19

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010) ...... 29

*In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436 (S.D.N.Y. 2004) ............... 24, 26, 30

*In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686 (S.D.N.Y. 2019) ..................................... 18

*In re Indep. Energy Holdings PLC Sec. Litig.*, 2003 WL 22244676 (S.D.N.Y. Sept. 29, 2003) . 30

*In re Marsh & McLennan Cos. Sec. Litig.*, No. 04 Civ. 8144 (CM), 2009 WL 5178546

(S.D.N.Y. Dec. 23, 2009)............................................................................................. 14, 16

*In re Merrill Lynch & Co. Research Reports Sec. Litig.*, 246 F.R.D. 156 (S.D.N.Y. 2007) ........ 30

*In re MetLife Demutualization Litig.*, 689 F. Supp. 2d 297 (E.D.N.Y. 2010) ............................. 22

*In re Namenda Direct Purchaser Antitrust Litig.*, 462 F. Supp. 3d 307 (S.D.N.Y. 2020) ........... 28

*In re Painewebber Ltd. P'ships Litig.*, 171 F.R.D. 104 (S.D.N.Y.1997) ...................................... 25

*In re Patriot Nat'l, Inc. Sec. Litig.*, 828 F. App'x 760 (2d Cir. 2020).......................................... 30

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200 (S.D.N.Y. 1995)......................... 22

*In re Take Two Interactive Sec. Litig.*, No. 06 CIV. 1131 (RJS), 2010 WL 11613684

(S.D.N.Y. June 29, 2010)..................................................................................................... 15

*In re Telik Inc. Sec. Litig.*, 576 F.Supp.2d 570 (S.D.N.Y.2008).................................................... 20

*In re Time Warner, Inc. Sec. & ERISA Litig.*, 2006 WL 903236 (S.D.N.Y. Apr. 6, 2006).......... 30

*In re Vitamin C Antitrust Litig.*, 2012 WL 5289514 (E.D.N.Y. Oct. 23, 2012) ......... 20, 22, 25, 28

*In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735 (S.D.N.Y. 1985) ...................................... 27

*Maley v. Del Global Techs. Corp.*, 186 F.Supp.2d 358 (S.D.N.Y.2002) ............................... 20, 26

*Marisol A. ex rel. Forbes v. Giuliani*, 185 F.R.D. 152 (S.D.N.Y.1999)....................................... 26

*Newman v. Stein*, 464 F.2d 689 (2d Cir. 1972), cert. denied, 409 U.S. 1039 (1972) ............. 29, 30

*Strougo v. Bassini*, 258 F. Supp. 2d 254 (S.D.N.Y. 2003) ........................................................... 27

*TBK Partners, Ltd. v. Western Union Corp.*, 517 F. Supp. 380 (S.D.N.Y. 1981), aff'd, 675 F.2d

456 (2d Cir. 1982)................................................................................................................ 21

*Tiro v. Public House Invs., LLC*, 2013 WL 4830949 (S.D.N.Y. Sept. 10, 2013)......................... 18

*Torres v. Gristede's Operating Corp.*, 2010 WL 5507892 (S.D.N.Y. Dec. 21, 2010)................. 24

*Vaccaro v. New Source Energy Partners L.P.*, No. 15 CV 8954 (KMW), 2017 WL 6398636

    (S.D.N.Y. Dec. 14, 2017) ......................................................................... 30

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96 (2d Cir. 2005) ........................... 14, 18, 19

*Weigner v. City of N.Y.*, 852 F.2d 646 (2d Cir. 1988) ................................................... 15

*Weinberger v. Kendrick*, 698 F.2d 61 (2d Cir. 1982) ................................................... 19

*Wright v. Stern*, 553 F.Supp.2d 337 (S.D.N.Y.2008) ................................................... 23

*Yang v. Focus Media Holding Ltd.*, 2014 WL 4401280 (S.D.N.Y. Sep. 4, 2014) ...................... 20

## Rules

Fed. R. Civ. P. 23 ..................................................................................... 14, 15, 17, 18

Plaintiffs Nicole Dickens, Haleh Allahverdi, Haley Burgess, Jillian Blenis, and Lili Mitchell ("Plaintiffs" or "Class Representatives"), by and through undersigned counsel and pursuant to Rule 23 of the Federal Rules of Civil Procedure, hereby file this Memorandum in Support of Motion for Final Approval of Class Action Settlement.

## **INTRODUCTION**

On November 28, 2022, this Court preliminarily approved the Settlement Agreement[1] between Plaintiffs and Thinx and directed that notice be sent to the Settlement Class. (ECF No. 26.) The settlement administrator Epiq has implemented the Court-approved notice plan and notice has reached the majority of the certified Settlement Class. The reaction from the Settlement Class has been overwhelmingly positive. Specifically, for the nearly 1,300,000 direct notices sent to Settlement Class Members, there are only four[2] pending objections pending from Settlement Class Members and 2,363 requests for exclusion.

The Settlement provides significant monetary relief in the form of cash payments to Settlement Class Members as well as additional non-monetary relief related to Thinx's manufacturing processes. Because the vast majority of Thinx's sales is direct to consumers, a large percentage of Settlement Class Members' purchases were documented in Thinx's records and therefore required no proof of purchase for Settlement Class Members to make a claim. Even absent any proof of purchase, Settlement Class Members were still entitled to make a claim with a signed attestation on the claim form. Settlement Class Members with proof of purchase (or whose purchases are documented in Thinx's records) will be paid $7 for each pair of Thinx Period Underwear for up to three (3) pairs. Settlement Class Members without any proof of purchase will

---

[1] Capitalized terms not defined in this brief shall have the same definitions and meanings ascribed to them in the Settlement Agreement. ECF No. 24-1.

[2] Of the nine objections filed with the court, five have been withdrawn.

be paid $3.50 for each pair of Thinx Period Underwear for up to three (3) pairs. Alternatively, in lieu of a cash payment, Settlement Class Members had the option to choose a single-use voucher for 35% off a total purchase of up to $150 eligible products.

The proposed Settlement, which was reached after many months of hard-fought litigation, is fair, reasonable, and adequate, and resolves all of Plaintiffs' and Settlement Class Members' Claims against Thinx in this action. The Settlement is the product of extensive arm's-length negotiations between experienced attorneys familiar with the legal and factual issues of this case, including a full-day mediation before Hon. Jay Gandhi (Ret.) of JAMS ADR, who is experienced in mediating class action claims, and an additional five months of negotiating additional details of the settlement. Moreover, the parties have litigated this action vigorously for more than two years and have ample knowledge of the legal claims and defenses, the risks presented by the case, and the value achieved by the proposed Settlement. The Settlement is an exceptional result for the Class because, despite the significant risks of further litigation, Plaintiffs secured substantial monetary relief for Settlement Class Members.

For these reasons, as further discussed herein, Plaintiffs and Class Counsel firmly believe the Settlement is in the best interest of the Settlement Class and satisfies the standards for final approval, and therefore the Settlement warrants this Court's final approval.

