# EXHIBIT 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **NICOLE DICKENS, HALEH ALLAHVERDI, HALEY BURGESS, JILLIAN BLENIS, and LILI MITCHELL,** individually and on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>**THINX, INC.**,<br><br>Defendant. | **CASE NO. 1:22-cv-04286-JMF** |

**JOINT DECLARATION IN SUPPORT OF PLAINTIFFS' MOTION AND MEMORANDUM OF LAW IN SUPPORT OF FINAL APPROVAL OF <u>CLASS ACTION SETTLEMENT</u>**

This declaration is submitted by Erin J. Ruben, Rachel Soffin, Harper Segui, and Hunter Bryson of Milberg Coleman Bryson Phillips Grossman LLP ("Class Counsel"). We offer this declaration in support of Plaintiffs' Motion for Final Approval of Class Action Settlement ("Motion")[1] We each have personal knowledge of the facts set forth in this declaration and could testify competently as to these facts if called upon to do so.

**<u>Class Counsel</u>**

1.  Class Counsel have significant experience in the litigation, certification, trial, settlement, and appeal of national class actions, and have recovered hundreds of millions of dollars for the classes they have represented. The experience, resources, and knowledge Class Counsel

---

[1] The definitions and capitalized terms in the Memorandum in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement (the "Memorandum") shall have the same meanings attributed to them in those documents.

brings to this Action is extensive and formidable. *See* Exhibit A (resume of Milberg Coleman Bryson Phillips Grossman PLLC ("Milberg")).

1. **Rachel Soffin.** Ms. Soffin is a Senior Partner at Milberg and has been litigating complex actions for 17 years, with an exclusive focus on consumer class actions and product defect litigation for the last 13 years. Throughout her career, Ms. Soffin has represented consumers and served as class counsel in numerous successful MDLs and class actions, including *All-Clad Metalcrafters, LLC, Cookware Marketing and Sales Practices Litigation*, No. 2:21-mc-00491-NR (W.D. Pa.) ($4 million settlement for consumers involving defective cookware); *Cleveland v. Whirlpool Corp.*, No. 0:20-cv-01906-WMV-KMM (D. Minn.)( over $20M value settlement for consumers involving defective dishwashers);*Hamm v. Sharp Electronics Corporation*, 5-19-cv-00488 (S.D. Fla.) (over $100 million value settlement in action involving allegedly defective microwaves); *Berman et al v. General Motors LLC*, No. 2:18-cv-14371 (S.D. Fla.) ($40 million value settlement in action involving allegedly defective automobiles); *Allura Fiber Cement Siding Prods. Liability Litig.*, No. 2:19-mn-02886-DCN (D.S.C.) MDL ($12.5M settlement involving defective fiber cement siding); *De Leon v. Bank of America, N.A. (USA)*, No. 6:09-cv-01251 (M.D. Fla.) ($10 million settlement for consumers subjected to breach of their Cardholder Agreement and deceptive trade practices); *Swift v. Bank of America*, No. 3:14-cv-01539 (M.D. Fla) ($1 million settlement for consumers subjected to TCPA violations); *In Re: Horizon Organic Milk Plus DHA Omega-3 Marketing and Sales Practice Litigation,* 1:12-MD-02324 (S.D. Fla.) ($1.3 million settlement value for consumers subjected to deceptive trade practices involving product misrepresentations); *In Re: Tracfone Unlimited Service Plan Litigation*, No. 13-cv-03440 (N.D. Cal) ($40 million settlement for consumers subjected to deceptive cellular phone data plan practices).

2

2. Currently, in addition to her appointment in this litigation, Ms. Soffin serves as court-appointed Co-Lead Counsel in the deceptive representations and omissions pet collar product liability litigation: *Seresto Flea and Tick Collar Marketing, Sales Practices and Product Liability Litig.*, No. 1:21-cv-04447. Ms. Soffin also serves as court-appointed counsel on the Plaintiffs' Steering Committee in litigation involving defective breast implants, *In re: Allergan Biocell Textured Breast Implant Product Liability Litigation*, 2:19-md-02921-BRM-ESK (D.N.J.). Ms. Soffin was designated by Super Lawyers as a Florida Rising Star from 2011-2013, and as a Florida Super Lawyer from 2014-2018, 2022-2023, in the fields of Class Actions and Mass Torts. In addition, Ms. Soffin is a Practice Leader in the Milberg Consumer Products Group.

