UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NICOLE DICKENS, HALEH ALLAHVERDI, HALEY BURGESS, JILLIAN BLENIS, and LILI MITCHELL, individually and on behalf of themselves and all others similarly situated,<br><br>    Plaintiffs,<br><br>v.<br><br>THINX, INC.,<br><br>    Defendant. | CASE NO. 1:22-cv-04286-JMF |

[PROPOSED] ORDER GRANTING PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

("PROPOSED" is struck through.)

This matter is before the Court on Plaintiffs' unopposed Motion for Final Approval of Class Action Settlement. On November 28, 2022, the Court granted Plaintiffs' unopposed Motion for Preliminary Approval of the proposed settlement ("Settlement") between Plaintiffs Nicole Dickens, Haleh Allahverdi, Haley Burgess, Jillian Blenis, and Lili Mitchell ("Plaintiffs" or "Class Representatives") and Defendant Thinx, Inc. ("Defendant" or "Thinx"). (ECF No. 26.)

On June 8 [7 struck through], 2023, the Court held a Final Approval Hearing to determine whether the Settlement should be approved as fair, reasonable, and adequate. The Court has considered the Motion and all other submissions and argument in connection therewith, in addition to all other papers and proceedings in this matter.

AND NOW, this  8th  day of  June , 2023, upon careful consideration of Plaintiffs' Unopposed Motion for Final Approval of Class Action Settlement; the objections filed

1

and the Parties' responses thereto; and the arguments of the Parties at the Final Approval Hearing held before this Court on June 7̶ 8, 2023, it is hereby ORDERED as follows:

**1.     Definitions.**

This Order incorporates by reference the definitions in the Settlement Agreement (ECF No. 24-1), and all terms used in this Order shall have the same meanings as set forth in the Settlement Agreement.

**2.     Background.**

Plaintiffs, individually and on behalf of all others similarly situated, and Defendant have entered into a class action Settlement Agreement to resolve claims alleging that Defendant's proprietary line of menstrual underwear ("Thinx Period Underwear")[1] was misrepresented as safe, sustainable, free from harmful chemicals and migratory nanoparticles, and—with regard to certain styles—organic. Plaintiffs alleged that contrary to these representations, the Thinx Period Underwear contained per-and polyfluoroalkyl substances ("PFAS").

The final Settlement is the result of:

(i)     significant pre-suit investigation of Plaintiffs' claims, including extensive chemical analysis of the products at issue, legal research, consultation with experts, and consumer interviews;

(ii)    the filing of three class actions that were ultimately consolidated in this present action, including *Allahverdi, et al. v. Thinx, Inc.*, 2:20-cv-10341-SSS-JPR (C.D. Cal.) (the "California Action) and *Blenis, et al. v. Thinx, Inc.*, 1:21-cv-11019-IT (D. Mass.) (the "Massachusetts Action");

---

[1] This action concerns the following styles of Thinx Period Underwear: Cotton Brief, Cotton Bikini, Cotton Thong, Sport, Hiphugger, Hi-Waist, Boyshort, French Cut, Cheeky, and Thong.

(iii) hard-fought litigation of nearly two years, including successfully opposing Defendant's motion to dismiss through substantial briefing in the first-filed California Action;

(iv) written discovery;

(v) the exchange of relevant information pursuant to Fed. R. Evid. 408;

(vi) a full-day mediation with Hon. Jay Gandhi (Ret.) of JAMS ADR, a certified mediator;

(vii) lengthy settlement negotiations that spanned nearly one year in total.

**3. Class Certification.**

**A. Settlement Class.**

On November 28, 2022, in its Preliminary Approval Order, pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure, the Court preliminarily certified the following Settlement Class:

> All natural persons who purchased, not for resale, the following Thinx Period Underwear in the United States from November 12, 2016, to the date of entry of the Preliminary Approval Order: Cotton Brief, Cotton Bikini, Cotton Thong, Sport, Hiphugger, Hi-Waist, Boyshort, French Cut, Cheeky, and Thong.

The Settlement Class excludes:

> Thinx, as well as its parents, subsidiaries, affiliates, officers, directors, investors, and employees; any entity in which Thinx has a controlling interest; any judge presiding over this Action, their staff, and the members of the judge's immediate family, all persons who request exclusion from (opt-out of) the Settlement.