## FACTUAL AND PROCEDURAL BACKGROUND

Thinx designs, markets, distributes, and sells Thinx Period Underwear, an absorbent underwear which is used in place of traditional feminine hygiene products to collect and/or absorb menstrual fluid. Consolidated Amended Complaint ("CAC"), ECF No. 16, at ¶¶ 1-2. Thinx Period Underwear is a washable, reusable alternative to traditional single-use feminine hygiene products like tampons. *Id* at ¶ 3. Consumers are willing to pay a premium for Thinx Period Underwear

compared to cheaper disposable alternatives based on the belief that Thinx Period Underwear provides an easier, safer, and more sustainable way to manage menstruation. *Id.*

**Class Counsel's Investigation**

Three years ago, in February of 2020, Class Counsel first began investigating claims related to Thinx Period Underwear sold and manufactured by Defendant which allegedly contained harmful short chain PFAS chemicals. *See* Exhibit 1, Joint Declaration in Support of Plaintiffs' Motion and Memorandum of Law in Support of Final Approval of Class Action Settlement ("Joint Decl.") at ¶ 6. Before initiating the litigation against Thinx, Class Counsel spent many hours and expended significant resources investigating the claims related to Thinx Period Underwear on behalf of several potential plaintiffs and other consumers nationwide. *Id.* at ¶ 7. Class Counsel's investigation was essential in identifying potential concerns resulting from the alleged presence of PFAS in Thinx Period Underwear, analyzing the nature of Thinx's conduct, and evaluating potential claims and remedies. *Id.* at ¶¶ 7, 9, 17.

Given the novelty of class action litigation related to PFAS and consumer goods, Class Counsel engaged in extensive research on the applicable science related to PFAS. *Id.* at ¶¶ 7-9. Class Counsel engaged in significant expert discovery, including by retaining an expert in chemistry to conduct an initial chemical analysis of certain styles of Thinx Period Underwear, followed by the retention of a second certified laboratory to conduct additional testing. *Id.* at ¶¶ 7, 9. Further, Class Counsel analyzed nearly seven years of Thinx's representations regarding Thinx Period Underwear, including its website content, social media posts, print advertising, blog posts, articles, and other marketing materials dating back to the company's inception. *Id.* at ¶ 7.

Class Counsel also researched Thinx Period Underwear in detail, studying its design and manufacturing practices, relevant U.S. patent applications, and product certifications. *Id.* In

conjunction with its investigation, Class Counsel interviewed numerous purchasers of Thinx Period Underwear and gathered and reviewed significant documents from potential plaintiffs, including photographs and proof of purchase. *Id*.

**Plaintiffs' Allegations**

Plaintiffs allege that Thinx's marketing, including its packaging and labeling, has uniformly represented Thinx Period Underwear as safe, sustainable, free from harmful chemicals and migratory nanoparticles, and—with regard to certain styles—organic. CAC at ¶¶ 31-33. Each of the Plaintiffs were exposed to these representations regarding Thinx Period Underwear. *Id*. at ¶¶ 107, 120, 121, 130, 135, 151. Plaintiffs purchased Thinx Period Underwear because they were seeking a safe, reusable, and sustainable form of menstrual protection. *Id*. at ¶¶ 108, 129, 136, 150, 161. Plaintiffs purchased Thinx Period Underwear in reliance on Thinx's specific representations, including that Thinx Period Underwear did not contain "harmful chemicals," was organic, and did not contain heavy metals or migratory nanoparticles. *Id*. at ¶ 161. These representations were material to Plaintiffs when purchasing Thinx Period Underwear. *Id*.

As part of their investigation, Plaintiffs sought independent third-party testing to determine whether Thinx Period Underwear contained any harmful chemicals, including PFAS. *Id*. at ¶ 35. PFAS are a category of man-made chemicals that can be used to enhance the performance of textiles and apparel, including by making them waterproof and/or stain resistant. *Id*. at ¶¶ 39-40. Plaintiffs allege, however, that PFAS present a danger to both humans and the environment due to their persistent, bioaccumulative nature, and allegedly have been associated with a variety of negative health effects in humans and are therefore "harmful chemicals." *Id*. at ¶¶ 44-48. During the class period, Thinx sold several styles of Thinx Period Underwear which were advertised as "organic." *Id*. at ¶ 69. Plaintiffs allege that the presence of PFAS in Thinx Period Underwear

contradicts these organic representations. *Id*. at ¶ 79. Thinx Period Underwear also contains Agion, an antimicrobial treatment made from silver and copper nanoparticles which is designed to reduce odor in clothing. *Id*. at ¶ 56. Plaintiffs allege the use of Agion directly contradicted Thinx's representations that Thinx Period Underwear is free from non-migratory nanoparticles and harmful chemicals. *Id*. at ¶ 68. After Plaintiffs initiated this action, Thinx revised its website and removed many of the representations regarding the presence of chemicals in Thinx Period Underwear. ECF No. 24, Ex. 1 at ¶ 14. Thinx also discontinued production of its "organic" line of Thinx Period Underwear. *Id*.

**The California and Massachusetts Actions**

On November 12, 2020, Destini Kanan[3] filed a class action lawsuit in the Central District of California alleging that Thinx misrepresented the true nature of Thinx Period Underwear by representing that it is, among other things, free from harmful chemicals and organic. *See Allahverdi, et al. v. Thinx, Inc.*, 2:20-cv-10341-SSS-JPR (C.D. Cal.) (the "California Action"), ECF No. 1.

The complaint in the California Action was amended on March 16, 2021 to add Haley Burgess as a plaintiff. California Action, ECF No. 29. On April 15, 2021, Thinx filed a motion to dismiss Plaintiffs' First Amended Complaint. California Action, ECF No. 38. On June 23, 2021, the court granted the motion in part, but allowed Plaintiffs Kanan and Burgess to proceed with their claims for breach of express warranty; unjust enrichment (in the alternative); and violations of California Consumers Legal Remedies Act ("CLRA") (Cal. Civ. § 1750 et seq.), Unfair

---

[3] On September 23, 2021, Plaintiffs filed a Second Amended Complaint, removing Destini Kanan as a Plaintiff and replacing her with Haleh Allahverdi. (California Action, ECF No. 60).

Competition Law ("UCL") (Cal. Bus. & Prof. Code § 17200 et seq.), and False Advertising Law ("FAL")(Cal. Bus. & Prof. Code § 17500 et seq.). California Action, ECF No. 46.

After the court's ruling on the motion to dismiss, the parties continued litigating the California Action. Joint Decl. at ¶ 16. Plaintiffs continued to consult with numerous experts to aid in the evaluation and development of Plaintiffs' claims, including experts in the fields of biochemistry, reproductive and environmental toxicology, pharmacology, sustainability and chemical management, and textile manufacturing. *Id.* at ¶ 17. Plaintiffs' experts provided ongoing assistance to Class Counsel during litigation, including, *inter alia*, assistance with the evaluation of potential claims, formulation of discovery questions, and requests for information pursuant to Fed. R. Evid. 408. *Id*. The parties also worked to negotiate a scheduling order pursuant to Rule 26(f) along with a Stipulated Protective Order. California Action, ECF Nos. 51, 61. The parties began exchanging written discovery requests in September 2021 and served responses and objections to these requests. *Id*. at ¶ 16. At that time, Thinx noticed depositions for Plaintiffs Destini Kanan and Haley Burgess. In turn, Plaintiffs served a notice for a Fed. R. Civ. P. 30(b)(6) deposition of Thinx. *Id*.