2. **Harper T. Segui.** Ms. Segui is a Senior Partner at Milberg. In her nearly 16 years of practice, Ms. Segui has represented plaintiffs in a wide variety of cases nationally, spending the majority of her career leading class action and complex litigation. Specifically, in addition to the appointment as Co-Lead Counsel in this litigation, Ms. Segui is currently serving as Co-Lead Counsel in *In Re: Blackbaud, Inc., Customer Data Breach Litigation*, 3:20-mn-02972, MDL No. 2972 (D.S.C.). She was previously appointed to the Plaintiffs' Steering Committee in *In Re: Windsor Wood Clad Windows Prods. Liab. Litig.*, 16-md-02668, MDL No. 2688 (E.D. Wis.) (Hon. Lynn S. Adelman) and *In Re: Allura Fiber Cement Siding Litig.*, 2:19-mn-02886 (D.S.C.) (Hon. David C. Norton), where she is serving a vital role as settlement class counsel. She also played essential supporting roles in *In Re: MI Windows and Doors, Inc, Prods. Liab. Litig.*, 2:12-mn-00001, MDL No. 2333 (D.S.C.) (Hon. David C. Norton); *In Re: Pella Corporation Architect and Designer Series Windows, Marketing, Sales Practices and Prods. Liab. Litig.*, 2:14-mn-00001, MDL No. 2514 (D.S.C.) (Hon. David C. Norton); *In Re: Atlas Roofing Corporation Chalet Shingle Products Liability Litigation*, 1:13-md-02495 (N.D. Ga.) (Hon. Thomas W. Thrash, Jr.); and

3

*Hamm v. Sharp Electronics Corporation*, 5-19-cv-00488-JSM-PRL (S.D. Fla) (over $100 million value settlement in action involving allegedly defective microwaves).

3. Ms. Segui has co-authored several articles related to product defect liability and has been a speaker in multiple national continuing legal education conferences on complex class action litigation topics. Since 2013, she has been regularly selected to Super Lawyers Rising Stars, as a Top-Rated Class Action & Mass Torts Attorney. In addition, Ms. Segui is a Practice Leader in the Milberg Consumer Products Group.

4. **Erin Ruben** is Senior Counsel at Milberg and a member of Milberg's Consumer Products Group. Ms. Ruben's practice is focused primarily on consumer products litigation, where she represents individuals in actions related to defective products, false advertising, and mislabeling. Ms. Ruben also represents victims of data breach, including those who have experienced the theft or misuse of their biometric data. Ms. Ruben has been privileged to work on various MDLs, including taking an active role *In Re: Blackbaud, Inc., Customer Data Breach Litigation*, 3:20-mn-02972, MDL No. 2972 (D.S.C.), a data privacy MDL. As part of her consumer products practice, Ms. Ruben specializes in cases related to the false advertising and mislabeling of beauty and personal care products, including cases arising from the presence of PFAS and other harmful chemicals.

5. **Hunter Bryson** is a Senior Associate and member of Milberg's Consumer Products Group and has been named a Super Lawyers Rising Star on multiple occasions. Mr. Bryson has been named Class Counsel in multiple mislabeled product settlements. See *Hill v. Canidae Corp.*, No. EDCV201374JGBSPX, (C.D. Cal. Sept. 28, 2021); *Shaw et al v. Costco Wholesale Corporation et al*, 2:20-cv-01620-RAJ (W.D.WA); *Berman et al v. General Motors LLC*, No. 2:18-cv-14371 (S.D. Fla.) ($40 million value settlement in action involving allegedly defective automobiles); *Paul Gifford et. al v. Canidae Corp.,* 2:21-cv-02136-CJC-MRW, (C.D. Cal.).