**B. Certification of the Settlement Class Pursuant to Rule 23 of the Federal Rules of Civil Procedure is Appropriate and Warranted.**

In the Preliminary Approval Order, the Court preliminarily found that the Settlement Class met all the prerequisites of Federal Rule of Civil Procedure 23 for class certification, for the

purpose of settlement only, including numerosity, commonality, typicality, predominance of common issues, and superiority. ECF No. 26 at ¶ 4. No material changes have occurred since that Order that would alter this ruling. The Court now finally approves certification of the Settlement Class and the Settlement Agreement, except as to those individuals who timely exercised their right to opt-out of the Settlement.

### 4. The Settlement Benefits.

The Settlement provides two monetary options for Settlement Class Members. In addition to the monetary value of the proposed Settlement, Thinx will also provide non-monetary relief to Settlement Class Members, including taking measures to help ensure that PFAS are not intentionally added to Thinx Period Underwear at any stage of production.

### A. Monetary Relief.

Settlement Class Members had the option to receive either cash reimbursement for past purchases of Thinx Period Underwear (up to three pairs total), or a voucher for future purchases of Eligible Voucher Products as defined below ("Class Benefit"), on the following terms:

- <u>Cash Reimbursement</u>. The amount of cash reimbursement for past purchases of Thinx Period Underwear is contingent upon whether the Settlement Class Member provides a valid proof of purchase. Settlement Class Members were not, however, required to provide proof of purchase for purchases of Thinx Period Underwear reflected in Thinx's records.

    o Cash reimbursement with proof of purchase: Each Settlement Class Member will receive a $7.00 refund for Thinx Period Underwear that are reflected in Thinx's records, or for which they submit a valid proof of purchase together with the Claim Form. The maximum cash reimbursement available for purchases reflected in Thinx's records or with proof of purchase will be $21.00.

    o Cash reimbursement without proof of purchase: Each Settlement Class Member will receive a $3.50 cash refund for Thinx Period Underwear that are not reflected in Thinx's records without proof of purchase but must provide details regarding the style(s) purchased and the approximate date, and location, of their purchases, and attest to the purchases under penalty of

4

perjury. The maximum cash reimbursement available without proof of purchase will be $10.50.

- <u>Voucher</u>. Settlement Class Members had the option to choose to receive a single-use voucher for a discount of 35% off total purchases of Eligible Voucher Products (as defined below) in a single purchase transaction of up to $150 on the Thinx website (thinx.com). The maximum discount available shall be up to $52.50. Vouchers will not be transferable, subject to standard terms and conditions, and will be valid for six months from the date of issuance. Vouchers may be used on full-price Eligible Voucher Products only, and may not be combined with any other offers, discounts, or promotions.

    o "Eligible Voucher Products" are the products below:
        - Super Hiphugger
        - Heavy Hiphugger
        - Hiphugger
        - Sport
        - Heavy Boyshort
        - Boyshort
        - Super Hi-Waist
        - Heavy Hi-Waist
        - French Cut
        - Cheeky
        - Thong
        - Modal Super Cotton Brief
        - Modal Heavy Cotton Brief
        - Modal Cotton Brief
        - Modal Cotton Boyshort
        - Modal Cotton Bikini
        - Modal Cotton Thong
        - Air Hiphugger
        - Air Bikini

    **B. Non-Monetary Relief.**

Thinx also affirms that it will continue to take the measures it implemented (some following the institution of the California Action) to help ensure that PFAS are not intentionally added to Thinx Period Underwear at any stage of production, including maintaining production controls and material reviews. Thinx will continue to have suppliers of raw materials for Thinx Period Underwear review and sign a Supplier Code of Conduct and Chemical Supplier Agreement, which require suppliers to attest that PFAS are not intentionally added to Thinx Period Underwear.

5

Thinx will disclose the use of anti-microbial treatments and the purpose for which they are used and will no longer refer to the antimicrobial components of Agion as "non-migratory." Thinx has revised its website to remove certain marketing statements. Thinx has also discontinued the sale of its "organic" Thinx Period Underwear.