On June 18, 2021, just before the court in the Central District of California ruled on Defendant's motion to dismiss in the California Action, Plaintiffs Jillian Blenis and Lili Mitchell filed similar claims in the District of Massachusetts. *See Blenis, et al. v. Thinx, Inc.*, 1:21-cv-11019-IT (D. Mass.) (the "Massachusetts Action"), ECF No. 1. Plaintiffs Blenis and Mitchell's claims included breach of express warranty; unjust enrichment (in the alternative); negligent failure to warn; and negligent design. Massachusetts Action, ECF No. 1. These claims were alleged on behalf of a class of Massachusetts consumers. *Id*. On August 31, 2021, Plaintiffs filed an amended complaint to add claims for violation of Massachusetts Gen. Law c. 93A and breach of implied

warranties. Massachusetts Action, ECF No. 15. On September 30, 2021, Defendant filed a Motion to Dismiss or Stay the Massachusetts action. Massachusetts Action, ECF No. 19. The parties fully briefed the motion, which was pending hearing prior to Plaintiffs' voluntary dismissal of the Massachusetts action on June 27, 2022. Massachusetts Action, ECF Nos. 26, 31, 39.

**This Case**

On May 25, 2022, Plaintiff Nicole Dickens filed this lawsuit (the "New York Action"), alleging similar statutory consumer protection and common law claims arising out of Thinx's marketing and sale of Thinx Period Underwear. ECF. No. 1.

The California and Massachusetts Plaintiffs voluntarily dismissed their respective cases in order to consolidate their claims with the New York Action. California Action, ECF No. 71; Massachusetts Action, ECF No. 39. The operative consolidated class action complaint was filed on August 8, 2022 in anticipation of settlement, consolidating Ms. Dickens' claims with those of the California and Massachusetts Plaintiffs. ECF. No. 16. Prior to negotiating the Settlement, the parties engaged in hard-fought litigation in the related actions, as discussed above.

**Mediation and Settlement Negotiations**

In December 2021, the parties attended a full-day mediation session before Hon. Jay Gandhi (Ret.) of JAMS ADR, who is experienced in mediating class action claims. *Id*. at ¶ 20. Prior to mediation, the parties exchanged requests for information pursuant to Fed. R. Evid. 408. *Id*. at ¶ 21. The parties provided detailed confidential mediation statements to Judge Gandhi. *Id*. Plaintiffs also made a detailed settlement demand. *Id*.

The parties were unable to reach an agreement on several material terms of the settlement during mediation, but the parties continued to engage in settlement discussions following mediation. *Id*. at ¶¶ 22, 24. These settlement discussions continued for a period of many months

and included numerous phone calls, video conferences, and written exchanges. *Id*. at ¶ 25. During this time, Class Counsel continued to litigate the Consolidated Actions, including discussing depositions, consulting with experts, providing regular status reports to the court in the California Action, and moving towards expert disclosures and class certification. *Id*.

In June 2022, the parties reached a settlement in principle, including with respect to the monetary benefit for Settlement Class Members, and entered into a Memorandum of Understanding. *Id*. at ¶ 26. For the next five months, Class Counsel continued to negotiate the finer points of the Settlement Agreement, including the terms of injunctive relief, the release, settlement administrator, notice plan, and schedule. *Id*. at ¶ 27. During this process, the parties had regular Zoom conferences and continued to exchange redlines and drafts of documents and worked diligently to finalize the terms of the Settlement Agreement and ancillary documents, and the plan for Notice, which was completed in November of 2022. *Id*.

On November 22, 2022, Plaintiffs filed their Motion for Preliminary Approval of Settlement Agreement and accompanying Memorandum of Law. ECF Nos. 23-24. On November 28, 2022, this Honorable Court granted Plaintiffs' motion for preliminary approval, entering the Preliminary Approval Order. ECF No. 26. Pursuant to the Court's Order, notice was issued to Settlement Class Members, and Class Counsel has continued to devote significant time to assisting Settlement Class Members with various concerns related to the Settlement, including engaging in numerous telephone and e-mail communications with Settlement Class Members. *Id*. ¶¶ 32.

## **TERMS OF THE SETTLEMENT**

### I.    **Proposed Settlement and Its Value**

The Settlement's details are contained in the Settlement Agreement. ECF No. 24-1. The Settlement Agreement provides for a common fund of up to Five Million Dollars ($5,000,000)

("Settlement Amount"), comprising a $4,000,000 Cash Minimum Amount and $1,000,000 Replenishment Amount. Thinx is paying all costs associated with notice and administration, which are currently estimated at $375,000. *See* Exhibit 2, Declaration of Cameron R. Azari, Esq. on Implementation and Adequacy of Notice Plan ("Azari Decl.") at ¶ X. Even conservative estimates indicate that the ultimate number of valid claims may exhaust the $4,000,000 Cash Minimum Fund, necessitating the implementation of part of the $1,000,000 Replenishment Amount to cover additional valid claims. *Id*. at ¶ 37.  The table below summarizes (i) the Class Benefit, (ii) attorneys' fees, expenses, and class representative incentive awards, and (iv) the settlement administration costs:

| Category | Amount |
| --- | --- |
| Cash reimbursement | ~ $2,235,943.50 |
| Applied for attorneys' fees, expenses, and class representative awards | $1,500,000.00 |
| Notice and settlement administration costs | $375,000.00 |
| | |
| Total | $4,110,943.5 |

The Settlement offers a substantial recovery to Settlement Class Members and does so through a claims process that does not impose any undue burden.

## A. The Settlement Fund

Defendant will establish a Cash Minimum Fund, subject to replenishment by the Replenishment Amount, providing for payment of valid claims by Settlement Class Members, Notice and administration costs, and attorneys' fees, costs, and service awards approved by the Court as follows:

> a.  A non-reversionary cash fund in the amount of $4,000,000 providing for payment of valid claims by Settlement Class Members, Notice and administration costs, and attorneys' fees, costs, and service awards approved by the Court ("Cash Minimum Fund"). Thinx shall pay into the Cash Minimum Fund a portion of the Cash Minimum Amount

sufficient to cover the estimated costs of Notice and settlement administration, as provided by the Settlement Administrator, within 21 days after Preliminary Approval.

b. Replenishment fund in the amount of up to $1,000,000 in addition to the Cash Minimum Fund amount ("Maximum Cap") to cover additional valid claims by Settlement Class Members. Thinx shall in no event be required to pay any amounts above the Cash Minimum Fund amount other than for such actual valid claims.

c. If total valid claims, Notice and administration costs, and attorneys' fees, costs, and service awards approved by the Court are less than the amount of the Cash Minimum Fund, the amount remaining shall be paid to a *cy pres* charity to be agreed upon by the parties and approved by the Court.

d. If, after payment of Notice and administration costs and any attorneys' fees, costs, and service awards approved by the Court, payment of total valid claims would exceed the Maximum Cap, the payments to Settlement Class Members shall be prorated.

## B. Monetary Relief

The Settlement provides two monetary options for Settlement Class Members. Each Settlement Class Member who timely submits a valid Claim Form shall have the option to receive either cash reimbursement for past purchases of Thinx Period Underwear (up to three pairs total), or a voucher for future purchases of Eligible Voucher Products as defined below ("Class Benefit"), on the following terms:

- Cash Reimbursement. The amount of cash reimbursement for past purchases of Thinx Period Underwear will be contingent upon whether the Settlement Class Member provides a valid proof of purchase. Settlement Class Members will not, however, be required to provide proof of purchase for purchases of Thinx Period Underwear reflected in Thinx's records.