Mr. Bryson has also been named Class Counsel in over 17 actions involving the collection of illegal fees that has resulted in over $54,000,000 secured for Settlement Class Members. See *True Homes, LLC, et al. et al v. City of Greensboro*, Guilford County File No. 19-CVS-3879 (litigation class); *Daedalus, LLC, et al. v. City of Charlotte*, Mecklenburg County No. 18-CVS-21073 (litigation class); *Plantation Building of Wilmington, Inc., et al. v. Brunswick County*, Brunswick County File No. 19-CVS-647 (litigation and settlement classes); *Eastwood Construction, LLC v. City of Monroe*, Union County File No. 18-CVS-2692 (settlement class); *Gantt v. City of Hickory*, Catawba County file no. 20-CVS-1183 (litigation class); *Shenandoah Homes LLC, v. Town of Clayton*, Johnston County 19-CVS-640 (settlement class); *Mayfair Partners, LLC et al v. City of Asheville*, Buncombe County 18-CVS-04870 (settlement class); *Kidd Construction Group et. al v. Greenville Utilities Commission*, Pitt County 18-CVS-2376 (settlement class); *Upright Builders Inc. et al. v. Town of Apex*, Wake County 18-CVS-3720 and 18-CVS-4384 (settlement class); *Currin Builders Inc. et al. v. Town of Holly Springs*, Wake County 17-CVS-6244, 17-CVS-6245, and 18-CVS-1373 (settlement class); *Shaheen v. City of Belmont*, Gaston County 17-CVS-3924 (settlement class); *Brookline Homes, LLC v. City of Mount Holly*, Gaston County 19-CVS-1163; *Stier Construction Company, Inc. v. Town of Carolina Beach*, New Hanover County 19-CVS-2999 (settlement class); *Plantation Building of Wilmington, Inc. v. City of Southport*, Brunswick County 19-CVS-648 (settlement class); *Plantation Building of Wilmington, Inc. v. Town of Leland*, Brunswick County 18-CVS-1722 (litigation and settlement class); *Granite Land and Timber, LLC v. Town of Clayton*, Johnston County File No. 20-CVS-2903 (litigation class); *Meritage Homes of the Carolinas, Inc. v. Town of Holly Springs*, Wake County File No. 20-CVS-14511 (litigation class).

**Background and Relevant Procedural History**

6. In February of 2020, our firm began investigating claims related to menstrual underwear ("Thinx Period Underwear")[2] sold and manufactured by Defendant Thinx Inc. ("Defendant" or "Thinx") which allegedly contained harmful short chain per-and polyfluoroalkyl substances ("PFAS").

7. In July of 2020, prior to initiating any of the three actions brought against Thinx by Plaintiffs, our firm engaged a certified laboratory to conduct high quality analytical testing of certain styles of Thinx Period Underwear using the "PFAS by Isotope Dilution" method, an accepted method for detecting the presence of PFAS in textiles. In addition to working with the lab, we spent significant time researching the science behind PFAS and developing an understanding of its use in consumer goods. We also researched Thinx Period Underwear's design, including relevant U.S. patent applications; researched Thinx's known suppliers and manufacturers, including their relevant certifications; researched the possible sources of PFAS in the design and manufacture of the Thinx Period Underwear; and researched all of Thinx's representations regarding the Thinx Period Underwear, including its website content, social media posts, advertising, blog posts, news articles, and other marketing materials dating back to the company's inception in 2013. Our firm also interviewed numerous purchasers of Thinx Period Underwear and gathered and reviewed significant documents from potential plaintiffs, including photographs and proof of purchase.