### C. Common Fund.

Defendant will establish a common fund of up to Five Million Dollars ($5,000,000) ("Settlement Amount"), comprising a $4,000,000 Cash Minimum Amount and $1,000,000 Replenishment Amount. The fund will provide for payment of valid claims by Settlement Class Members, Notice and administration costs, and attorneys' fees, costs, and service awards approved by the Court. If valid claims exceed the $4,000,000 Cash Minimum Amount, Defendant will pay an additional $1,000,000 Replenishment Amount to the fund to cover additional valid claims. If, after payment of Notice and administration costs and any attorneys' fees, costs, and service awards approved by the Court, payment of total valid claims would exceed the $5,000,000 Settlement Amount, the payments to Settlement Class Members shall be prorated.

### D. Class Member Release.

In exchange for the benefits conferred by the Settlement, Plaintiffs and Settlement Class Members who have not timely excluded themselves from the Settlement release and forever discharge Defendant from all liabilities, claims, cross-claims, causes of action, rights, actions, suits, debts, liens, contracts, agreements, damages, costs, attorneys' fees, losses, expenses, obligations, or demands, of any kind whatsoever, whether state or federal, whether known or unknown, existing or potential, or suspected or unsuspected, whether raised by claim, counterclaim, setoff, or otherwise, including any known or unknown claims, which they have or may claim now or in the future to have, that have been or could have been asserted in the Action (the "Released Claims"). The Released Claims exclude claims for personal injury.

**5.     Notice.**

Consistent with the Preliminary Approval Order and the proposed Notice Plan, the settlement administrator, Epiq, has notified Settlement Class Members of the Settlement by (a) emailing notice to each member of the Settlement Class for whom Thinx has an email address; (b) mailing postcard notice to class members that did not have a valid email address but had a mailing address; and (c) implementing a limited online banner advertisement campaign. In addition, Epiq created a Settlement Website that includes all necessary and pertinent information for Settlement Class Members, and also established and is maintaining a toll-free number for Settlement Class Members to call and obtain additional information about the Settlement.

The form and methods of notifying the Settlement Class of the terms and conditions of the proposed Settlement Agreement met the requirements of Fed R. Civ. P. 23, due process, and any other applicable law, and constituted the best notice practicable under the circumstances.

Further, the settlement administrator, Epiq, on behalf of Defendant, caused timely notice of the Settlement and related materials to be sent to the Attorney General of the United States and the Attorneys General of all U.S. states, territories, and the District of Columbia pursuant to the Class Action Fairness Act of 2005 ("CAFA"). The Court finds that such notification complies fully with the applicable requirements of CAFA.

**6.     The Settlement is Fair, Reasonable and Adequate.**

The Second Circuit's settlement approval analysis generally relies on two overlapping multi-factor tests. Federal Rule of Civil Procedure 23(e)(2) supplies the first test, which requires the Court, in evaluating the fairness, reasonableness, and adequacy of a settlement, to consider whether:

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;

> (C) the relief provided for the class is adequate, taking into account:
>
>> i. the costs, risks, and delay of trial and appeal;
>>
>> ii. the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>>
>> iii. the terms of any proposed award of attorney's fees, including timing of payment; and
>>
>> iv. any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23.

To determine substantive fairness, Courts supplement the 23(e)(2) analysis with the *Grinnell* factors, which include: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 117 (2d Cir. 1974) (citing *Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974)).

The Court finds that these factors support final approval of the Settlement.

### A. The Settlement is Procedurally Fair, Reasonable, and Adequate.

As the Court found in the Preliminary Approval Order, "the Settlement is the product of extensive, non-collusive, arm's-length negotiations between experienced counsel who were thoroughly informed of the strengths and weaknesses of the case through discovery and motion

practice, and who mediated before the Honorable Jay Gandhi (Ret.) of JAMS ADR." ECF No. 26 at ¶ 8. "A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores, Inc.*, 396 F.3d at 117 (internal quotations omitted). Further, the participation of a qualified mediator strongly supports a finding that negotiations were conducted at arm's length and without collusion. *See Yang v. Focus Media Holding Ltd.*, 2014 WL 4401280, at *5 (S.D.N.Y. Sep. 4, 2014).

### B.  The Settlement is Substantively Fair, Reasonable, and Adequate.

.      Courts in the Second Circuit evaluate the substantive fairness, adequacy, and reasonableness of a settlement according to the factors set out in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974). The Court finds that the *Grinnell* factors support final approval.