  - Cash reimbursement with proof of purchase: Each Settlement Class Member will receive a $7.00 refund for Thinx Period Underwear that are reflected in Thinx's records, or for which they submit a valid proof of purchase together with the Claim Form. The maximum cash reimbursement available for purchases reflected in Thinx's records or with proof of purchase will be $21.00.

       o   Cash reimbursement without proof of purchase:  Each Settlement Class Member will receive a $3.50 cash refund for Thinx Period Underwear that are not reflected in Thinx's records without proof of purchase but must provide details regarding the style(s) purchased and the approximate date, and location, of their purchases, and attest to the purchases under penalty of perjury. The maximum cash reimbursement available without proof of purchase will be $10.50.

- <u>Voucher</u>.  Settlement Class Members may choose to receive a single-use voucher for a discount of 35% off total purchases of Eligible Voucher Products (as defined below) in a single purchase transaction of up to $150 on the Thinx website (thinx.com). The maximum discount available shall be up to $52.50. Vouchers will not be transferable, subject to standard terms and conditions, and will be valid for six months from the date of issuance. Vouchers may be used on full-price Eligible Voucher Products only, and may not be combined with any other offers, discounts, or promotions.

       o   "Eligible Voucher Products" are the products below:

            ▪  Super Hiphugger
            ▪  Heavy Hiphugger
            ▪  Hiphugger
            ▪  Sport
            ▪  Heavy Boyshort
            ▪  Boyshort
            ▪  Super Hi-Waist
            ▪  Heavy Hi-Waist
            ▪  French Cut
            ▪  Cheeky
            ▪  Thong
            ▪  Modal Super Cotton Brief
            ▪  Modal Heavy Cotton Brief
            ▪  Modal Cotton Brief
            ▪  Modal Cotton Boyshort
            ▪  Modal Cotton Bikini
            ▪  Modal Cotton Thong
            ▪  Air Hiphugger
            ▪  Air Bikini

**C.  Non-Monetary Relief**

Additionally, Thinx has agreed to significant non-monetary relief. Thinx has affirmed that it will continue to take the measures it implemented following the institution of the California and Massachusetts Actions to help ensure that PFAS are not intentionally added to Thinx Period

Underwear at any stage of production, including maintaining production controls and materials reviews. Thinx will continue to have suppliers of raw materials for Thinx Period Underwear review and sign a Supplier Code of Conduct and Chemical Supplier Agreement, which require suppliers to attest that PFAS are not intentionally added to Thinx Period Underwear. Thinx will disclose the use of anti-microbial treatments and the purpose for which they are used and will no longer refer to the antimicrobial components of Agion as "non-migratory." Further, Thinx has revised its website and discontinued the sale of its "organic" line of Thinx Period Underwear.

### D. Release of Claims

In exchange for the foregoing relief, the Settlement Class Members who do not opt out of the Settlement will release Defendant from all claims asserted in this Action and any related claims which could be asserted in the Action. The released claims exclude claims for personal injury.

## II. Preliminary Approval

On November 28, 2022, this Court granted preliminary approval of the Settlement. ECF No. 26. In the Preliminary Approval Order, the Court preliminarily certified a settlement class including "[a]ll natural persons who purchased, not for resale, the following Thinx Period Underwear in the United States from November 12, 2016, to the date of entry of the Preliminary Approval Order: Cotton Brief, Cotton Bikini, Cotton Thong, Sport, Hiphugger, Hi-Waist, Boyshort, French Cut, Cheeky, and Thong." *Id*. at ¶ 2. The Court appointed Erin Ruben, Rachel Soffin, Harper Segui, and Hunter Bryson as Class Counsel. *Id*. at ¶ 6. The Court also appointed Plaintiffs Nicole Dickens, Haleh Allahverdi, Haley Burgess, Jillian Blenis, and Lili Mitchell as Class Representatives. *Id*. at ¶ 5.

The Court preliminarily found that the Settlement met the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of Rule 23 of the Federal Rules

of Civil Procedure. *Id*. at ¶ 4. In addition, the Court preliminarily found that the Settlement "is the product of extensive, non-collusive, arm's-length negotiations between experienced counsel who were thoroughly informed of the strengths and weaknesses of the case through discovery and motion practice," and "is within the range of possible approval because it compares favorably with the expected recovery balanced against the risks of continued litigation, does not grant preferential treatment to the Plaintiffs and Class Counsel, and has no obvious deficiencies." *Id*. at ¶ 8. The Court preliminarily approved the Settlement, as "fair, reasonable, and adequate, and in the best interest of the Plaintiffs and the other Settlement Class Members, subject to further consideration at the Final Approval Hearing." *Id*. at ¶ 9.

The Court approved the form and content of the Notice to the Settlement Class and appointed Epiq as the Claims Administrator. *Id*. at ¶¶ 11-13. As discussed below, the Notice program has been timely implemented in accordance with the Preliminary Approval Order.

### III.    Costs, Fees, and Service Awards

Plaintiffs have filed a Motion for Award of Attorneys' Fees, Reimbursement of Expenses, and Service Awards. ECF No. 39. As further discussed in Plaintiffs' Memorandum In Support of Unopposed Motion For Award of Attorneys' Fees, Reimbursement of Expenses, and Service Awards (ECF No. 39-1), Plaintiffs have respectfully requested that this Honorable Court: (1) award Plaintiffs' Counsel attorneys' fees of $1,458,713.54, which is an amount equal to 29.2% of the Settlement Amount, and which represents a 1.87 lodestar multiplier; (2) award Plaintiffs' Counsel reimbursement of litigation costs of $28,786.26; and (3) and award payments of $2,500 to Class Representatives Nicole Dickens, Haleh Allahverdi, Haley Burgess, Jillian Blenis, and Lili Mitchell, for a total of $12,500. Defendant does not object to this motion.

Class Counsel's fee petition explains why the requested fee and expense award is reasonable. *Id.* Settlement Class Counsel has not been paid for their extensive efforts or reimbursed for litigation costs incurred. The requested fee award will serve to compensate Class Counsel for their time, risk, and expense incurred in this litigation, including all of the work already performed in this case, all of the work remaining to be performed in connection with this Settlement, and the risks undertaken in prosecuting this case. Importantly, the enforceability of the Settlement Agreement is not contingent on the amount of attorneys' fees or costs or service awards to Plaintiffs that may be approved by the Court.

## ARGUMENT

### I.    NOTICE TO THE CLASS SATISFIED THE REQUIREMENTS OF RULE 23 AND DUE PROCESS

Before final approval can be granted, due process and Rule 23 require that the notice provided to the Settlement Class is "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). "Such notice to class members need only be reasonably calculated under the circumstances to apprise interested parties of the pendency of the settlement proposed and to afford them an opportunity to present their objections." *In re Marsh & McLennan Cos., Inc. Sec. Litig.*, 2009 WL 5178546, at *12 (S.D.N.Y. Dec. 23, 2009). Notice must clearly state essential information regarding the settlement, including the nature of the action, terms of the settlement, and class members' options. *See* Fed. R. Civ. P. 23(c)(2)(B). At its core, all that notice must do is "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 114 (2d Cir. 2005) (citation omitted). "It is clear that for due process to be satisfied, not every class member

14

need receive actual notice, as long as counsel 'acted reasonably in selecting means likely to inform persons affected.'" *In re Adelphia Commc'ns Corp. Sec. & Derivative Litigs.*, 271 F. App'x 41, 44 (2d Cir. 2008) (quoting *Weigner v. City of N.Y.*, 852 F.2d 646, 649 (2d Cir. 1988)).