8. Class Counsel is not aware of any actions alleging misleading marketing practices stemming from the inclusion of PFAS in consumer products that pre-date Plaintiffs' first filed

---

[2] The styles of Thinx Period Underwear are identified in the Settlement Agreement and include the following styles: Cotton Brief, Cotton Bikini, Cotton Thong, Sport, Hiphugger, Hi-Waist, Boyshort, French Cut, Cheeky, and Thong. During the relevant time period, the average retail price of Thinx Period Underwear was $28.

action in California. Consequently, before initiating the litigation against Thinx, Class Counsel spent many hours and expended significant resources investigating the claims related to Thinx Period Underwear on behalf of several potential plaintiffs and other consumers nationwide, including developing an understanding of the novel factual and legal arguments underpinning those claims.

9. To further aid in the investigation and identification of PFAS in Thinx Period Underwear, our firm engaged an expert in chemistry to conduct an initial chemical analysis of certain styles of Thinx Period Underwear and to advise proposed Class Counsel on the applicable science related to PFAS, including the methodologies used to detect PFAS in textiles. Our firm also engaged a second certified laboratory to conduct additional testing of Thinx Period Underwear in November 2020. Through this investigative work, it was determined that the Thinx Period Underwear contained PFAS.

10. The testing conducted on behalf of Plaintiffs analyzed the Thinx Period Underwear for a targeted list of long and short chain PFAS using the PFAS by Isotope Dilution method. The Thinx Period Underwear was found to contain short chain PFAS.

11. On November 12, 2020, Destini Kanan[3] filed a class action lawsuit in the Central District of California alleging that Thinx misrepresented the true nature of Thinx Period Underwear by representing that it is, among other things, free from harmful chemicals and organic (*Allahverdi, et al. v. Thinx, Inc.*, 2:20-cv-10341-SSS-JPR (C.D. Cal.) ("California Action"). Related actions were filed on June 18, 2021 in the United States District Court for the District of Massachusetts (*Blenis, et al. v. Thinx, Inc.*, 1:21-cv-11019-IT (D. Mass.) ("Massachusetts

---

[3] On September 23, 2021, Plaintiffs filed a Second Amended Complaint, removing Destini Kanan as a Plaintiff and replacing her with Haleh Allahverdi. (*Allahverdi*, ECF No. 60).

Action")); and on May 25, 2022, in the United States District Court for the Southern District of New York (*Dickens v. Thinx, Inc.,* No. 1:22-cv-04286-JMF (S.D.N.Y.) ("New York Action")).

13. The California and Massachusetts Plaintiffs voluntarily dismissed their respective cases in order to consolidate their claims in with the New York Action. The California Action and Massachusetts Action were consolidated with the New York Action on August 8, 2022 (collectively referred to as the "Consolidated Action"). The Consolidated Action involves claims that Thinx Period Underwear contained harmful PFAS chemicals, which contradicted Thinx's marketing representations about the product.

### Class Counsel's Efforts

13. Prior to negotiating the Settlement, the parties engaged in hard-fought litigation in the related actions. On February 9, 2021, Thinx filed its first motion to dismiss in the California Action (California Action, ECF No. 26), and Plaintiff Kanan filed an Amended Complaint on March 16, 2021, adding Haley Burgess as a Plaintiff (California Action, ECF No. 29). On April 15, 2021, Thinx filed a renewed motion to dismiss in the California Action, seeking to dismiss Plaintiffs' claims in their entirety and with prejudice for failure to state a claim upon which relief can be granted and to strike portions of the Amended Complaint. (California Action, ECF No. 39.) On May 13, 2021, Plaintiffs filed their response in opposition to Thinx's motion to dismiss (California Action, ECF No. 40.), and on June 3, 2021, Thinx filed its reply in support of the motion to dismiss. (California Action, ECF No. 41.)