#### i.      Complexity, expense, and likely duration of litigation.

The Settlement provides favorable monetary benefits to the Settlement Class while avoiding the significant expenses and delays associated with litigation. While Plaintiffs may have prevailed at trial, continued litigation would last for an extended period before a final judgment might be entered in favor of the Class (if any). Any trial would likely last at least several weeks, and involve numerous fact witnesses, experts, and the introduction of voluminous documentary evidence. Moreover, any judgment favorable to the Class would be the subject of post-trial motions and appeals, which could significantly prolong the lifespan of this Action. Because the risks of proceeding to trial are substantial, the Settlement warrants final approval.

#### ii.     Reaction of the class to settlement.

With a class size including nearly 1,300,000 consumers, that there have only been nine objections to the Settlement and 2,363 requests for exclusion weighs substantially in favor of the fairness and reasonableness of the Settlement.

Seven of the nine objections were founded on a common misunderstanding that the Settlement releases individual personal injury claims, when it does not. Class Counsel has attempted to reach these class members in an effort to explain the release, and four of the objectors (Lesandre Barley, Miki Takata, Binita Katheria, and Melissa Schrader) have agreed to withdraw their objection upon learning that the Settlement does not release their personal injury claims. ECF No. 42 at p. 3, 10, 15, 28. Likewise, Jennifer Scuito has withdrawn her objection. ECF No. 49. Of the four objectors who remain (Elaine Chaw, Karen Chaw, Amabel Chin, and Alison Bender), only Ms. Bender objects on grounds other than personal injury, and her objection that the Settlement might damage Thinx's business interests is not relevant where it raises no concern as to whether the Settlement is fair, reasonable, or adequate as to Settlement Class Members. ECF Nos. 33, 36, 42, 46. The Court therefore hereby overrules all the remaining live objections.

### iii. Stage of the proceedings.

Litigation progressed sufficiently for Class Counsel to assess the risks and value of Plaintiffs' claims. Class Counsel engaged in: (a) extensive investigation undertaken in preparing the initial complaint in addition to subsequent complaints filed in other districts and numerous amended complaints; (b) written discovery; (c) exchange of information in advance of mediation; and (d) extensive settlement discussions, which included the exchange of additional discovery. Accordingly, the Court finds that Plaintiffs' and Class Counsel's knowledge of the merits as well as the strengths and weaknesses of their claims is adequate to support the Settlement.

### iv. Risks of establishing liability and damages.

While Plaintiffs believe their claims would be borne out by the evidence presented at trial, there are significant hurdles to proving liability or even proceeding to trial. Defendant denies all allegations of liability and has strenuously contended that Plaintiffs would be unable to prove that Defendant made any false or misleading material statements. Furthermore, Plaintiffs' reliance on

expert testimony to establish damages, as well as a jury's acceptance of that expert testimony is far from certain, especially when Defendants will offer competing expert testimony to the contrary. Weighing the likelihood of success by Plaintiffs against the relief offered by the settlement, the Court finds that the Settlement provides a substantial monetary benefit to Settlement Class Members without the risk and delays of continued litigation.

### v. Risks of maintaining the class action through trial.

Although class certification was preliminarily approved by this Court for the purpose of settlement, it is not certain that the case would be certified in the absence of a settlement. While plaintiffs might indeed prevail, the risk that the case might be not certified is not illusory and weighs in favor of approving the Settlement.

### vi. Ability of Defendant to withstand a greater judgment.

While Defendant is able to withstand a judgment in excess of the Settlement Amount, the Court does not find this to be an impediment to settlement given that the other *Grinnell* factors favor the settlement.

### vii. Range of reasonableness in light of the possible recovery and attendant risks of litigation.

Plaintiffs faced numerous legal, procedural, and practical hurdles, including issues related to materiality, that, if not overcome, could preclude any recovery for Plaintiffs and the Settlement Class. As the Court found in its Preliminary Approval Order, the Settlement compares favorably with the expected recovery balanced against the risks of continued litigation. ECF No. 26 at ¶ 8.

### 7. Final Approval.

For the reasons discussed above, the Court certifies the proposed Settlement Class and grants Plaintiffs' motion for final approval. The Court finds that the Settlement Class satisfies the

requirements of Fed. R. Civ. P. 23(a) and 23(b), and that the Settlement Agreement is fair, reasonable and adequate.

**IT IS SO ORDERED.**

Dated: _____June 8_____, 2023

_____
HON. JESSE M. FURMAN
United States District Court
Southern District of New York

The Clerk of Court is directed to terminate ECF No. 52 and to close the case.