The Notice here, which included an Email Notice, Postcard Notice, and Publication Notice, provides all the necessary information for Settlement Class Members to make an informed decision regarding the Settlement. The forms of notice utilized "clearly and concisely state in plain, easily understood language," the: (1) nature of the action; (2) definition of the certified class; (3) the class claims, issues, or defenses; (4) that a class member may appear through counsel; (5) that a class member will be excluded at their request; (6) the time and manner for requesting exclusion; and (7) the binding effect of a class judgment under Rule 23(c)(3). *See In re Take Two Interactive Sec. Litig.*, No. 06 CIV. 1131 (RJS), 2010 WL 11613684, at \*12–13 (S.D.N.Y. June 29, 2010). The Court's Preliminary Approval Order has already determined that the Notice and Notice Plan provide due, adequate, and sufficient notice to the Settlement Class, in addition to satisfying the requirements of Rule 23 of the Federal Rules of Civil Procedure, due process, and all other applicable law and rules. ECF No. 26 at ¶ 12.

In accordance with the Preliminary Approval Order, on January 12, 2023, Epiq began disseminating Email Notice for each member of the Settlement Class for whom Thinx had an email address and mailing Postcard Notice for each member of the Settlement Class for whom Thinx did not have an email address. *See* Azari Decl. at ¶¶ 12, 14. In addition, Epiq implemented an online banner advertisement campaign, as well as a social media advertising campaign. *Id*. at ¶¶ 20-21. Epiq also established the Settlement Website which contained a Claim Form submission capability during the claims period and which continues to contain relevant documents, including the operative Consolidated Class Action Complaint, Preliminary Approval

Motion and Order, the detailed Class Notice, the Settlement Agreement, and Class Counsel's and Plaintiffs' application for attorneys' fees, costs, and service awards. *Id*. at ¶¶ 28-29.

The Settlement was also the subject of extensive media coverage, including articles published by popular mainstream news outlets such as the Washington Post[4] and the New York Times,[5] which outlined the terms of the Settlement and undoubtedly expanded the Notice's reach. Many of the articles published in the news media included direct links to the Settlement Website.[6]

This combination of direct Email Notice, Postcard Notice and Publication Notice was "the best notice . . . practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B); *see, e.g.*, *In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 182-83 (S.D.N.Y. 2014); *In re Marsh & McLennan Cos. Sec. Litig.*, No. 04 Civ. 8144 (CM), 2009 WL 5178546, at *12-13 (S.D.N.Y. Dec. 23, 2009). Email Notice and/or Postcard Notice was delivered to 1,286,474 of the 1,288,730 unique, identified Settlement Class Members, meaning notice reached approximately 99% of identified Settlement Class Members. Azari Decl. at ¶ 18. Further, Publication Notice, which included targeted banner advertisements and social media advertising linking readers to the Settlement Website, resulted in approximately 47.4 million impressions. *Id*. at ¶ 23. Given the broad reach of the Notice, and the comprehensive information provided to the Settlement Class, the requirements of due process and Rule 23 are easily met.

---

[4] Kelsey Ables, *Period underwear and toxins: What to know about the Thinx lawsuit*, WASH. POST (Jan. 20, 2023 at 3:27 p.m.), https://www.washingtonpost.com/wellness/2023/01/20/thinx-lawsuit-period-underwear-pfas-safety/

[5] Alisha Haridasani Gupta, *What to Know About PFAS in Period Underwear*, N.Y. TIMES (Jan. 20, 2023), https://www.nytimes.com/2023/01/20/well/pfas-thinx-period-underwear.html

[6] *See, e.g.,* Rachel Treisman, *Thinx settled a lawsuit over chemicals in its period underwear. Here's what to know*, NAT'L PUB. RADIO (Jan. 19, 2023 at 2:37 pm), https://www.npr.org/2023/01/19/1150023002/thinx-period-underwear-lawsuit-settlement

Finally, the requirements under the Class Action Fairness Act of 2005 have been satisfied. Epiq mailed CAFA Notice to 56 officials, including the Attorneys General of each of the 50 states, the District of Columbia and the United States Territories, as well as the Attorney General of the United States.  Neither the parties nor Epiq has received any objections or responses.  Azari Decl. at 3.

## II. THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE AND SHOULD BE APPROVED BY THE COURT

Claims in a certified class action may be settled only with the court's approval "after a hearing and on finding that [the settlement] is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). Under Rule 23(e), to grant final approval of a Settlement, the Court must determine whether the Proposed Settlement is fair, reasonable, and adequate. In making this determination, the Court must review both the procedural and substantive fairness of a proposed settlement. *In re Am. Int'l Grp., Inc. Sec. Litig.*, 293 F.R.D. 459, 464 (S.D.N.Y. 2013).

The Second Circuit's settlement approval analysis generally relies on two overlapping multi-factor tests. Federal Rule of Civil Procedure 23(e)(2) supplies the first test, which requires the Court, in evaluating the fairness, reasonableness, and adequacy of a settlement, to consider whether:

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
> > i.    the costs, risks, and delay of trial and appeal;
> >
> > ii.   the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

           iii.     the terms of any proposed award of attorney's fees, including timing

                      of payment; and

           iv.     any agreement required to be identified under Rule 23(e)(3); and

    (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23 (e)(2). *See In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 692 (S.D.N.Y. 2019).

To determine substantive fairness, Courts supplement the 23(e)(2) analysis with the *Grinnell* factors, which include: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *Wal-Mart Stores, Inc.*, 396 F.3d at 117 (citing *Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974)).

Final approval of the Settlement is appropriate here because the Settlement is procedurally and substantively fair, adequate, and reasonable. *See* Fed. R. Civ. P. 23(e)(2). To determine whether to approve a settlement, "[c]ourts examine procedural and substantive fairness in light of the 'strong judicial policy in favor of settlement' of class action suits." *Tiro v. Public House Invs., LLC*, 2013 WL 4830949, at *5 (S.D.N.Y. Sept. 10, 2013). "Fairness is determined upon review of both the terms of the settlement agreement and the negotiating process that led to such agreement." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 184 (W.D.N.Y. 2005). "A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations

between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores, Inc.*, 396 F.3d at 116 (internal quotations omitted).

Importantly, courts and public policy considerations favor settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost, and rigor of prolonged litigation. "The compromise of complex litigation is encouraged by the courts and favored by public policy," and is particularly encouraged for the compromise of class actions. *Id.* at 117 (internal quotations omitted). If the settlement was achieved through arms'-length negotiations by experienced counsel, "[a]bsent fraud or collusion ... [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007).