14. On June 23, 2021, after full briefing in the California Action, the court entered an Order granting and denying in part Thinx's Motion to Dismiss. (California Action, ECF No. 46.) The Order granted without prejudice Thinx's motion to dismiss Plaintiffs' claims for breach of implied warranty and negligent failure to warn, allowing Plaintiffs to proceed with claims for breach of express warranty; unjust enrichment (in the alternative); and violations of California

8

Consumers Legal Remedies Act ("CLRA") (Cal. Civ. § 1750 et seq.), Unfair Competition Law ("UCL") (Cal. Bus. & Prof. Code § 17200 et seq.), and False Advertising Law ("FAL")(Cal. Bus. & Prof. Code § 17500 et seq.). (*Id.*)

15. Thinx also filed a motion to dismiss or stay the Massachusetts Action on September 30, 2021. (Massachusetts Action, ECF No. 19). Plaintiffs responded to the motion on November 15, 2021 (Massachusetts ECF No. 26), and Thinx filed its reply on December 15, 2021 (Massachusetts Action, ECF No. 31). On April 12, 2022, the parties filed a joint motion to continue the hearing date on Thinx's motion based on the parties' progress toward settlement in the California Action. (Massachusetts Action, ECF No. 33.) The parties filed a second motion to further continue the hearing date on May 26, 2022. (Massachusetts Action, ECF No. 35).

16. In addition to motion practice, beginning in September 2021, the parties also engaged in discovery and entered into a Stipulated Protective Order to govern the disclosure of confidential information (California Action, ECF No. 61). Specifically, the parties served and responded to written discovery requests. Thinx noticed depositions for Plaintiffs Destini Kanan and Haley Burgess, and Plaintiffs issued a Fed. R. Civ. P. 30(b)(6) notice of deposition of Thinx.

17. During litigation and continuing throughout discovery, we worked with well-qualified experts in the fields of biochemistry, reproductive and environmental toxicology, pharmacology, sustainability and chemical management, and textile manufacturing. Plaintiffs' experts provided ongoing assistance to our firm during litigation, including, *inter alia*, assistance with the evaluation of potential claims, formulation of discovery questions, and requests for information pursuant to Fed. R. Evid. 408.

18. After the California Action was filed, Thinx revised its website and removed many of the representations regarding the presence of chemicals in Thinx Period Underwear. Thinx also

9

discontinued production of its "organic" line of Thinx Period Underwear after the actions were filed in California and Massachusetts.

19. The parties began preliminary settlement discussions over a year ago, in October 2021.

20. Subsequently, the parties agreed to mediate before Hon. Jay Gandhi (Ret.) of JAMS ADR, who is experienced in mediating class action claims, and scheduled mediation for December 8, 2021.

21. Prior to mediation, the parties exchanged requests for information pursuant to Fed. R. Evid. 408, including, *inter alia*, information sufficient to confirm that purchasers of Thinx Underwear numbered in the tens of thousands during the Class Period and were geographically located throughout the United States. Plaintiffs made a detailed settlement demand. The parties also provided detailed confidential mediation statements to Judge Gandhi.

22. The parties attended a full-day mediation session on December 8, 2021, with Judge Gandhi. During the mediation, the parties thoroughly discussed and vetted the facts and law, and Judge Gandhi engaged in a critical analysis of the parties' arguments. The parties were unable to reach an agreement on several material terms of the settlement during mediation.

23. Plaintiffs entered into these settlement negotiations with substantial information about the nature and extent of the challenged practices, and the merits of the legal claims and factual allegations. Plaintiffs also had the benefit of multiple experts' investigations of Thinx Period Underwear, which included chemical analysis conducted by two independent laboratories of certain styles of the underwear. Plaintiffs also had the ability to review key documents in this matter, including Thinx's sales data. Review of this information positioned us to evaluate with confidence the strengths and weaknesses of Plaintiffs' claims and prospects for success at class certification, summary judgment, and trial.

24. Following mediation, the parties continued to engage in settlement discussions. During this time, Thinx produced a number of additional documents which were relevant to our evaluation of the settlement.

25. The parties' settlement discussions continued for a period of many months and included numerous phone calls, video conferences, and written exchanges. During this time, the parties continued to litigate the Consolidated Actions, including discussing depositions, consulting with experts, providing regular status reports to the court in the California Action, and moving towards expert disclosures and class certification.

26. In June 2022, the parties reached a settlement in principle, including with respect to the monetary benefit for Settlement Class Members, and entered into a Memorandum of Understanding.