### A. The Proposed Settlement is Procedurally Fair

To find a settlement procedurally fair, the Court must pay close attention to the negotiating process, to ensure that the settlement resulted from arm's-length negotiations, and that Plaintiffs' Counsel possessed the experience and ability, and engaged in the discovery necessary for effective representation of the Class's interests. *In re Am. Int'l Grp., Inc. Sec. Litig.*, 293 F.R.D. at 464. The Settlement here is the product of extensive arm's-length negotiations spanning nearly one year which were conducted by experienced counsel who are knowledgeable in complex consumer class actions, and the parties engaged in the discovery necessary for effective representation of the Class's interests. *See D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001) (quoting *Weinberger v. Kendrick*, 698 F.2d 61, 74 (2d Cir. 1982)) ("A court reviewing a proposed settlement must pay close attention to the negotiating process, to ensure that the settlement resulted from 'arm's-length negotiations and that plaintiffs' counsel have possessed the experience and ability, and have engaged in the discovery, necessary to effective representation of the class's interests.').

Class Counsel have considerable experience in handling consumer class actions and are capable of assessing the strengths and weaknesses of their respective positions. Milberg regularly engages in major complex litigation and has extensive experience in consumer class actions that are similar in size, scope, and complexity to this case. Joint Decl. at ¶¶ 1-5. The experience of the firm and attorneys involved demonstrate that the Settlement Class Members were well-represented at the bargaining table. "[G]reat weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation.'" *In re Telik Inc. Sec. Litig.,* 576 F.Supp.2d 570, 576 (S.D.N.Y.2008) (citing *Maley v. Del Global Techs. Corp.,* 186 F.Supp.2d 358, 366 (S.D.N.Y.2002)).

Further, the parties participated in a full day mediation before Hon. Jay Gandhi (Ret.) of JAMS ADR, who is experienced in mediating class action claims. *Id.* at ¶ 20. The participation of this highly qualified mediator strongly supports a finding that negotiations were conducted at arm's length and without collusion. *See Yang v. Focus Media Holding Ltd.*, 2014 WL 4401280, at *5 (S.D.N.Y. Sep. 4, 2014).

### B.  The Proposed Settlement is Substantively Fair

In addition to being procedurally fair, the Settlement is also substantively fair, reasonable, and adequate. "Courts in the Second Circuit evaluate the substantive fairness, adequacy, and reasonableness of a settlement according to the factors set out in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974)." *In re Vitamin C Antitrust Litig.*, 2012 WL 5289514, at *4 (E.D.N.Y. Oct. 23, 2012). The nine *Grinnell* factors include: "(1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through trial; (7) the ability of

defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation." *Id*. at \*4 (quoting *Grinnell*, 495 F.2d at 463). However, in reviewing and approving a settlement, "a court need not conclude that all of the *Grinnell* factors weigh in favor of a settlement," rather courts "should consider the totality of these factors in light of the particular circumstances." *Id.* Here, the *Grinnell* factors weigh in favor of final approval.

### 1. Litigation Through Trial Would be Complex, Costly, and Long (*Grinnell* Factor 1)

The Settlement provides favorable monetary benefits to the Settlement Class while avoiding the significant expenses, delays, and risks associated with litigation. Indeed, "[m]ost class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000). Courts have consistently held that, unless the proposed settlement is clearly inadequate, its acceptance and approval are preferable to the continuation of lengthy and expensive litigation with uncertain results. *TBK Partners, Ltd. v. Western Union Corp.*, 517 F. Supp. 380, 389 (S.D.N.Y. 1981), *aff'd*, 675 F.2d 456 (2d Cir. 1982).

This case is no exception. Plaintiffs understand that proceeding to trial is a risky and labor-intensive undertaking. Plaintiffs anticipate that Defendant would continue to contest the matter at every opportunity and on all fronts. While Plaintiffs believe that the Action has merit and that they would ultimately prevail at trial, continued litigation would last for an extended period before a class might be certified or a final judgment might be entered in favor of the Class (if any). Joint Decl. at ¶ 40. Any trial would likely last at least several weeks, and involve numerous fact witnesses, experts, and the introduction of voluminous documentary evidence. *Id*. Moreover, any

judgment favorable to the Class would be the subject of post-trial motions and appeals, which could significantly prolong the lifespan of this Action. *See, e.g.*, *City of Providence v. Aeropostale, Inc.*, 2014 WL 1883494, at *5 (S.D.N.Y. May 9, 2014) (finding that "[e]ven if the Class could recover a judgment at trial, the additional delay through trial, post-trial motions, and the appellate process could prevent the Class from obtaining any recovery for years."). By settling, Plaintiffs avoid the expenditure of resources and risk associated with trial, and they guarantee a quicker recovery to the Class. Because the risks of proceeding to trial are substantial, the settlement warrants final approval. *See e.g.*, *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 210 (S.D.N.Y. 1995) ("[I]t may be preferable to take the bird in the hand instead of the prospective flock in the bush.") (internal quotation marks omitted).

### 2. The Reaction of the Class is Overwhelmingly Positive (*Grinnell* Factor 2)

With the second *Grinnell* factor, the Court judges "the reaction of the class to the settlement." *In re Vitamin C Antitrust Litig*, 2012 WL 5289514, at *4 (quoting *Grinnell*, 495 F.2d at 463). "It is well settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy." *In re MetLife Demutualization Litig.*, 689 F. Supp. 2d 297, 333 (E.D.N.Y. 2010) (internal quotation marks omitted). This "significant" factor weighs heavily in favor of final approval.

Here, the reaction of the Class Members to the Settlement has been overwhelmingly positive. Notice has been sent to nearly 1,300,000 Settlement Class Members in accordance with the requirements of Rule 23(c)(2)(B) and the Preliminary Approval Order (ECF No. 26). Azari Decl. at ¶ 18. In response, nine Settlement Class Members have submitted purported objections to the Settlement, and less than 0.002% have opted out. Joint Decl. at ¶ 35; Azari Decl. at ¶ 34.

As discussed in the attached Joint Declaration from Class Counsel, seven of the nine objections are founded on a misunderstanding that the Settlement releases personal injury claims, when it does not. Joint Decl. at ¶ 35. Class Counsel has attempted to reach these class members in an effort to explain the release and spoke with four of them, each of whom agreed to withdraw their objection upon learning that the Settlement does not release their personal injury claims.[7] *Id.* at ¶ 36. The Court should overrule the remaining three objections[8] which are based on a misunderstanding of the scope of the release.

Of the remaining objections, one was filed by Settlement Class Member Jennifer Sciuto, who objected to the Settlement on the basis that the relief provided to class members is insufficient. (ECF No. 49.) Class Counsel reached out to Ms. Sciuto in order to discuss the terms of the Settlement in more detail, at which time Ms. Sciuto agreed to withdraw her objection. Joint Decl. at ¶ 37. The final objection was filed by Alison Bender, who objects on the basis that the Settlement is not fair to *Thinx*, because Ms. Bender believes the litigation is opportunistic and unfairly tarnishes Thinx's business reputation. Ms. Bender raises no concern as to whether the Settlement is fair, reasonable, or adequate as to *Settlement Class Members*. (ECF No. 42 at p. 9.) Accordingly, Plaintiffs request that Ms. Bender's objection be overruled.

The small number of objections to the Settlement indicates that Settlement Class Members view the Settlement favorably, which weighs heavily in favor of final approval and further supports the "presumption of fairness." *See, e.g., Hanlon v. Chrysler*, 150 F.3d 1011, 1027 (9th Cir. 1998) ("[T]he fact that the overwhelming majority of the class willingly approved the offer and stayed in the class presents at least some objective positive commentary as to its fairness."); *Wright v.*

---

[7] ECF No. 42 at p.3 (Lesandre Barley); *Id*. at p. 10 (Miki Takata); *Id*. at p. 15 (Binita Katheria); and *Id*. at p. 28 (Melissa Strader).
[8] ECF No. 35 (Elaine Chaw); ECF No. 36 (Karen Chaw); and ECF No. 46 (Amabel Chin).