27. From June to November 2022, the parties continued to negotiate the finer points of the Settlement Agreement, including the terms of injunctive relief, the release, settlement administrator, notice plan, and schedule. During this process, the parties had regular Zoom conferences and continued to exchange redlines and drafts of documents, and worked diligently to finalize the terms of the Settlement Agreement and ancillary documents, and the plan for Notice, which was completed in November of 2022.

28. The parties did not agree to attorneys' fees and costs, or service awards for Class Representatives until after an agreement had been reached as to the monetary and non-monetary relief to the class. This agreement was negotiated at arm's-length, through sophisticated counsel.

29. Throughout this litigation, Plaintiffs provided assistance that allowed Class Counsel to successfully prosecute the action, including: submitting to interviews; gathering and producing relevant responsive documents and information; responding to formal and informal discovery; and, importantly, disclosing very sensitive, personal information related to their

reproductive health. In doing do, they gave up their privacy for the benefit of the class. Additionally, Plaintiffs reviewed pleadings, participated in numerous phone conferences regarding settlement negotiations, and maintained regular contact with Class Counsel from inception through Settlement.

30. On November 22, 2022, Plaintiffs filed their Unopposed Motion for Preliminary Approval of Settlement Agreement and accompanying Memorandum of Law in support of the motion. (ECF Nos. 23-24.)

31. On November 28, 2022, this Honorable Court granted Plaintiff's motion for preliminary approval, entering the Preliminary Approval Order. (ECF No. 26.)

32. Pursuant to the Court's Order, notice was issued to Settlement Class Members, and Class Counsel has continued to devote significant time to assisting Settlement Class Members with various concerns related to the Settlement, including engaging in numerous telephone and e-mail communications with Settlement Class Members.

33. The current estimate of valid claims is 165,342. *See* Exhibit 2 to Memorandum, Declaration of Cameron R. Azari, Esq. on Implementation and Adequacy of Notice Plan ("Azari Decl.") at ¶ 37. Thus even conservative estimates indicate that the ultimate number of valid claims may exhaust the $4,000,000 Cash Minimum Amount, necessitating the implementation of the $1,000,000 Replenishment Fund to cover all valid claims.

34. Email and/or Postcard Notice was delivered to 1,286,474 of the 1,288,730 unique known, reaching approximately 99% of the known Settlement Class Members. Azari Decl. at ¶ 18. Settlement Class Members who received notice of the Settlement, nine have submitted objections and 2,363 have opted out. *Id*. at ¶ 34. The number of Settlement Class Members who have opted out of the Settlement represents less than 0.002% of known Settlement Class Members.

35. Seven of the nine purported objections are based on a common misunderstanding of the Settlement Agreement. These objectors expressed concern that their participation in the Settlement may jeopardize their right to bring future personal injury claims related to their use of the Thinx Underwear, citing concerns about unknown health risks stemming from potential PFAS exposure. This Action does not include any personal injury claims. Accordingly, the Settlement does not release any personal injury claims, discounting any objections on this basis. *See* ECF No. 24-1 at ¶ 10.1.

36. Class Counsel has spoken with four of the objectors: Lesandre Barley, Miki Takata, Binita Katheria, and Melissa Strader. *See* ECF No. 42. Upon learning that the Settlement Agreement would not release any potential personal injury claims, these four Settlement Class Members all agreed to withdraw their objections.

37. Class Counsel also spoke with Jennifer Scuito, who filed an objection on the basis that the relief provided to class members was insufficient. *See* ECF No. 49. After speaking with Ms. Scuito about her concerns and explaining the terms of the Settlement, she also agreed to withdraw her objection.

38. In our opinion, based on our substantial experience as outlined above, the settlement in this case warrants the Court's final approval. The settlement terms are fair, reasonable, and adequate, and provide concrete and certain results to class members.

We declare under penalty of perjury that the foregoing is true and correct.

Executed on May 3, 2023.

_____
Erin J. Ruben

_____
Rachel Soffin

_____
Harper Segui

_____
Hunter Bryson