*Stern,* 553 F.Supp.2d 337, 344–45 (S.D.N.Y.2008) (approving settlement where 13 out of 3,500 class members objected and 3 opted out and noting "[t]he fact that the vast majority of class members neither objected nor opted out is a strong indication" of fairness.). *See also Austrian and German Bank Holocaust Litig.,* 80 F.Supp.2d at 175–76 (finding small number of objections weighed in favor of settlement where 27,883 notices sent to class members, 72 persons requested exclusion and 18 written objections and comments were filed).

Consequently, the second *Grinnell* factor weighs in favor of final approval of the Settlement.

### 3. Discovery Has Advanced Far Enough to Allow the Parties to Responsibly Resolve the Case (*Grinnell* Factor 3)

Under this factor, "[t]he pertinent question is whether counsel had an adequate appreciation of the merits of the case before negotiating." *See Torres v. Gristede's Operating Corp.,* 2010 WL 5507892, at *5 (S.D.N.Y. Dec. 21, 2010) (internal quotation omitted).

Plaintiffs' and Class Counsel's knowledge of the merits as well as the strengths and weaknesses of their claims is certainly adequate to support the Settlement. This knowledge is based, in part, on the extensive investigation undertaken by Class Counsel in preparing the initial complaint in addition to subsequent complaints filed in other districts and numerous amended complaints. Joint Decl. at ¶¶ 7, 9, 11. After the motion to dismiss was denied in the California Action, the parties engaged in written discovery. As a result of the extensive investigation and the discovery conducted on issues at the heart of the Complaint's allegations, Plaintiffs and Class Counsel were in a position to intelligently weigh the strengths and weaknesses of their case and to engage in effective settlement discussions with Defendant. *Id.* at ¶ 23. *See In re Global Crossing Sec. & ERISA Litig.,* 225 F.R.D. 436, 458 (S.D.N.Y. 2004) ("Formal discovery is not a prerequisite; the question is whether the parties had adequate information about their claims."); *In*

*re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. at 177 (finding that even where "no merits discovery occurred in this case to date," lead counsel was "knowledgeable with respect to possible outcomes and risks in this matter and, thus, able to recommend the Settlement").

Indeed, prior to mediation, the parties exchanged significant information, which allowed the parties to assess the strengths of their positions and attack each other's potential weaknesses. Joint Decl. at ¶¶ 21, 23. During mediation, the parties thoroughly discussed and vetted the facts and law, as Judge Gandhi engaged in a critical analysis of the parties' arguments. *Id*. at ¶ 22. The parties continued to engage in settlement discussions, including the exchange of additional discovery, in the months following mediation. *Id*. at ¶ 24. This discovery was sufficient for Class Counsel to appreciate the merits of the case before both negotiating and recommending settlement. *See also deMunecas v. Bold Food, LLC*, No. 09 CIV. 00440 DAB, 2010 WL 3322580, at *5 (S.D.N.Y. Aug. 23, 2010) (finding third *Grinnell* factor weighed in favor of final approval where the plaintiffs obtained sufficient discovery through an efficient, informal exchange of information, followed by a mediation session which "allowed them to further explore the claims and defenses.")

Consequently, this *Grinnell* factor weighs in favor of final approval of the Settlement.

### 4. The Continued Litigation Risks Related to Establishing Liability, Damages, and Maintaining a Class Action Through Trial Support the Settlement (*Grinnell* Factors 4, 5, and 6)

"The fourth, fifth, and sixth *Grinnell* factors all relate to continued litigation risks," *i.e.*, the risks of establishing liability, damages and maintaining the class action through trial. *In re Vitamin C Antitrust Litig.*, 2012 WL 5289514, at *5. "Litigation inherently involves risks." *In re Painewebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y.1997). One purpose of a settlement is to avoid the uncertainty of a trial on the merits. Analyzing these risks "does not require the Court to adjudicate the disputed issues or decide unsettled questions; rather, the Court need only assess

the risks of litigation against the certainty of recovery under the proposed settlement." *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. at 459; *In re AOL Time Warner, Inc.*, 2006 WL 903236, at *11 (S.D.N.Y. Apr. 6, 2006). In other words, "the Court should balance the benefits afforded to members of the Class and the immediacy and certainty of a substantial recovery for them against the continuing risks of litigation." *Maley*, 186 F. Supp. 2d at 364. The Court "must only 'weigh the likelihood of success by the plaintiff class against the relief offered by the settlement.'" *In re Austrian and German Bank Holocaust Litig.,* 80 F.Supp.2d at 177 (quoting *Marisol A. ex rel. Forbes v. Giuliani,* 185 F.R.D. 152, 164 (S.D.N.Y.1999)).

The fourth and fifth factors under *Grinnell* require the Court to consider the risks of establishing liability and damages. While Plaintiffs believe their claims would be borne out by the evidence presented at trial, they recognize that there are significant hurdles to proving liability or even proceeding to trial. Joint Decl. at ¶ 39. Among other things, Defendant denies all allegations of liability and has strenuously contended that Plaintiffs would be unable to prove that Defendant made any false or misleading material statements. In addition, in the California Action, Thinx challenged Plaintiffs' claims on several grounds, including with respect to the type, level, and amount of PFAS allegedly found through Plaintiffs' testing and whether to the extent present they pose any risk of harm. (California Action, ECF No. 38.) These issues, which go to the merits of the case, would be central to Thinx's defense, and potentially pose hurdles for Plaintiffs.

Furthermore, Plaintiffs would have been forced to undertake a fact-intensive economic inquiry to show the damages claimed would compensate consumers for the value they would have received absent the alleged misrepresentations. Defendant would have likely opposed the validity of Plaintiffs' damages model and its ability to be calculated with proof common to the class. As with contested liability issues, issues relating to loss causation and damages would have likely

come down to an unpredictable and hotly disputed "battle of the experts." Joint Decl. at ¶ 41. Plaintiffs' reliance on expert testimony to establish damages, as well as a jury's acceptance of that expert testimony is far from certain, especially when Defendant will offer competing expert testimony to the contrary. *See In re Am. Bank Note Holographics, Inc. Sec. Litig.*, 127 F. Supp. 2d 418, 426-27 (S.D.N.Y. 2001) ("Plaintiffs' Counsel recognize the possibility that a jury could be swayed by experts for Class Defendants, who could minimize or eliminate the amount of Plaintiffs' losses."); *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 744 (S.D.N.Y. 1985) ("In this 'battle of the experts' it is virtually impossible to predict with any certainty which testimony would be credited . . .").

The sixth *Grinnell* factor considers the risk of maintaining class status through trial. Although class certification has been preliminarily approved by this Court for the purpose of settlement, it is not certain that the case would be certified in the absence of a settlement. If the Settlement was not granted finally approval, Thinx would certainly challenge class certification, and the risk that the case might be not certified is not illusory and weighs in favor of the Class Settlement. *See also deMunecas*, No. 09 CIV. 00440 DAB, 2010 WL 3322580, at *6 (finding settlement eliminated the risk, expense, and delay inherent in a contested class certification motion and therefore the sixth *Grinnell* factor was satisfied).

Without the Settlement, the parties faced the certainty that litigating this action through the completion of fact discovery, class certification, expert discovery, summary judgment, trial, and appeals, which would be complex, time-consuming, and expensive. Joint Decl. at ¶ 42. Here, the Settlement provides a substantial monetary benefit to Settlement Class Members without the risk and delays of continued litigation. *See Strougo v. Bassini*, 258 F. Supp. 2d 254, 261 (S.D.N.Y. 2003) ("…if a shareholder or class member was willing to assume all the risks of [Litigation]…the

passage of time would introduce yet more risks…and would, in light of the time value of money, make future recoveries less valuable than this current recovery.").

The Settlement avoids the risks inherent in protracted litigation and provides a prompt and favorable resolution to the Class. Accordingly, the fourth, fifth, and sixth *Grinnell* factors weigh in favor of final approval.

### 5. The Ability of Defendant to Withstand a Greater Judgment (*Grinnell* Factor 7)

The seventh *Grinnell* factor considers whether a defendant could withstand a judgment substantially higher than the proposed settlement amount if the case were to proceed to trial. *Denney v. Jenkens & Gilchrist*, 230 F.R.D. 317, 338 (S.D.N.Y. 2005). While Defendant is able to withstand a judgment in excess of the Settlement Amount, courts generally do not find this to be an impediment to settlement when the other factors favor the settlement. *See In re Vitamin C Antitrust Litig.*, 2012 WL 5289514, at *6 (acknowledging that "in any class action against a large corporation, the defendant entity is likely to be able to withstand a more substantial judgment, and . . . this fact alone does not undermine the reasonableness of the instant settlement"); *Frank*, 228 F.R.D. at 186 ("Even if they could, a 'defendant's ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair.'") (internal citations omitted). This factor is typically relevant only when a settlement is less than what it might otherwise be but for the fact that the defendant's financial circumstances do not permit a greater settlement. *In re Namenda Direct Purchaser Antitrust Litig.*, 462 F. Supp. 3d 307, 314 (S.D.N.Y. 2020). In cases such as this one where that situation is not present, courts generally do not give much consideration to this factor.

### 6. The Settlement Amount is Reasonable in Light of the Possible Recovery and the Attendant Risks of Litigation (*Grinnell* Factors 8 and 9)

Courts typically analyze the last two *Grinnell* factors together. *See Grinnell*, 495 F.2d at 463. In so doing, courts "consider[] and weigh[] the nature of the claim, the possible defenses, the situation of the parties, and the exercise of business judgment in determining whether the proposed settlement is reasonable." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 2010 WL 4537550, at *20 (S.D.N.Y. Nov. 8, 2010) (quoting *Grinnell*, 495 F.2d at 462). The determination of whether a settlement amount is reasonable "does not involve the use of a mathematical equation yielding a particularized sum." *Frank*, 228 F.R.D. at 186 (internal quotation marks omitted). "Instead, 'there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'" *Id.* (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972), *cert. denied*, 409 U.S. 1039 (1972)). Because a settlement provides certain and immediate recovery, courts often approve settlements even where the benefits obtained as a result of the settlement are less than those originally sought. As the Second Circuit stated in *Grinnell*, "there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth of a single percent of the potential recovery." 495 F.2d at 455 n.2.

The adequacy of the amount offered in settlement must be judged "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987). The Court need only determine whether the Settlement falls within a "range of reasonableness"—a range which "recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in

taking any litigation to completion." *Newman*, 464 F.2d at 693; *see also Global Crossing*, 225 F.R.D. at 461 (noting that "the certainty of [a] settlement amount has to be judged in [the] context of the legal and practical obstacles to obtaining a large recovery"); *In re Indep. Energy Holdings PLC Sec. Litig.*, 2003 WL 22244676, at *3-*4 (S.D.N.Y. Sept. 29, 2003) (noting few cases tried before a jury result in full amount of damages claimed). In addition, in considering the reasonableness of the Settlement, the Court should consider that the Settlement provides for payment to Settlement Class Members now, rather than the potential for a payment years down the road. *See In re Time Warner, Inc. Sec. & ERISA Litig.*, 2006 WL 903236, at *13 (S.D.N.Y. Apr. 6, 2006) (where settlement fund is in escrow earning interest, "the benefit of the Settlement will . . . be realized far earlier than a hypothetical post-trial recovery").

Given that the average retail price of the products included in the Settlement is $28, that Settlement Class Members may receive 25% of the average purchase price with proof of purchase, or approximately 12% of the average purchase price without proof of purchase, for up to 3 pairs of Thinx Period Underwear, is a very favorable recovery under any circumstances. Joint Decl. at ¶ 7, fn. 2. This percentage of recovery is well above the recovery range of settlements that have received approval within this District. *See, e.g., In re Patriot Nat'l, Inc. Sec. Litig.*, 828 F. App'x 760, 762 (2d Cir. 2020) (affirming district court's approval of settlement representing 6.1% of the class's maximum potentially recoverable damages); *Vaccaro v. New Source Energy Partners L.P.*, No. 15 CV 8954 (KMW), 2017 WL 6398636, at *6 (S.D.N.Y. Dec. 14, 2017) (approving settlement representing 6.5% of the maximum recoverable damages); *In re Merrill Lynch & Co. Research Reports Sec. Litig.*, 246 F.R.D. 156, 167 (S.D.N.Y. 2007) (approving settlement that was "between approximately 3% and 7% of estimated damages").

Although Plaintiffs and Defendant disagree about the amount of maximum recoverable damages, the common fund of up to Five Million Dollars ($5,000,000), comprising a $4,000,000 Cash Minimum Amount and $1,000,000 Replenishment Amount is a substantial recovery regardless of which party's damages metric is used. Here, Plaintiffs faced numerous legal, procedural, and practical hurdles, including issues related to materiality of the alleged non-conforming ingredients at issue, that, if not overcome, could preclude any recovery for Plaintiffs and the Settlement Class.

Accordingly, the final elements of the *Grinnell* test weigh heavily in favor of approval.

## **CONCLUSION**

For the reasons set forth above, Plaintiffs respectfully request that the Court grant their Motion for Final Approval of Class Action Settlement and enter the Final Approval Order in the form submitted herewith.

DATED:    May 3, 2023    Respectfully submitted,

> */s/ Erin J. Ruben*
> Erin J. Ruben*
> **MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, LLP**
> 900 W. Morgan Street
> Raleigh, NC 27603
> P.O. Box 12638
> Raleigh, NC 27605
> eruben@milberg.com
>
> Rachel Soffin*
> **MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, LLP**
> 800 S. Gay Street, Suite 1100
> Knoxville, TN 37929
> rsoffin@milberg.com
>
> Harper T. Segui*
> **MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, LLP**
> 825 Lowcountry Blvd., Suite 101

Mt. Pleasant, SC 29464
hsegui@milberg.com

J. Hunter Bryson*
**MILBERG COLEMAN BRYSON PHILLIPS
GROSSMAN, LLP**
405 E 50th Street
New York, NY 10022
Tel: (630) 796-0903
hbryson@milberg.com

*Attorneys for Plaintiffs and the Class*

*Admitted Pro Hac Vice*

32